UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| JUSTIN BARKLEY, AL FATA, BRIAN PHILLIPS and JERRY J. WALSH, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PIZZA HUT OF AMERICA, INC., and YUM! BRANDS, INC.,<br><br>Defendants. | CASE NO. 6:14-cv-376-orl-18DAB<br><br>COMPLAINT – CLASS ACTION<br><br>ECF CASE<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiffs Justin Barkley ("Mr. Barkley"), Brian Phillips ("Mr. Phillips") Al Fata ("Mr. Fata") and Jerry J. Walsh ("Mr. Walsh") (collectively, "Plaintiffs") by their undersigned attorneys, individually and on behalf of all others similarly situated, allege, with personal knowledge as to their own actions, and upon information and belief as to those of others, as follows:

## NATURE OF THE ACTION

1.      This action seeks to redress Defendants Pizza Hut of America, Inc. ("Pizza Hut of America") and Yum! Brands, Inc.'s ("Yum!") (collectively, "Pizza Hut" or "Defendants") systematic policy and practice of paying delivery drivers hourly wages well below those required by the Florida Minimum Wage Act ("FMWA").

2.     Plaintiffs are loyal employees and a majority of Plaintiffs have worked as pizza delivery drivers for most of their adult lives.   During this time, Plaintiffs have received consistently high reviews and have always performed the tasks required of them by Pizza Hut and by other pizza companies.

3.     The Florida Constitution provides that "All working Floridians are entitled to be paid a minimum wage that is sufficient to provide a decent and healthy life for them and their families, that protects their employers from unfair low-wage competition, and that does not force them to rely on taxpayer-funded public services in order to avoid economic hardship." Art. X., § 24 (a), Fla. Const.  As the courts have long recognized, denying employees the minimum wage "is an abuse which springs from [an employer's] selfish disregard of the public interest." W. Coast Hotel Co. v. Parrish, 300 U.S. 379, 400, 57 S. Ct. 578, 585, 81 L. Ed. 703 (1937). Unfortunately, Defendants have consistently refused to pay Plaintiffs and their colleagues the minimum wage mandated by Florida law, preferring instead to selfishly pocket excess profits rather than to fairly pay their employees.

4.     The FMWA requires that employers provide their employees with sufficient reimbursements for employment-related expenses to ensure that employees' hourly wages equal or exceed the minimum wage after employment-related expenses ("kickbacks") are counted against the hourly wages.  However, Defendants have paid, and, upon information and belief, continue to pay their delivery drivers an hourly wage equal to or very near the minimum wage and then under-reimburse the delivery drivers for vehicular wear and tear, gas and other driving-

2

related expenses, thereby ensuring that all of Defendants' delivery drivers are effectively paid well below the minimum wage.

5.     Indeed, Defendants have long been on notice that the wages they pay delivery drivers violate the FMWA, because many courts have recognized that pizza chains with identical or similar policies under-reimburse their delivery drivers, thereby violating state and federal minimum wage laws. See, e.g., Castillo et al. v. Pizza Hut, Inc. et al., No. BC318765, (Super. Ct. L.A. Cty., Oct. 18, 2006) (approving a settlement on behalf of under-reimbursed Pizza Hut delivery drivers in California); Pohle v. Two Mays, Inc., No. 2009 CA 002965 (Escambia Cty. Cir. Ct. 2009) (approving a confidential settlement in a FMWA delivery driver under-reimbursement case against a Dominos pizza franchisee).

6.     Through this action, Plaintiffs seek to redress Defendants' failure to pay them the minimum wage to which they and their colleagues are lawfully entitled.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from the Defendant; there are more than 100 Class members nationwide; and the aggregate amount in controversy exceeds $5,000,000.

8.     Venue is proper in this Court as Defendants have operated multiple restaurants in Orlando; the events at issue occurred in or near Orlando; and three of the Plaintiffs live in or near Orlando.

## PARTIES

9.      Plaintiff Justin Barkley is a delivery driver who worked for Defendants in Florida from 2008 until December 7, 2009. Mr. Barkley lives in Georgia.

10.     Plaintiff Al Fata is a delivery driver who worked for Defendants from approximately 1996 until December 7, 2009. Mr. Fata lives in Orlando, Florida.

11.     Plaintiff Brian Phillips is a delivery driver who worked for Defendants from approximately June of 2008 until December 7, 2009. Mr. Phillips lives in Orlando, Florida.

12.     Plaintiff Jerry J. Walsh is a delivery driver who worked for Defendants from approximately 1995 until December 7, 2009. Mr. Walsh lives in Winter Park, Florida.

13.     Yum!, the world's largest fast food restaurant company, is headquartered in Kentucky and owns and operates over 38,000 restaurants, including Pizza Hut restaurants in Florida. Yum! owns Pizza Hut of America. Accordingly, Yum! directly or indirectly owned and operated the restaurants employing Plaintiffs.

14.     Pizza Hut of America, the world's largest branded pizza restaurant company, is a California Corporation that is headquartered in Texas. Pizza Hut of America has owned and operated thousands of Pizza Hut restaurants during the class period, and more than a hundred such restaurants in Florida. Pizza Hut of America owned and operated the restaurants employing Plaintiffs.

15.     On or about December 7, 2009, non-party CFL acquired approximately 91 Pizza Hut franchises from Pizza Hut of America, including the restaurants where Plaintiffs worked as delivery drivers.

## STATEMENT OF FACTS

4

## Litigation Background

16.     Plaintiffs are members of the settlement class in virtually identical litigation against CFL Pizza LLC ("CFL").  See Hanna v. CFL Pizza, LLC, No. 05-2011-CA-52949 (Fla. Cir. Ct. Brevard Cty).   CFL purchased approximately 91 stores from Pizza Hut in December of 2009, and operated those stores pursuant to the policies and practices that Defendants created.

17.     After lead plaintiffs in the CFL litigation sued, CFL moved to dismiss on numerous grounds, arguing, *inter alia*, that the CFL Plaintiffs' complaint lacked sufficient detail; the FMWA does not provide a cause of action for under-reimbursement; the CFL Plaintiffs were required to give notice and did not provide adequate notice; the case could not be maintained as a class action; and the doctrine of successor liability did not apply.  Judge Maxwell denied CFL's motion to dismiss on all grounds except for successor liability.  See Hanna v. CFL Pizza, LLC, No. 05-2011-CA-52949 (June 21, 2012, Fla. Cir. Ct. Brevard Cty).  However, Judge Maxwell dismissed the CFL Plaintiffs' claims against CFL for the time prior to when CFL purchased the restaurants that employed Mr. Smith and his colleagues.  See id.  Judge Maxwell ordered the parties to mediate after discovery and then approved a class-wide settlement.

18.     In light of Judge Maxwell's ruling denying successor liability, two plaintiffs from the CFL action brought an action against the Defendants on July 13, 2012.  Pizza Hut produced an "arbitration agreement" and the parties agreed to arbitrate.  To date, two arbitrators have decided the issue of whether Pizza Hut's arbitration agreement allows for class arbitration in light of Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 130 S. Ct. 1758 (2010) and its progeny.

One arbitrator held that the agreement allows for class arbitration; another held that it does not allow for class arbitration. Plaintiffs, however, are not covered by any "arbitration agreement."

## General Background

19.     The primary function of Pizza Hut restaurants, including all Pizza Hut restaurants in Florida from 2007 to the present, is to sell pizza and other foods and beverages. Accordingly, Defendants were engaged in commerce.

20.     Pizza Hut restaurants, including those operated by Defendants, are employers under the FMWA. During the relevant time period and to date, Defendants' annual profits have always been well in excess of $500,000. Defendants paid and supervised their employees, including Plaintiffs and other delivery drivers.

21.     Defendants employed delivery drivers, all of whom have the same job duty:  to deliver pizzas and other food and beverages to customers. Plaintiffs and all other Pizza Hut delivery drivers are clearly employees within the meaning of the FMWA.

22.     Some delivery drivers worked inside a Pizza Hut restaurant during certain hours and work as delivery drivers at other times.

23.     During Plaintiffs' tenure as Pizza Hut employees, they consistently worked approximately 20-40 hours per week, with their time split approximately evenly between delivery driving and in-store work.

6

## Defendants' Policy of Systematically Under-Reimbursing Delivery Drivers

24.     Defendants require their delivery drivers to maintain and pay for their own safe, legally-operable, and insured automobiles, which drivers were required to use when performing their duties as delivery drivers.

25.     Pizza Hut delivery drivers incur costs for gasoline, vehicle parts and fluids, automobile repair and maintenance services, elevated automobile insurance, and depreciation (collectively, "vehicular expenses") while delivering food and beverages for the primary benefit of Pizza Hut franchises and affiliates, including Defendants' stores.

26.     Since 2007, Pizza Hut stores in Florida reimbursed their delivery drivers at a rate ranging between approximately $0.50 and $1.25 per delivery. The reimbursement rate when Pizza Hut of America sold to CFL in December of 2009 was $0.86 per delivery. Defendants never explained the basis of this reimbursement rate to their Florida employees.

27.     Defendants applied the same reimbursement rate to all deliveries, regardless of the actual distance driven by the delivery driver. Defendants do not reimburse their delivery drivers in any way for unsuccessful deliveries.

28.     Plaintiffs and other drivers drive approximately 5 miles per delivery, so Defendants' current reimbursement rate is approximately 25 cents per mile ($1.25 divided by 5 miles equals 25 cents per mile).

29.     Although Defendants currently reimburse their delivery drivers at a rate of just 25 cents per mile, the IRS business mileage reimbursement rate has exceeded that rate for every year since 1988, when gas cost just $1.08 a gallon.

7

30.     In 2009, when Defendants sold the stores that employed Plaintiffs, Defendants' reimbursement rate was approximately 17.2 cents per mile ($0.86 divided by 5 miles equals 17.2 cents per mile).  The IRS business mileage reimbursement rate has exceeded 17 cents every year since 1978, when gas cost just 63 cents per gallon.

31.     In 2007, Defendants reimbursed their delivery drivers at approximately 50 cents per delivery, an amount equal roughly to a per mile reimbursement rate of just 10 cents (50 cents divided by 5 miles equals 10 cents per mile).  The IRS business mileage reimbursement rate has exceeded 15 cents every year since 1973, when gas cost just 48 cents per gallon.

32.     From 2006 through the present, the IRS business mileage reimbursement rate has ranged between $0.485 and $0.585.  Upon information and belief, Defendants highly-paid executives are reimbursed using the IRS' mileage reimbursement rate, which is more than times the rate at which Defendants have reimbursed their underpaid delivery drivers.

33.     Similarly, reputable companies that study the cost of owning and operating a motor vehicle and/or reasonable reimbursement rates, including the American Automobile Association, have determined that the average cost of owning and operating a vehicle ranged between $0.45 and $0.749 per mile from 2006 to present.

34.     The above-referenced mileage reimbursement rates represent a reasonable approximation of a monetary average per mile that is lower than the actual cost incurred by delivery drivers.  Delivery drivers incur higher expenses than other business drivers because their profession often requires them to drive more than 100 miles per night, to frequently navigate in start and stop traffic, to often engage in city driving, to drive to and from locations on tight

schedules, and to drive during late hours and in inclement weather.  As a result, delivery drivers' vehicles are subjected to more frequent routine maintenance costs, higher costs due to repairs associated with driving, lower gas mileage, and more rapid depreciation because of the frequency and manner with which they are driven.

35.     Insurance providers recognize the hazards of working as a pizza delivery driver. Not surprisingly, pizza delivery drivers pay significantly higher automobile insurance rates than do regular drivers, and some pizza companies even provide their drivers with automobile insurance   coverage.     See   http://www.insureme.com/auto-insurance/insurance-for-delivery-drivers.  Defendants do not provide insurance for their drivers.

36.     Mr. Barkley drove a Honda Accord from 2008 through December of 2009.  Mr. Barkley can document that the out-of-pocket vehicular expenses he incurred while delivering pizza amounted to at least $0.41 per mile, exclusive of insurance costs, the value of vehicle depreciation, and the potential for larger repairs.

37.     Because Mr. Barkley did not have any driving habits or routes that are unusual, his out-of-pocket cost of $0.41 per mile is a reasonable approximation of the absolute minimum non-inclusive out-of-pocket expenses incurred by Pizza Hut delivery drivers.

38.     Al Fata drove a 2008 Chrysler 300 from 2008 through December of 2009.  Mr. Fata can document that the out-of-pocket vehicular expenses he incurred while delivering pizza amounted to at least $0.50 per mile, exclusive of insurance costs, the value of vehicle depreciation, and the potential for larger repairs.

39.    Brian Phillips drove a Ford Explorer and a Honda Civic from 2008 through December of 2009. Mr. Phillips can document that the out-of-pocket vehicular expenses he incurred while delivering pizza amounted to at least $0.45 per mile, exclusive of insurance costs, the value of vehicle depreciation, and the potential for larger repairs.

40.    Mr. Walsh drove a Nissan XE V6 King Cab Pickup Truck from 2008 through December of 2009. Mr. Walsh can document that the out-of-pocket vehicular expenses he incurred while delivering pizza amounted to at least $0.43 per mile, exclusive of insurance costs, the value of vehicle depreciation, and the potential for larger repairs.

41.    Mr. Fata still works as a delivery driver for Pizza Hut franchisee CFL, and CFL now reimburses Mr. Fata at a rate of $0.41 per mile.

42.    The overall depreciation and wear-and-tear on vehicle parts, coupled with the cost of insurance, increase the cost per mile of operating their own vehicles over and above the aforementioned estimates and are sufficient to place their cost of owning and operating their vehicles for Defendants' benefit within or above the range found by the IRS which, as stated above, represents a reasonable low-end approximation of the cost of owning and operating a vehicle to deliver pizzas and other food and beverages.

43.    Because Plaintiffs were paid the minimum wage and because the number of deliveries made (and therefore the number of miles driven) in an hour can fluctuate, the value of under-reimbursement per mile is a more precise means of calculating the value of under-payment than the value of under-reimbursement per hour.

10

44.     Nonetheless, during a *typical* hour, Plaintiffs drove approximately 30 miles and make 6 deliveries.  Using the IRS' 2008 mileage reimbursement rate of $0.585, Plaintiffs and their colleagues were entitled to approximately $17.55 per typical hour for reimbursement purposes (30 miles multiplied by 58.5 cents per mile equals $17.55).  However, in 2009 Defendants reimbursed at a rate of only approximately $5.16 per typical hour (6 deliveries multiplied by $.86 equals $5.12).

45.     As a result, in 2009 Plaintiffs and their colleagues were systematically under-reimbursed by a rate of approximately $12.43 per typical hour ($17.55 minus $5.12 equals $12.43).

46.     At present, upon information and belief, Defendants reimburse Florida delivery drivers at a rate of only approximately $7.50 per typical hour (6 deliveries multiplied by $1.25 equals $7.50).  Although this reimbursement rate is an improvement, it is still far from sufficient to fully reimburse delivery drivers for the actual costs incurred as a result of delivering food and goods for the benefit of Defendants.

47.     Because Defendants paid Plaintiffs the minimum wage and, upon information and belief, Defendants have paid and pays all other delivery drivers at or near the minimum wage, Defendants systematically under-pay their delivery drivers by more than $10.00 per typical hour.

48.     Defendants under-reimbursed Plaintiffs and all other delivery drivers in the manner just described, thereby under-paying their delivery drivers.

49.     Defendants' reimbursement rate did not reasonably reimburse their delivery drivers for their out-of-pocket expenses, much less other costs they incur to own and operate

11

their vehicle, and thus this rate uniformly fails to reimburse Defendants' delivery drivers at any reasonable approximation of the cost of owning and operating their vehicles for Defendants' benefit.

50.     Defendants' systematic failure to adequately reimburse delivery drivers for their automobile expenses constitutes a "kickback" to the Company such that the hourly wages they pay and have paid to Plaintiffs and other delivery drivers are not paid free and clear of all outstanding obligations to Defendants.

## Defendants' Failure to Properly Reimburse
## Vehicular Expenses Violates the Florida Minimum Wage Act

51.     Regardless of the precise amount of the per-mile reimbursement, Defendants unquestionably failed to reasonably approximate the amount of their drivers' vehicular expenses to such an extent that their drivers' wages are diminished well beneath the minimum wage required by Florida law.

52.     Plaintiffs have been paid at or very near to the hourly minimum wage set by the State of Florida for their entire tenures as a delivery driver.

53.     Florida's hourly minimum wage was $6.40 in 2006.  It has regularly increased since 2006; it was $7.29 at the end of 2009; and it is currently $7.93.

54.     At all times relevant, the amount of the under-reimbursement was sufficient to ensure that Plaintiff and his colleagues were paid below Florida's minimum wage.

12

55.     For example, in November of 2009, Mr. Smith's minimum wage was $7.29, the minimum allowable under Florida law.  As set forth above, Plaintiff was under-reimbursed by approximately 41 cents per mile driven or by $12.43 per typical hour.  See supra at ¶¶ 28-44. Defendants therefore violated the FMWA by a significant margin.

56.     On October 12, 2011, Mr. Hanna (one of the named plaintiffs in *Pizza Hut* I), through counsel, mailed a demand letter to Yum! via Federal Express.  (See letter from J. Frei-Pearson to C. Campbell, Oct. 12, 2011, attached hereto as Exhibit A)  Yum! received the letter on October 13, 2011.  This letter applied to all class plaintiffs covered by *Pizza Hut I*, and, accordingly, covered Plaintiffs.

57.     On November 10, 2011, Mr. Hanna, through counsel, mailed a demand letter to Pizza Hut of America and Pizza Hut of Titusville via Federal Express.  (See letter from J. Frei-Pearson to T. Grill, Nov. 10, 2011, attached hereto as Exhibit C).  Pizza Hut of America and Pizza Hut of Titusville received this letter on or about November 11, 2012.  This letter applied to all class plaintiffs covered by *Pizza Hut I*, and, accordingly, covered Plaintiffs.

58.     Nonetheless, out of an abundance of caution, each of the Plaintiffs, through counsel, mailed a separate demand letter to Defendants' counsel via electronic mail.  (See letter from J. Frei-Pearson to G. DeBoskey, Oct. 6, 2013, attached hereto as Exhibit D (Jerry Walsh Letter); letter from J. Frei-Pearson to G. DeBoskey, Oct. 7, 2013, attached hereto as Exhibit E (Brian Phillips Letter); letter from J. Frei-Pearson to G. DeBoskey, Oct. 16, 2013 (Justin Barkley Letter), attached hereto as Exhibit F; letter from J. Frei-Pearson to G. DeBoskey, November 14, 2013, attached hereto as Exhibit G (Al Fata Letter)).

59.     Although Plaintiffs were very willing to engage in negotiations, Defendants did not engage in substantive pre-suit negotiations.  Defendants' only response to these letters was to request additional time to find "arbitration agreements."  Defendants have not produced any "arbitration agreements" that apply to Plaintiffs.

60.     Mr. Hanna sent similar letters to non-party CFL, a Pizza Hut franchisee that employed Plaintiffs and engaged in the same unlawful denial of minimum wage.  In contrast to Defendants' non-responsiveness, counsel for Plaintiffs and counsel for CFL engaged in significant pre-suit negotiations before agreeing that they could not reach resolution.

61.     All conditions precedent to filing this Complaint have been performed or waived.

62.     Pursuant to the Florida Minimum Wage Act, Art. X., § 24 of the Florida Constitution and F.S.A. § 448.110 *et seq.*, Plaintiffs and the Class are entitled to:  injunctive relief, the recovery of the full amount of unpaid wages owed, liquidated damages, costs, attorneys' fees, and to any other relief which this Court deems just and proper.  Plaintiffs hereby request that all claims herein by tried by a jury of their peers.

## CLASS ACTION ALLEGATIONS

63.     This action is maintainable as a class action pursuant to Rule 23(b)(3) and Rule 23(b)(2) of the Federal Rule of Civil Procedures.

64.     The Class consists of all Florida delivery drivers employed by any of the Defendants since July 13, 2007 who have been and/or are being paid an hourly wage below Florida's minimum wage, due to Defendants' under-reimbursement.

14

65.     The Class is so numerous that joinder of all members is impracticable.   The number and identity of class members may be determined by Defendants' records, but the class size exceeds 1,000 people.

66.     There are substantial questions of fact and law common to Plaintiffs and all class members, including, *inter alia*:

>       a.      Whether Defendants required Plaintiffs and the Class members to pay their "out-of-pocket" vehicle maintenance costs;
>
>       b.      Whether Defendants violated Florida law by failing to pay Plaintiffs and the Class members supplemental wages to offset their vehicle maintenance costs and ensure that they received more than the required minimum hourly wage;
>
>       c.      Whether Defendants was unjustly enriched by failing to properly reimburse delivery drivers; and
>
>       d.      Whether Plaintiffs and other similarly situated employees of Defendants are entitled to additional wages based on a theory of unjust enrichment.

67.     Plaintiffs' claims are typical of the Class.

68.     Plaintiffs will fairly and adequately protect the interests of the Class.   Their claims span the breadth of issues raised in this action.

69.     Class representatives' counsel are appropriately qualified to represent the Class.

Joinder of class members' individual actions is impractical because of the limited ability of individual class members to institute separate suits and the general nature of the underlying action and relief sought.  The prosecution of separate actions by individual class members would create a risk of inconsistent results that could establish incompatible standards of conduct for Defendants.

70.     Defendants have acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief with respect to the Class as a whole.

71.     Defendants' liability for damages can be established by facts and circumstances common to the Class as a whole and does not require the examination of the Plaintiff's individual circumstances.

72.     Questions of law and fact common to members of the Class predominate over any questions affecting only individual members.

73.     A class action is superior in this case to other methods for a fair and efficient adjudication of the controversy because:  (A) the common interests of the class members predominate over any individual interest in controlling prosecution or control of separate actions; (B) no similar litigation between the parties is currently pending in court; (C) concentrating litigation of this action in this Court is appropriate to ensure appropriate, consistent, and efficient resolution of the issues raised; and (D) there will be no significant difficulties in managing an action involving this Class.

**FIRST CLAIM FOR RELIEF**
**Violation of the Florida Minimum Wage Act,**
**Art. X., § 24 (a), Fla. Const; F.S.A. § 448.110 *et seq.***

74.     Plaintiffs and Class Members reassert their allegations set forth in Paragraphs (1) through (73) above and incorporate them by reference into this first Claim of Relief.

75.     Through counsel, Plaintiffs informed Defendants of their intent to bring an action under the FMWA more than 15 days prior to the commencement of this action.  This notice identified the minimum wage to which Plaintiffs and the Class are entitled, the actual and estimated work dates and hours for which payment is sought, and the total amount of alleged unpaid wages through the date of the notice.

76.     Defendants systematically and willfully did not pay Plaintiffs and the Class the minimum wage to which they are entitled under the FMWA, because Defendants did not provide reimbursements for driving-related expenses that were equal to the actual driving-related expenses occurred by Plaintiffs and the Class.

77.     Under the FMWA, Plaintiffs and the Class are entitled to: injunctive relief, the recovery of the full amount of unpaid wages owed, liquidated damages, costs, attorneys' fees, and to any other relief which this Court deems just and proper.

## SECOND CLAIM FOR RELIEF
### Declaratory Judgment, Fla. Stat. § 86.021

78.     Plaintiffs and Class Members reassert their allegations set forth in Paragraphs (1) through (73) above and incorporate them by reference into this second Claim of Relief.

79.     Because of Defendants' flagrant and systematic violation of the FMWA, Plaintiffs and the Class have an actual, practical and present need for a declaratory judgment as to the existence and definition of their kickback related rights under the FMWA.

17

80.     Under Fla. Stat. § 86.021, Plaintiffs and the Class respectfully request a declaratory judgment that Defendants' reimbursement rate for delivery drivers, coupled with their hourly wages, violates the FMWA.

**THIRD CLAIM FOR RELIEF**
**Unjust Enrichment**

81.     Plaintiffs and Class Members reassert their allegations set forth in Paragraphs (1) through (73) above and incorporate them by reference into this third Claim of Relief.

82.     Plaintiffs and the Class have conferred benefits on Defendants by delivering pizza and other goods in exchange for the minimum wage. By under-reimbursing its drivers for their expenses, Defendants knowingly and willingly obtained monetary benefits from Plaintiffs and the Class to which it was not entitled.

83.     Under the circumstances described herein, it is inequitable for Defendants to retain this monetary benefit at the expenses of Plaintiffs and the Class.

84.     By engaging in the conduct described above, Defendants has been unjustly enriched at the expense of Plaintiff and the Class and is required, in equity and good conscience, to compensate Plaintiffs and the Class for harm suffered as a result of its actions.

85.     As a direct and proximate result of Defendant's unjust enrichment, Plaintiffs and the Class have suffered injury and are entitled to reimbursement, restitution, and disgorgement by Defendants of the benefit conferred by Plaintiffs and the Class.

**DEMAND FOR JURY TRIAL**

86.     Plaintiffs, on behalf of themselves and all others similarly situated, demand a trial by jury of any and all issues in this action so triable.

18

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray as follows:

(a)     That this Court award compensatory damages to Plaintiffs and all class members, including pre-judgment and post-judgment interest;

(b)     That this Court award liquidated damages to Plaintiffs and all class members;

(c)     That this Court order Defendants to pay all of their delivery drivers a reimbursement rate sufficient to ensure that all delivery drivers receive hourly wages equal to or exceeding those mandated by the FMWA;

(d)     That this Court order Defendants to provide automobile insurance coverage for their delivery drivers while they are working as delivery drivers;

(e)     That this Court enjoin Defendants from paying any of their delivery drivers a reimbursement rate insufficient to ensure that the delivery driver receives hourly wages below those mandated by the FMWA:

(f)     That this Court grant to Plaintiffs and all class members their costs and reasonable attorney's fees;

(g)     That this Court declare that Defendants' reimbursement rate for delivery drivers, in conjunction with the hourly wages they pay, violates the FMWA; and

19

(h)    That this Court should grant such additional relief as the Court deems just and

proper.

Dated:        March 7, 2014

Respectfully submitted,

_____

C. RYAN MORGAN
Florida Bar No.: 15527
Morgan & Morgan, P.A.
20 North Orange Avenue
Orlando, Florida 32801

Of Counsel:

JEREMIAH FREI-PEARSON (*Pro Hac Vice* forthcoming)
Meiselman, Packman, Nealon, Scialabba & Baker, P.C.
1311 Mamaroneck Avenue
White Plains, New York 10605
Telephone:  (914) 517-5000
Facsimile:  (914) 517-5055
jfrei-pearson@mpnsb.com

*Attorneys for Plaintiffs*

20