UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| JUSTIN BARKLEY, BRIAN PHILLIPS and JERRY J. WALSH, individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiffs,<br><br>　　　　v.<br><br>PIZZA HUT OF AMERICA, INC.,<br><br>　　　　　　Defendant. | CASE NO. 6:14-cv-00376-RBD-DAB<br><br>**FIRST AMENDED<br>CLASS ACTION COMPLAINT**<br><br>**ECF CASE**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiffs Justin Barkley ("Mr. Barkley"), Brian Phillips ("Mr. Phillips") and Jerry J. Walsh ("Mr. Walsh") (collectively, "Plaintiffs") by their undersigned attorneys, individually and on behalf of all others similarly situated, allege, with personal knowledge as to their own actions, and upon information and belief as to those of others, as follows:

## NATURE OF THE ACTION

1.　　This action seeks to redress Defendant Pizza Hut of America, Inc.'s ("Defendant" or "Pizza Hut") systematic policy and practice of paying its delivery drivers hourly wages well below those required by the Florida Minimum Wage Act ("FMWA").

2.　　Plaintiffs are loyal employees and a majority of Plaintiffs have worked as pizza delivery drivers most of their adult lives. During this time, Plaintiffs have received consistently

high reviews and have always performed the tasks required of them by Pizza Hut and by other pizza companies.

3. The Florida Constitution provides that "All working Floridians are entitled to be paid a minimum wage that is sufficient to provide a decent and healthy life for them and their families, that protects their employers from unfair low-wage competition, and that does not force them to rely on taxpayer-funded public services in order to avoid economic hardship." Art. X, § 24 (a), Fla. Const. As the courts have long recognized, denying employees the minimum wage "is an abuse which springs from [an employer's] selfish disregard of the public interest." *W. Coast Hotel Co. v. Parrish*, 300 U.S. 379, 400, 57 S. Ct. 578, 585, 81 L. Ed. 703 (1937). Unfortunately, Defendant has consistently refused to pay Plaintiffs and their colleagues the minimum wage mandated by Florida law, preferring instead to selfishly pocket excess profits rather than to fairly pay its employees.

4. The FMWA requires that employers provide their employees with sufficient reimbursements for employment-related expenses to ensure that employees' hourly wages equal or exceed the minimum wage after employment-related expenses ("kickbacks") are counted against the hourly wages. However, Defendant has paid, and, upon information and belief, continues to pay its delivery drivers an hourly wage equal to or very near the minimum wage and then under-reimburses the delivery drivers for vehicular wear and tear, gas and other driving-related expenses, thereby ensuring that all of Defendant's delivery drivers are effectively paid well below the minimum wage.

5. Indeed, Defendant has long been on notice that the wages it pays delivery drivers violate the FMWA, because many courts have recognized that pizza chains with identical or

2

similar policies under-reimburse their delivery drivers, thereby violating state and federal minimum wage laws. *See, e.g.*, *Castillo et al. v. Pizza Hut, Inc. et al.*, No. BC318765 (Super. Ct. L.A. Cnty. Oct. 18, 2006) (approving a settlement on behalf of under-reimbursed Pizza Hut delivery drivers in California); *Pohle v. Two Mays, Inc.*, No. 2009 CA 002965 (Escambia Cnty. Cir. Ct. 2009) (approving a confidential settlement in a FMWA delivery driver under-reimbursement case against a Dominos pizza franchisee).

6. Through this action, Plaintiffs seek to redress Defendant's failure to pay them the minimum wage to which they and their colleagues are lawfully entitled.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from the Defendant; there are more than 100 Class members; and the aggregate amount in controversy exceeds $5,000,000.

8. Venue is proper in this Court as Defendant has operated multiple restaurants in Orlando; the events at issue occurred in or near Orlando; and two of the three Plaintiffs live in or near Orlando.

## PARTIES

9. Plaintiff Justin Barkley is a delivery driver who worked for Defendant in Florida from 2008 until December 7, 2009. Mr. Barkley lives in Georgia.

10. Plaintiff Brian Phillips is a delivery driver who worked for Defendant from approximately June of 2008 until December 7, 2009. Mr. Phillips lives in Orlando, Florida.

3

11. Plaintiff Jerry J. Walsh is a delivery driver who worked for Defendant from approximately 1995 until December 7, 2009. Mr. Walsh lives in Winter Park, Florida.

12. Pizza Hut of America, the world's largest branded pizza restaurant company, is a Delaware Corporation that is headquartered in Texas. Pizza Hut of America has owned and operated thousands of Pizza Hut restaurants during the class period, and more than a hundred such restaurants in Florida. Pizza Hut of America owned and operated the restaurants employing Plaintiffs.

13. On or about December 7, 2009, non-party CFL acquired approximately 91 Pizza Hut franchises from Pizza Hut of America, including the restaurants where Plaintiffs worked as delivery drivers.

## STATEMENT OF FACTS

### Litigation Background

14. On July 9, 2009, a substantially similar class action was filed that sought to cover all of Pizza Hut's delivery drivers for alleged violations of federal law and the minimum wage laws of several states, including Florida. *See Smith v. Pizza Hut, Inc.*, No. 09-1632 (D. Colo. July 9, 2009). It was not until July 14, 2011 that Judge Arguello granted Pizza Hut's motion to dismiss as to the putative Florida class on the grounds that the *Smith* named plaintiff could not represent Floridians. *See Smith*, 2011 WL 2791331, at *7, 10.

15. Shortly thereafter, on October 25, 2011, a virtually identical class action was filed against CFL Pizza, LLC ("CFL") on behalf of a class of Florida delivery drivers. *See Hanna v. CFL Pizza, LLC*, No. 05-2011-CA-52949 (Fla. Cir. Ct. Brevard Cnty.). Because CFL purchased approximately 91 stores from Pizza Hut in December of 2009 and operated those stores pursuant

4

to the policies and practices that Defendant created, the *Hanna* plaintiffs also named Pizza Hut as a defendant in the action on the theory of successor liability. As such, Plaintiffs were part of the putative *Hanna* class.

16.  CFL moved to dismiss on numerous grounds, arguing, *inter alia*, that the plaintiffs' complaint lacked sufficient detail; the FMWA does not provide a cause of action for under-reimbursement; the plaintiffs were required to give notice and did not provide adequate notice; the case could not be maintained as a class action; and the doctrine of successor liability did not apply. Judge Maxwell denied CFL's motion to dismiss on all grounds except for successor liability. *See Hanna v. CFL Pizza, LLC*, No. 05-2011-CA-52949 (Fla. Cir. Ct. Brevard Cnty. June 21, 2012). However, Judge Maxwell dismissed the plaintiffs' claims against CFL for the time prior to when CFL purchased the restaurants that employed Mr. Hanna and his colleagues. *See id.* Judge Maxwell ordered the parties to mediate after discovery and then approved a class-wide settlement.

17.  In light of Judge Maxwell's ruling denying successor liability, two plaintiffs from the CFL action brought an action against Defendant on July 13, 2012. Pizza Hut produced an "arbitration agreement" and the parties agreed to arbitrate. To date, two arbitrators have decided the issue of whether Pizza Hut's arbitration agreement allows for class arbitration in light of *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010) and its progeny. One arbitrator held that the agreement allows for class arbitration; another held that it does not allow for class arbitration. Plaintiffs, however, are not covered by any "arbitration agreement."

**General Background**

18. From 2004 to the present, the primary function of Pizza Hut restaurants, including all Pizza Hut restaurants in Florida, is to sell pizza and other foods and beverages. Accordingly, Defendant was engaged in commerce.

19. Pizza Hut restaurants, including those operated by Defendant, are employers under the FMWA. During the relevant time period and to date, Defendant's annual profits have always been well in excess of $500,000. Defendant paid and supervised its employees, including Plaintiffs and other delivery drivers.

20. Defendant employed delivery drivers, all of whom have the same job duty: to deliver pizzas and other food and beverages to customers. Plaintiffs and all other Pizza Hut delivery drivers are clearly employees within the meaning of the FMWA.

21. Some delivery drivers worked inside a Pizza Hut restaurant during certain hours and work as delivery drivers at other times.

22. During Plaintiffs' tenure as Pizza Hut employees, they consistently worked approximately 20-40 hours per week, with their time split approximately evenly between delivery driving and in-store work.

**Defendant's Policy of Systematically Under-Reimbursing Delivery Drivers**

23. Defendant requires its delivery drivers to maintain and pay for their own safe, legally-operable, and insured automobiles, which the drivers were required to use when performing their duties as delivery drivers.

24. Pizza Hut delivery drivers incur costs for gasoline, vehicle parts and fluids, automobile repair and maintenance services, elevated automobile insurance, and depreciation

6

(collectively, "vehicular expenses") while delivering food and beverages for the primary benefit of Pizza Hut franchises and affiliates, including Defendant's stores.

25.     Since 2004, Pizza Hut stores in Florida reimbursed their delivery drivers at a rate ranging from approximately $0.50 to $1.25 per delivery. The reimbursement rate when Pizza Hut sold to CFL in December of 2009 was $0.86 per delivery.

26.     Defendant applied the same reimbursement rate to all deliveries, regardless of the actual distance driven by the delivery driver. Defendant does not reimburse its delivery drivers in any way for unsuccessful deliveries.

27.     Plaintiffs and other drivers drive approximately 5 miles per delivery, so Defendant's current reimbursement rate is approximately 25 cents per mile ($1.25 divided by 5 miles equals 25 cents per mile).

28.     Although Defendant currently reimburses its delivery drivers at a rate of just 25 cents per mile, the IRS business mileage reimbursement rate has exceeded that rate for every year since 1988, when gas cost just $1.08 a gallon.

29.     In 2009, when Defendant sold the stores that employed Plaintiffs, Defendant's reimbursement rate was approximately 17.2 cents per mile ($0.86 divided by 5 miles equals 17.2 cents per mile). The IRS business mileage reimbursement rate has exceeded 17 cents every year since 1978, when gas cost just 63 cents per gallon.

30.     In 2004, Defendant reimbursed its delivery drivers at approximately 50 cents per delivery, an amount equal roughly to a per mile reimbursement rate of just 10 cents (50 cents divided by 5 miles equals 10 cents per mile). The IRS business mileage reimbursement rate has exceeded 10 cents every year since 1969, when gas cost just 35 cents per gallon.

7

31. From 2004 through the present, the IRS business mileage reimbursement rate has ranged between $0.375 and $0.585. Upon information and belief, Defendant's highly-paid executives are reimbursed using the IRS rate, which is more than two times the rate at which Defendant reimbursed, and continues to reimburse, its underpaid delivery drivers.

32. Similarly, reputable companies that study the cost of owning and operating a motor vehicle and/or reasonable reimbursement rates, including the American Automobile Association, have determined that the average cost of owning and operating a vehicle ranged between $0.45 and $0.749 per mile from 2004 to present.

33. The above-referenced mileage reimbursement rates represent a reasonable approximation of a monetary average per mile that is lower than the actual cost incurred by delivery drivers. Delivery drivers incur higher expenses than other business drivers because their profession often requires them to drive more than 100 miles per night, to frequently navigate in start and stop traffic, to often engage in city driving, to drive to and from locations on tight schedules, and to drive during late hours and in inclement weather. As a result, delivery drivers' vehicles are subjected to more frequent routine maintenance costs, higher costs due to repairs associated with driving, lower gas mileage, and more rapid depreciation because of the frequency and manner in which their vehicles are driven.

34. Insurance providers recognize the hazards of working as a pizza delivery driver. Unsurprisingly, pizza delivery drivers pay significantly higher automobile insurance rates than do regular drivers, and some pizza companies even provide their drivers with automobile insurance coverage. *See* http://www.insureme.com/auto-insurance/insurance-for-delivery-drivers. Defendant does not provide insurance for its drivers.

35. Mr. Barkley drove a Honda Accord from 2008 through December of 2009. Mr. Barkley can document that the out-of-pocket vehicular expenses he incurred while delivering pizza amounted to at least $0.41 per mile, exclusive of insurance costs, the value of vehicle depreciation, and the potential for larger repairs.

36. Because Mr. Barkley did not have any driving habits or routes that are unusual, his out-of-pocket cost of $0.41 per mile is a reasonable approximation of the absolute minimum non-inclusive out-of-pocket expenses incurred by Pizza Hut delivery drivers.

37. Brian Phillips drove a Ford Explorer and a Honda Civic from 2008 through December of 2009. Mr. Phillips can document that the out-of-pocket vehicular expenses he incurred while delivering pizza amounted to at least $0.45 per mile, exclusive of insurance costs, the value of vehicle depreciation, and the potential for larger repairs.

38. Mr. Walsh drove a Nissan XE V6 King Cab Pickup Truck from 2004 through December of 2009. Mr. Walsh can document that the out-of-pocket vehicular expenses he incurred while delivering pizza amounted to at least $0.43 per mile, exclusive of insurance costs, the value of vehicle depreciation, and the potential for larger repairs.

39. The overall depreciation and wear-and-tear on vehicle parts, coupled with the cost of insurance, increase the cost per mile of operating their own vehicles over and above the aforementioned estimates and are sufficient to place their cost of owning and operating their vehicles for Defendant's benefit within or above the range found by the IRS which, as stated above, represents a reasonable low-end approximation of the cost of owning and operating a vehicle to deliver pizzas and other food and beverages.

40. Because Plaintiffs were paid the minimum wage and because the number of deliveries made (and therefore the number of miles driven) in an hour can fluctuate, the value of under-reimbursement per mile is a more precise means of calculating the value of under-payment than the value of under-reimbursement per hour.

41. Nonetheless, during a *typical* hour, Plaintiffs drove approximately 30 miles and make 6 deliveries. Using the 2008 IRS mileage reimbursement rate of $0.585, Plaintiffs and their colleagues were entitled to approximately $17.55 per typical hour for reimbursement purposes (30 miles multiplied by 58.5 cents per mile equals $17.55). However, in 2009, Defendant reimbursed at a rate of only approximately $5.16 per typical hour (6 deliveries multiplied by $.86 equals $5.16).

42. As a result, in 2009, Plaintiffs and their colleagues were systematically under-reimbursed by a rate of approximately $12.43 per typical hour ($17.55 minus $5.12 equals $12.43).

43. Until recently, upon information and belief, Defendant reimburses its Florida delivery drivers at a rate of only approximately $7.50 per typical hour (6 deliveries multiplied by $1.25 equals $7.50). Although this reimbursement rate is an improvement, it is still far from sufficient to fully reimburse delivery drivers for the actual costs incurred as a result of delivering food and goods for the benefit of Defendant.

44. Because Defendant paid Plaintiffs at or near the minimum wage and, upon information and belief, Defendant has paid and pays all other delivery drivers at or near the minimum wage, Defendant systematically under-pays its delivery drivers by more than $10.00 per typical hour.

45. Defendant under-reimbursed Plaintiffs and all other delivery drivers in the manner just described, thereby under-paying its delivery drivers.

46. Defendant's reimbursement rate did not reasonably reimburse its delivery drivers for their out-of-pocket expenses, much less other costs they incur to own and operate their vehicle. This rate thus uniformly fails to reimburse Defendant's delivery drivers at any reasonable approximation of the cost of owning and operating their vehicles for Defendant's benefit.

47. Defendant's systematic failure to adequately reimburse delivery drivers for their automobile expenses constitutes a "kickback" to the Pizza Hut such that the hourly wages it pays and has paid to Plaintiffs and other delivery drivers are not paid free and clear of all outstanding obligations to Defendant.

### Defendant's Failure to Properly Reimburse Vehicular Expenses Violates the Florida Minimum Wage Act

48. Regardless of the precise amount of the per-mile reimbursement, Defendant unquestionably failed to reasonably approximate the amount of its drivers' vehicular expenses to such an extent that its drivers' wages were diminished well beneath the minimum required by Florida law.

49. Plaintiffs have been paid at or very near to the hourly minimum wage set by the State of Florida for their entire tenures as delivery drivers.

50. Florida's hourly minimum wage was $5.15 in 2004 and has regularly increased since then. Florida's minimum wage is currently $7.93 per hour.

51. At all relevant times, the amount of the under-reimbursement was sufficient to ensure that Plaintiffs and their colleagues were paid below Florida's minimum wage.

52. For example, in November of 2009, Plaintiffs' wage was $7.29, the minimum allowable under Florida law. As set forth above, Plaintiffs were under-reimbursed by approximately 41 cents per mile driven, or by $12.43 per typical hour. *See supra* at ¶¶ 25-42. Defendant therefore violated the FMWA by a significant margin.

53. On November 10, 2011, Mr. Hanna, through counsel, mailed a demand letter to Pizza Hut of America and Pizza Hut of Titusville via Federal Express. (Letter from J. Frei-Pearson to T. Grill, Nov. 10, 2011, attached hereto as Exhibit A). Pizza Hut of America and Pizza Hut of Titusville received this letter on or about November 11, 2011. This letter applied to all class plaintiffs covered by the *Hanna* action, and thus covered Plaintiffs.

54. Nonetheless, out of an abundance of caution, each of the Plaintiffs, through counsel, mailed a separate demand letter to Defendant's counsel via electronic mail. (Letter from J. Frei-Pearson to G. DeBoskey, Oct. 6, 2013, attached hereto as Exhibit B (Jerry Walsh Letter); letter from J. Frei-Pearson to G. DeBoskey, Oct. 7, 2013, attached hereto as Exhibit C (Brian Phillips Letter); letter from J. Frei-Pearson to G. DeBoskey, Oct. 16, 2013, attached hereto as Exhibit D (Justin Barkley Letter)).

55. Although Plaintiffs were very willing to engage in negotiations, Defendant did not engage in substantive pre-suit negotiations. Defendant's only response to these letters was to request additional time to find "arbitration agreements." Defendant has not produced any "arbitration agreements" that apply to Plaintiffs.

56. Mr. Hanna sent similar letters to non-party CFL, a Pizza Hut franchisee that employed Plaintiffs and engaged in the same unlawful denial of the minimum wage. In contrast to Defendant's non-responsiveness, counsel for Plaintiffs and counsel for CFL engaged in significant pre-suit negotiations before agreeing that they could not reach resolution.

57. All conditions precedent to filing this Complaint have been performed or waived.

58. Pursuant to the Florida Minimum Wage Act, Art. X, § 24 of the Florida Constitution and F.S.A. § 448.110 *et seq.*, Plaintiffs and the Class are entitled to: injunctive relief, the recovery of the full amount of unpaid wages owed, liquidated damages, costs, attorneys' fees, and to any other relief which this Court deems just and proper. Plaintiffs hereby request that all claims herein by tried by a jury of their peers.

## CLASS ACTION ALLEGATIONS

59. This action is maintainable as a class action pursuant to Rule 23(b)(3) and Rule 23(b)(2) of the Federal Rule of Civil Procedures.

60. The Class consists of all Florida delivery drivers employed by Defendant since November 2, 2004 who have been and/or are being paid an hourly wage below Florida's minimum wage due to Defendant's under-reimbursement. Excluded from the class are any Florida delivery drivers who Pizza Hut proves contractually agreed to arbitrate their claims, provided that Pizza Hut provides valid proof of agreement to arbitrate by the agreed upon date of October 17, 2014.

61. The Class is so numerous that joinder of all members is impracticable. The number and identity of class members may be determined by Defendant's records, but the class size very likely exceeds 1,000 people.

62. There are substantial questions of fact and law common to Plaintiffs and all class members, including, *inter alia*:

   a. Whether Defendant required Plaintiffs and the Class members to pay their "out-of-pocket" vehicle maintenance costs;

   b. Whether Defendant violated Florida law by failing to pay Plaintiffs and the Class members supplemental wages to offset their vehicle maintenance costs and ensure that they received more than the required minimum hourly wage;

   c. Whether Defendant was unjustly enriched by failing to properly reimburse its delivery drivers; and

   d. Whether Plaintiffs and other similarly situated employees of Defendant are entitled to additional wages based on a theory of unjust enrichment.

63. Plaintiffs' claims are typical of the Class.

64. Plaintiffs will fairly and adequately protect the interests of the Class. Their claims span the breadth of issues raised in this action.

65. Class representatives' counsel are appropriately qualified to represent the Class.

66. Joinder of class members' individual actions is impractical because of the limited ability of individual class members to institute separate suits and the general nature of the underlying action and relief sought. The prosecution of separate actions by individual class members would create a risk of inconsistent results that could establish incompatible standards of conduct for Defendant.

67. Defendant has acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief with respect to the Class as a whole.

68. Defendant's liability for damages can be established by facts and circumstances common to the Class as a whole and does not require the examination of the Plaintiffs' individual circumstances.

69. Questions of law and fact common to members of the Class predominate over any questions affecting only individual members.

70. A class action is superior in this case to other methods for a fair and efficient adjudication of the controversy because: (A) the common interests of the class members predominate over any individual interest in controlling prosecution or control of separate actions; (B) no similar litigation between the parties is currently pending in court; (C) concentrating litigation of this action in this Court is appropriate to ensure appropriate, consistent, and efficient resolution of the issues raised; and (D) there will be no significant difficulties in managing an action involving this Class.

## FIRST CLAIM FOR RELIEF
### Violation of the Florida Minimum Wage Act, Art. X, § 24 (a), Fla. Const; F.S.A. § 448.110 *et seq*.

71. Plaintiffs and Class Members reassert their allegations set forth in Paragraphs (1) through (70) above and incorporate them by reference into this first Claim of Relief.

72. Through counsel, Plaintiffs informed Defendant of their intent to bring an action under the FMWA more than 15 days prior to the commencement of this action. This notice identified the minimum wage to which Plaintiffs and the Class are entitled, the actual and

estimated work dates and hours for which payment is sought, and the total amount of alleged unpaid wages through the date of the notice.

73. Defendant systematically and willfully did not pay Plaintiffs and the Class the minimum wage to which they are entitled under the FMWA, because Defendant did not provide reimbursements for driving-related expenses that were equal to the actual driving-related expenses incurred by Plaintiffs and the Class.

74. Under the FMWA, Plaintiffs and the Class are entitled to: injunctive relief, the recovery of the full amount of unpaid wages owed, liquidated damages, costs, attorneys' fees, and to any other relief which this Court deems just and proper.

## SECOND CLAIM FOR RELIEF
### Declaratory Judgment, Fla. Stat. § 86.021

75. Plaintiffs and Class Members reassert their allegations set forth in Paragraphs (1) through (70) above and incorporate them by reference into this second Claim of Relief.

76. Because of Defendant's flagrant and systematic violation of the FMWA, Plaintiffs and the Class have an actual, practical and present need for a declaratory judgment as to the existence and definition of their kickback related rights under the FMWA.

77. Under Fla. Stat. § 86.021, Plaintiffs and the Class respectfully request a declaratory judgment that Defendant's reimbursement rate for delivery drivers, coupled with their hourly wages, violates the FMWA.

## THIRD CLAIM FOR RELIEF
### Unjust Enrichment

78. Plaintiffs and Class Members reassert their allegations set forth in Paragraphs (1) through (70) above and incorporate them by reference into this third Claim of Relief.

79. Plaintiffs and the Class have conferred benefits on Defendant by delivering pizza and other goods in exchange for the minimum wage. By under-reimbursing its drivers for their expenses, Defendant knowingly and willingly obtained monetary benefits from Plaintiffs and the Class to which it was not entitled.

80. Under the circumstances described herein, it is inequitable for Defendant to retain this monetary benefit at the expenses of Plaintiffs and the Class.

81. By engaging in the conduct described above, Defendant has been unjustly enriched at the expense of Plaintiffs and the Class and is required, in equity and good conscience, to compensate Plaintiffs and the Class for harm suffered as a result of its actions.

82. As a direct and proximate result of Defendant's unjust enrichment, Plaintiffs and the Class have suffered injury and are entitled to reimbursement, restitution, and disgorgement by Defendant of the benefit conferred by Plaintiffs and the Class.

## DEMAND FOR JURY TRIAL

83. Plaintiffs, on behalf of themselves and all others similarly situated, demand a trial by jury of any and all issues in this action so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray as follows:

(a) That this Court award compensatory damages to Plaintiffs and all class members, including pre-judgment and post-judgment interest;

(b) That this Court award liquidated damages to Plaintiffs and all class members;

(c)     That this Court order Defendant to pay all of its delivery drivers a reimbursement rate sufficient to ensure that all delivery drivers receive hourly wages equal to or exceeding those mandated by the FMWA;

(d)     That this Court order Defendant to provide automobile insurance coverage for its delivery drivers while they are working as delivery drivers;

(e)     That this Court enjoin Defendant from paying any of its delivery drivers a reimbursement rate insufficient to ensure that the delivery driver receives hourly wages below those mandated by the FMWA;

(f)     That this Court grant to Plaintiffs and all class members their costs and reasonable attorneys' fees;

(g)     That this Court declare that Defendant's reimbursement rate for delivery drivers, in conjunction with the hourly wages it pays, violates the FMWA; and

(h)     That this Court grant such additional relief as the Court deems just and proper.

Dated:     October 16, 2014

          Respectfully submitted,

          /s/ Jeremiah Frei-Pearson
          JEREMIAH FREI-PEARSON (*Pro Hac Vice*)
          Finkelstein, Blankinship,
          Frei-Pearson & Garber, LLP
          1311 Mamaroneck Avenue
          White Plains, New York 10605
          Telephone:  (914) 298-3281
          Facsimile:  (914) 824-1561
          jfrei-pearson@fbfglaw.com

          C. RYAN MORGAN
          Florida Bar No.:  15527

Morgan & Morgan, P.A.
20 North Orange Avenue
Orlando, Florida 32801

*Attorneys for Plaintiffs and the putative Class*