**UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| JUSTIN BARKLEY, BRIAN PHILLIPS and JERRY J. WALSH, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>PIZZA HUT OF AMERICA, INC.,<br><br>        Defendant. | CASE NO. 6:14-cv-00376-RBD-DAB<br><br><br><br>**ECF CASE** |

**PLAINTIFFS' MOTION FOR CLASS**
**CERTIFICATION AND INCORPORATED MEMORANDUM OF LAW**

{00273199 }

## TABLE OF CONTENTS

**Page No.**

TABLE OF AUTHORITIES ............................................................................................ i-iii

MOTION ........................................................................................................................... 1

MEMORANDUM OF LAW ............................................................................................. 1

I.   Introduction ............................................................................................................ 1

II.   Facts ....................................................................................................................... 7

      A.  Background ..................................................................................................... 7

      B.  Pizza Hut Created A Mathematical Equation To Attempt To
          Justify The Uniform Reimbursement Rate It Paid Class Members. ............... 9

      C.  Pizza Hut's Mathematical Equation Systematically
          Under-Reimbursed All Class Members For Their Driving Expenses. ............ 9

              1.  Class Members Drove More Than Double The Distance
                   For Which Pizza Hut's Formula Purported To Reimburse Them ................... 9

              2.  Pizza Hut Did Not Record Any Class Members' Actual Expenses ............... 11

              3.  Pizza Hut Forced Class Members To Incur
                   Substantial Expenses That Were Far Greater Than
                   The Reimbursement Pizza Hut Paid Class Members ..................................... 13

III.   Argument ............................................................................................................. 15

      A.  Legal Standard ............................................................................................. 15

      B.  The Class Is Ascertainable ........................................................................... 16

      C.  The Class Satisfies Rule 23(a) ..................................................................... 16

              1.  The Class Is Sufficiently Numerous .............................................................. 16

              2.  Numerous Common Questions Exist .............................................................. 16

               3.  Plaintiffs' Claims Are Typical ....................................................................... 18

              4.  Plaintiffs And Their Counsel Will Fairly
                   And Adequately Protect The Class' Interests ................................................. 18

D.  The Proposed Class Satisfies The Rule 23(b)(3) Factors ............................................ 20

    1.  Common Questions Of Law Or Fact Predominate......................................... 20

    2.  A Class Action Is Superior To Other
       Methods Of Adjudication Of This Controversy ............................................ 26

CONCLUSION ................................................................................................................... 29

# TABLE OF AUTHORITIES

**Cases**

*Abdullah v. U.S. Security Assocs., Inc.*,
   731 F.3d 952 (9th Cir. 2013) ..................................................................................................23

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997).................................................................................................................15

*Assoc., P.A. v. Allstate Ins. Co.*,
   293 F.R.D. 287 (E.D.N.Y. 2013)............................................................................................26

*Babineau v. Fed. Exp. Corp.*,
   576 F.3d 1183 (11th Cir.2009) ...............................................................................................20

*Bass v. PJComn Acquisition Corp.*,
   No. 09–01614, 2010 WL 3720217 (D. Colo. Sept. 15, 2010) ..................................................2

*Bellaspica v PJPA, LLC*,
   No. 13-3014, 2014 WL 945003 (E.D. Pa Mar. 11, 2014) ........................................................2

*Bouaphakeo v. Tyson Foods, Inc.*,
   765 F.3d 791 (8th Cir. 2014), ................................................................................................17

*Bush v. Calloway Consol. Grp. River City, Inc.*,
   No. 10-841, 2012 WL 1016871 .....................................................................................passim

*Cox v. Sherman Capital LLC*,
   295 F.R.D. 207 (S.D. Ind. 2013)............................................................................................23

*Dalton v. Lee Publications, Inc.*,
   270 F.R.D. 555 (S.D. Cal. 2010) ...........................................................................................22

*Darrow v. WKRP Mgmt., LLC*,
   No. 09-1632, 2012 WL 638119 (D. Colo. Feb. 28, 2012)........................................................2

*Engel v. Scully & Scully, Inc.*,
   279 F.R.D. 117 (S.D.N.Y. 2011) ...........................................................................................16

*Ewing Indus. Corp. v. Bob Wines Nursery, Inc.*,
   No. 14-13842, 2015 WL 4605234 (11th Cir. Aug. 3, 2015) .....................................................4

*Flores v. Anjost Corp.*,
   284 F.R.D. 112 (S.D.N.Y. 2012) ...........................................................................................23

*Garcia v. Koning Restaurants Int'l, L.C.*,
   No. 12-23629, 2013 WL 8150984 (S.D. Fla. May 10, 2013)..................................................25

*Garcia-Celestino v. Ruiz Harvesting, Inc.*,
  280 F.R.D. 640 (M.D. Fla. 2012) ...................................................................... 17, 18, 23

*Gattuso v. Harte-Hanks Shoppers, Inc.*,
  42 Cal. 4th 554 (2007) .......................................................................................... 5

*Griffin v. Singletary*,
  17 F.3d 356 (11th Cir. 1994) ................................................................................. 4

*Grimes v. Rave Motion Pictures Birmingham*,
  264 F.R.D. 659 (N.D. Ala. 2010) ........................................................................ 15

*Hanna v. CFL Pizza, LLC*,
  No. 11-1837, 2012 WL 515875 (M.D. Fla. Jan. 30, 2012) ................................. 21

*Hopkins v. Stryker Sales Corp.*,
  No. 11-02786, 2012 WL 1715091 (N.D. Cal. May 14, 2012) ............................ 23

*In re Checking Account Overdraft Litig.*, No.,
  No. 09-02036, 2015 WL 3551527 (S.D. Fla. June 8, 2015) ............................... 20

*In re Initial Public Offerings Sec. Litig.*,
  471 F.3d 24 (2d Cir. 2006) ................................................................................. 15

*In re Scotts EZ Seed Litig.*,
  304 F.R.D. 397 (S.D.N.Y. 2015) ........................................................................ 10

*Keller v. Macon Cnty. Greyhound Park, Inc.*,
  No. 7-1098, 2011 WL 1085976 (M.D. Ala. Mar.24, 2011) ............................... 15

*Klay v. Humana, Inc.*,
  382 F.3d 1241 (11th Cir. 2004) .......................................................................... 20

*Lassen v. Hoyt Livery Inc.*,
  No. 13-01529, 2014 WL 4638860 (D. Conn. Sept. 17, 2014) ........................... 23

*Leyva v. Medline Industries Inc.*,
  716 F.3d 510 (9th Cir. 2013) ......................................................................... 23, 27

*Ortiz v. CVS Caremark Corp.*,
  No. 12-05859, 2013 WL 6236743 (N.D. Cal. Dec. 2, 2013) .............................. 26

*Perrin v. Papa John's Int'l, Inc.*,
  No. 09-01335, 2011 WL 4089251 (E.D. Mo. Sept. 14, 2011) ............................. 2

*Perrin v. Papa John's Int'l, Inc.*,
  No. 09-01335, 2015 WL 3823142 (E.D. Mo. June 19, 2015) ....................... 17, 19

*Perrin v. Papa John's Int'l, Inc.,*
No. 09-01335, 2015 WL 4131358 (E.D. Mo. July 8, 2015)..........................................................24

*Perrin v. Papa John's Int'l., Inc.,*
No. 09-01335, 2013 WL 6885334 (E.D. Mo. Dec. 31, 2013) ....................................................2, 17

*Schojan v. Papa Johns Int'l, Inc.,*
303 F.R.D. 659 (M.D. Fla. 2014) ...............................................................................................20

*Smilow v. Southwestern Bell Mobile Systems, Inc.,*
323 F.3d 32 (1st Cir. 2003).........................................................................................................26

*Smith v. Pizza Hut, Inc.,*
No. 09-01632, 2012 WL 1414325 (D. Colo. Apr. 21, 2012) ....................................................1, 2

*Stuart v. Radioshack Corp.,*
No. 07-4499, 2009 WL 281941 (N.D. Cal. Feb. 5, 2009) ...........................................................22

*Valley Drug Co. v. Geneva Pharm., Inc.,*
350 F.3d 1181 (11th Cir. 2003) ..................................................................................................15

*Wass v. NPC Int'l, Inc.,*
No. 09-2254, 2011 WL 1118774 (D. Kan. Mar. 28, 2011) ...........................................................2

*Zellagui v. MCD Pizza, Inc.,*
59 F. Supp. 3d 712 (E.D. Pa. 2014) .................................................................................5, 9, 22, 24

**Arbitration Awards**

*In the Matter of the Arbitration Between David Wright and Pizza Hut, Inc. et al.,*
AAA Case No. 33-20-1300-0398 (Aug. 13, 2015) ...........................................................passim

*In the Matter of the Arbitration between Lauren Rausch and Pizza Hut, Inc. et al.,*
AAA Case No. 33-20-1300-0513 (Dec. 22, 2014) ...........................................................passim

*In the Matter of the Arbitration between Lauren Rausch and Pizza Hut, Inc. et al.,*
AAA Case No. 33-20-1300-0513 (Jun. 19, 2014) ...........................................................passim

*In the Matter of the Arbitration Between Marion Edinger and Pizza Hut, Inc. et al.,*
AAA Case No. 33-20-1400-0053 (Jan. 8, 2015) ..............................................................passim

*In the Matter of the Arbitration between Robert Clark and Pizza Hut, Inc., et. al.,*
AAA Case No. 33-20-1300-0399 (Aug. 13, 2015) ...........................................................passim

**Rules**

Federal Rule of Civil Procedure 23...............................................................................passim

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs Justin Barkley, Brian Phillips, and Jerry J. Walsh ("Plaintiffs") respectfully request that this Court certify a class of all delivery drivers employed by Defendant Pizza Hut of America, Inc. ("Defendant" or "Pizza Hut") in Florida during the relevant statutory period, excluding drivers for whom Pizza Hut has provided valid proof of agreement to arbitrate.

## MEMORANDUM OF LAW

### I.    Introduction

Pizza Hut systematically padded its profits ███████████████ by under-reimbursing all of its delivery drivers pursuant to a simple uniform scheme.  Pizza Hut paid Plaintiffs and all of its Florida delivery drivers, including those Florida drivers who did not sign arbitration agreements ("Class Members"), at or near the minimum wage and then systematically under-reimbursed them for their driving expenses, thereby pushing their wages below the minimum.  Pizza Hut reimbursed all Class Members at the exact same set rate per delivery (the uniform rate changed over time).  The uniform rate Pizza Hut paid to all of its Florida delivery drivers was consistently less than one-third of the IRS standard mileage rate and was far lower than the drivers' actual expenses.  Pizza Hut's perpetrated this uniform and systematic unlawful wage practice against every Class Member, making this case ideally suited for class treatment.

Because of the uniform and systematic nature of Pizza Hut's under-reimbursement, courts throughout the country have certified similar cases against Defendant and other pizza companies. *See Behaien v. Pizza Hut*, No. 541415 (Cal. Sup. Ct. July 15, 2015) (certifying a state-wide class of all California Pizza Hut delivery drivers who were under-reimbursed pursuant to the policy at issue in the instant matter) (Exhibit A to the Declaration of Jeremiah Frei-Pearson ("Frei-Pearson Dec.")); *Smith v. Pizza Hut, Inc.*, No. 09-01632, 2012 WL 1414325, at *4 (D. Colo. Apr. 21, 2012) (conditionally certifying a FLSA class of Pizza Hut delivery drivers who were under-reimbursed pursuant to the policy at issue and noting that "Plaintiff's argument is supported by the decisions of

numerous district courts, as well as this Court, that have considered motions for collective action certification under the FLSA brought by plaintiff delivery drivers against defendant pizza companies for minimum wage violations [relating to under-reimbursement].  In every case, courts have conditionally certified a collective action.") (collecting cases); *Zellagui v. MCD Pizza*, No. 14-01475 (E.D. Pa. Aug. 8, 2014) (certifying a Rule 23 class pursuant to Pennsylvania's minimum wage law, which is similar to Florida law); *Oregel v. PacPizza, LLC*, No. 12-01454 Cal. Sup. Ct. Apr. 23, 2014) (certifying a statewide class against a Pizza Hut franchisee pursuant to California law, which is similar to Florida law), Exhibit B to Frei-Pearson Dec.; *Perrin v. Papa John's Int'l., Inc.*, No. 09-01335, 2013 WL 6885334, at *8 (E.D. Mo. Dec. 31, 2013) (certifying Rule 23 classes pursuant to Florida law and the laws of several other states); *Bass v. PJComn Acquisition Corp.*, No. 09–01614, 2010 WL 3720217, at *2 (D. Colo. Sept. 15, 2010) (conditionally certifying an FLSA class); *Bellaspica v PJPA, LLC*, No. 13-3014, 2014 WL 945003 (E.D. Pa Mar. 11, 2014) (same); *Darrow v. WKRP Mgmt., LLC,* No. 09-1632, 2012 WL 638119 (D. Colo. Feb. 28, 2012) (same); *Perrin v. Papa John's Int'l, Inc.,* No. 09-01335, 2011 WL 4089251 (E.D. Mo. Sept. 14, 2011) (same); *Wass v. NPC Int'l, Inc.,* No. 09-2254, 2011 WL 1118774, at *4 (D. Kan. Mar. 28, 2011) (same).

Indeed, this Court will seldom be presented with a case more amenable to class treatment. One common fact issue predominates over this litigation: whether Pizza Hut's uniform driver reimbursement rate was insufficient and if so, what the proper rate should have been.  Pizza Hut's computerized payroll and delivery records provide common proof that can be used to identify every class member and to calculate average delivery distances for all of the drivers in each Florida Pizza Hut store, and Plaintiffs will calculate each class members damages simply  by multiplying average driving distances by the proper per-mile reimbursement rate.  That rate is either, as a matter of law, the IRS rate, or the jury will reach a verdict on what the appropriate per-mile reimbursement rate should have been, with the assistance of expert testimony.



The exact amount of the uniform reimbursement rate Pizza Hut paid to each Florida driver changed over time, ranging from $0.50-$1.06 per delivery from 2004[1] through 2012.[2]  However, at any given time the rate was always identical for all Class Members (and for other Florida delivery drivers who signed arbitration agreements).  For example, on December 1, 2009, Plaintiffs and Class Members were all reimbursed $0.86 for each delivery.  As is confirmed by Pizza Hut's own documents and the ▮▮▮▮▮▮▮▮▮▮▮ the average delivery in Florida was approximately 5.75 miles. ▮▮▮▮▮▮▮▮▮▮▮▮  ▮▮▮▮▮▮▮▮ Thus, depending upon dates, Pizza Hut's Florida delivery drivers were reimbursed $0.085 to $0.181 per mile ($.050 per delivery, divided by 5.75 miles per delivery, equals

---

[1] Plaintiffs recognize and respect this Court's Order regarding the relevant statutory period ("Statutory Order"), Dkt. No. 114, which is consistent with the Eleventh Circuit's holding in *Ewing Indus. Corp. v. Bob Wines Nursery, Inc.*, No. 14-13842, 2015 WL 4605234 (11th Cir. Aug. 3, 2015) interpreting *Griffin v. Singletary,* 17 F.3d 356 (11th Cir. 1994).  Plaintiffs respectfully seek certification for interlocutory appeal of the Statutory Order because the *Ewing-Griffin* doctrine is inconsistent with Supreme Court authority and has been rejected by other circuit courts.  *See* Dkt. No. 115; *Ewing*, 2015 WL 4605234, at *4 (noting that the *Griffin* doctrine has been "rejected" by numerous other courts and implying that it may be ripe for reconsideration).  In order to avoid waiver and because Defendants' scheme spans a significant period of time, the instant motion contains facts from outside the timeframe set forth in the Court's Statutory Order.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

$0.087 cents per mile; $1.06 per delivery; divided by 5.75 miles per delivery, equals 18.1 cents per mile). The IRS standard mileage rate exceeded 9 cents per mile for more than fifty years; and the IRS standard mileage rate has exceeded 19 cents per mile for every year since 1979, when gas cost just $0.86 a gallon. Pizza Hut's effective per mile reimbursement rate was always less than half (and typically less than one-third) of the IRS standard mileage rate.

"The IRS figure is a national average of the cost of operating a motor vehicle." *Zellagui v. MCD Pizza, Inc.*, 59 F. Supp. 3d 712, 715-16 (E.D. Pa. 2014) (quoting *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554, 556 (2007)). Dr. D. Paul Regan determined that Pizza Hut's Florida delivery drivers incurred costs higher than the national average, so the IRS standard mileage rate constitutes a conservative approximation of Class Members' expenses. *See* Expert Report of Dr. D. Paul Regan Expert Report ("Regan Expert Report"), Exhibit I to Frei-Pearson Dec., at ¶ 49. Thus, as the fact finder will determine at the merits stage, Pizza Hut's effective reimbursement rate of $0.09-$0.18 per mile did not come close to reimbursing the Class Members for the actual expenses Pizza Hut forced them to incur. *See, e.g.*, *Zellagui*, 59 F. Supp. 3d at 717 (issuing a class-wide judgment against a pizza delivery chain and holding that "[w]hen minimum wage law requires an employer to reimburse an employee for using the employee's vehicle for the employer's benefit, the employer should reimburse the employee at the IRS per mile rate or keep detailed records of the employees' expenses to justify another reimbursement rate.").

Despite persuasive authority favoring the IRS rate, Pizza Hut will likely argue that another rate should apply. But what the actual rate should be is a merits question whose resolution by the Court or jury will resolve a common issue. The appropriate way to reimburse employees for driving expenses when an employer opts not to track individual expenses is to employ a uniform mileage rate (and Plaintiffs have the better of the argument that the IRS rate should apply); indeed, this is the manner in which Pizza Hut reimbursed all of its employees, drivers and management (with

management reimbursed at the IRS rate). Thus, common proof can be used to resolve a core common issue, namely what the uniform rate should have been.

Pizza Hut will likely argue that certification is inappropriate because, according to Pizza Hut, each driver had different expenses. This flawed argument has been rejected by every court that has considered it, including by Judge Hogue in *Behaien v. Pizza Hut* and by Judge Arguello in *Smith v. Pizza Hut*. The argument is further belied by the fact that Pizza Hut reimbursed every Class Member exactly the same uniform amount per delivery. As Plaintiffs will demonstrate at summary judgment or trial, Pizza Hut was required to reimburse every Class Member at a higher uniform amount – namely the IRS standard mileage rate per mile. Accordingly, Plaintiffs respectfully request that the Court grant the instant class certification motion.

## II.   Facts

### A.   Background







**B.**     **Pizza Hut Created A Mathematical Equation To Attempt To Justify The Uniform Reimbursement Rate It Paid Class Members**



    **C.**    **Pizza Hut's Mathematical Equation Systematically
Under-Reimbursed All Class Members For Their Driving Expenses**

    **1.**    **Class Members Drove More Than Double The Distance
For Which Pizza Hut's Formula Purported To Reimburse Them**

Florida delivery drivers, who delivered in trade areas that were 3-4 times larger than

California delivery drivers, drove much further per delivery than drivers in California.  This common

sense observation is susceptible to common proof in the form of Pizza Hut's own documents, expert analysis, and testimony.



It is also favorable to Pizza Hut, because Florida drivers did, in fact, make delivery trips of more than 21 miles. *See, e.g.*, Declarations of Jerry Walsh at ¶ 5, Brian Phillips at ¶ 5, Al Fata at ¶ 4, Robert Clark at ¶ 4, Christina Cardona at ¶ 4, David Wright at ¶ 4, Becky Sikes at ¶ 4, Jamie Rickman at ¶ 4, Jeffrey Pryor at ¶ 4, Lauren Rausch at ¶ 4, Scott Board at ¶ 4; Nathan Houston at ¶ 4.

---

[7] Pizza Hut produced Guest Check data for 116 stores. *See* Frei-Pearson Dec. at ¶ 40.  However, as of September 4, 2015, Plaintiffs' counsel had only received Guest Check data for 29 stores that was produced in an accessible format and that Plaintiffs did not understand to be subject to mediation privilege. *See id.* at ¶¶ 41-43. ████████████████████████ ████████████  This sampling is perfectly appropriate at the class certification stage, especially where Plaintiffs can analyze all class-wide data at the merits stage.  *See, e.g.*, *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 414 (S.D.N.Y. 2015) (certifying a class and over defendant's objection that plaintiff's expert had not yet analyzed all data relevant to the merits because "nothing in *Comcast* requires an expert to *perform* his [merits] analyses at the class certification stage") (emphasis in original) (collecting cases).  ████████████████████████████████ *see also* Frei-Pearson Dec. at ¶ 47.

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

This documentary evidence is supported by testimony.  Named Plaintiffs Walsh, Barkley and Phillips all testified that they drove an average of at least 5 miles per delivery.  *See* Declaration of Jerry. J. Walsh ("Walsh Dec.") at ¶ 5, Declaration of Brian Phillips ("Phillips Dec.") at ¶ 5; Justin Barkley's Responses to Court Interrogatories, Dkt. No. 61 at ¶ 7.  Plaintiffs also testified that drivers at the different stores where they worked drove similar routes and that all drivers at their stores drove at least 5 miles per delivery.  *See* Walsh Dec. at ¶¶ 6-7; Phillips Dec. at ¶¶ 6-7.  Plaintiffs' testimony is buttressed by the testimony of 10 additional Florida delivery drivers, who worked at 7 different stores. *See* Declarations of Al Fata, Robert Clark, Christina Cardona, David Wright, Becky Sikes, Jamie Rickman, Jeffrey Pryor, Lauren Rausch, Scott Board and Nathan Houston.  These drivers, many (but not all) of whom are unable to participate in the instant action due to arbitration agreements, all testify that they drove at least 5 miles per delivery and that their colleagues all also drove at least 5 miles per delivery.  *See* Declarations of Al Fata at ¶¶ 4-6, Robert Clark at ¶¶ 4-6, Christina Cardona at ¶¶ 4-6, David Wright at ¶¶ 4-6, Becky Sikes ¶¶ 4-6, Jamie Rickman at ¶¶ 4-6, Jeffrey Pryor at ¶¶ 4-6, Lauren Rausch at ¶¶ 4-6, Scott Board at ¶¶ 4-6, and Nathan Houston at ¶¶ 4-6.

In sum, common proof in the form of Pizza Hut's own documents, corroborated by expert testimony and lay witness testimony, will demonstrate that drivers drove more than twice as far per delivery as the 2.5 miles assumed in Pizza Hut's mathematical equation.

**2.      Pizza Hut Did Not Record Any Class Members' Actual Expenses**

████████████████████████████████████████████████

████████████████████████████████████████████████

---

[8] In the unlikely event that the data for any store differs dramatically from the data in other stores, the class definition could be amended to exclude drivers who worked in those stores.  Frei-Pearson Dec. at ¶ 47, n. 5.

███████████████████████████████████████████████████████████

The issue of whether Pizza Hut's failure to record expenses can absolve it of liability can be resolved on a class-wide basis.

### 3. Pizza Hut Forced Class Members To Incur Substantial Expenses That Were Far Greater Than The Reimbursement Pizza Hut Paid Class Members

The effective per mile rates that Pizza Hut paid its drivers were indefensibly low.  For example, in December of 2009, Pizza Hut reimbursed all Class Members $0.86 per delivery.  *See* Bates No. PHBarkley004519, Exhibit K to Frei-Pearson Dec.  Unpacking the equation, in December of 2009, ███████████████████████████████████████ which was multiplied by the 2.5 miles that Pizza Hut's equation assumed drivers drove per delivery to yield the $0.86 reimbursed to each driver per delivery.  Because the average delivery was actually approximately 5.75 miles, Class Members were effectively reimbursed at just $0.15 per mile ($0.86 per delivery, divided by 5.75 miles per delivery, equals $0.15 per mile).  In December of 2009, the IRS Standard Mileage rate was $0.550 per mile and the IRS Standard mileage rate has exceeded the $0.15 Pizza Hut paid its drivers for every year since 1977, when gas was 65 cents a gallon.

Below is a chart that compares the operative IRS standard mileage rate, with the Runzheimer per mile rate that Pizza Hut attributed to every driver, and with the effective per mile rate that Pizza Hut actually paid each Class Member:

| DATE | IRS STANDARD MILEAGE RATE | ████████ | ACTUAL PER MILE RATE PIZZA HUT PAID TO CLASS MEMBERS (AT 5.75 MILES PER DELIVERY) |
|---|---|---|---|
| Nov 2.2004 - Dec 31.2004 | $0.375 | ████ | $0.113 ($0.65 per delivery) |
| Jan 1.2005 - Aug 31.2005 | $0.405 | ████ | $0.113 ($0.65 per delivery) |
| Sept 1.2005 - Dec 31.2005 | $0.405 | ████ | $0.156 ($0.90 per delivery) |
| Jan 1.2006 - Feb 20.2006 | $0.445 | ████ | $0.156 ($0.90 per delivery) |

| | | | |
|---|---|---|---|
| Feb 21.2006 - Apr 26.2006 | $0.445 | | $0.121 ($0.70 per delivery) |
| Apr 27.2006 - Dec 11.2006 | $0.445 | | $0.135 ($0.78 per delivery) |
| Dec 12.2006 - Dec 31.2006 | $0.445 | | $0.126 ($0.73 per delivery) |
| Jan 1.2007 - Mar 19.2007 | $0.485 | | $0.126 ($0.73 per delivery) |
| Mar 20.2007 - Apr 30.2007 | $0.485 | | $.0135 ($0.78 per delivery) |
| May 1.2007 - Dec 17.2007 | $0.485 | | $0.144 ($0.83 per delivery) |
| Dec 18.2007 - Dec 31.2007 | $0.485 | | $0.153 ($0.88 per delivery) |
| Jan 1.2008 - Mar 19.2008 | $0.505 | | $0.153 ($0.88 per delivery) |
| Mar 20.2008 - Jun 2.2008 | $0.505 | | $0.161 ($0.93 per delivery) |
| Jun 3.2008 - Jun 23.2008 | $0.505 | | $0.170 ($0.98 per delivery) |
| Jun 24.2008 - Jun 30.2008 | $0.505 | | $0.179 ($1.03 per delivery) |
| July 1.2008 - Sept 15.2008 | $0.585 | | $0.179 ($1.03 per delivery) |
| Sept 16.2008 - Nov 17.2008 | $0.585 | | $0.170 ($0.98 per delivery) |
| Nov 18.2008 - Dec 31.2008 | $0.585 | | $0.153 ($0.88 per delivery) |
| Jan 1.2009 - May 25.2009 | $0.550 | | $0.140 ($0.81 per delivery) |
| May 26.2009 - Dec 31.2009 | $0.550 | | $0.149 ($0.86 per delivery) |
| Jan 1.2010 – May 24.2010 | $0.500 | | $0.149 ($0.86 per delivery) |
| May 25.2010 – Dec 31.2010 | $0.500 | | $0.158 ($0.91 per delivery) |
| Jan 1.2011 – Jan 10.2011 | $0.510 | | $0.158 ($0.91 per delivery) |
| Jan 11.2011 – Mar 7.2011 | $0.510 | | $0.166 ($0.96 per delivery) |
| Mar 8, 2011 – Apr 25.2011 | $0.510 | | $0.175 ($1.01 per delivery) |
| Apr 26.2011 – Dec 31.2011 | $0.510 | | $0.184 ($1.06 per delivery) |
| Jan 1.2012 – Feb 20.2012 | $0.555 | | $0.184 ($1.06 per delivery) |

Although Pizza Hut reimbursed delivery drivers at extraordinary low rates, Pizza Hut forced Class Members to incur driving expenses that were substantially greater than those borne by non-delivery drivers.  *See* Regan Expert Report at ¶¶ 28; 30-41.  Pizza Hut forced its drivers to deliver in bad weather, to turn their cars on and off more than 20 times a day, to drive on bad roads, and to comply with vehicle repair and maintenance requirements that are substantially more expensive than the repair and maintenance requirements born by non-delivery drivers.  ██████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████  Regan Expert Report at ¶¶ 28; 30-44.

As Dr. Regan concluded, and as the fact finder will ultimately determine, Pizza Hut's Florida delivery drivers' expenses thus equaled or exceeded the IRS standard mileage rate, which is the national average per mile cost of driving a vehicle.  Regan Expert Report at ¶ 49.  Dr. Regan further concluded, and the fact finder will ultimately determine, that Pizza Hut's effective reimbursement rate of $0.09-$0.18 per mile did not come close to properly reimbursing any Florida delivery driver for her driving expenses.  Regan Expert Report at ¶ 42-43.

In addition, Plaintiffs have submitted declarations from 12 Pizza Hut Florida delivery drivers, including Plaintiffs Phillips and Walsh, all of whom testify that Pizza Hut did not adequately reimburse them for their driving expenses.  Declarations of Jerry Walsh at ¶¶ 9-11; Brian Phillips at ¶¶ 9-11; Al Fata at ¶¶ 8-10; Robert Clark at ¶¶  8-10; Christina Cardona at ¶¶ 8-10;  David Wright at ¶¶ 8-10;  Becky Sikes at ¶¶ 8-10;  Jamie Rickman at ¶¶ 8-10;  Jeffrey Pryor at ¶¶ 8-10;  Lauren Rausch at ¶¶ 8-10;  Scott Board at ¶¶ 8-10 and Nathan Houston at ¶¶ 8-10.

### III.    Argument

### A.    Legal Standard

As this Court recently held:

> "Rule 23 establishes a legal roadmap courts must follow when determining whether class certification is appropriate." *Valley Drug Co. v. Geneva Pharm., Inc.,* 350 F.3d 1181, 1187 (11th Cir. 2003). Additionally, "courts have universally recognized that the first essential ingredient to class treatment is the ascertainability of the class." *Grimes v. Rave Motion Pictures Birmingham,* 264 F.R.D. 659, 662–64 (N.D. Ala. 2010) (citations omitted); *see also Keller v. Macon Cnty. Greyhound Park, Inc.,* No. 3:07-1098, 2011 WL 1085976, at *3 (M.D. Ala. Mar.24, 2011) ("The Second Circuit Court of Appeals has referred to ascertainability as an "implied requirement" for class certification." (citing *In re Initial Public Offerings Sec. Litig..,* 471 F.3d 24, 30 (2d Cir. 2006)). After a court determines that a class is ascertainable, it then considers whether the Rule 23 factors are met.

> Under Rule 23(a), "[a] class may be formed and any person or group of people may represent the class in litigation if (1) the class is so numerous the joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the named representative parties are typical of the claims or defenses of the class; and (4) the named representative parties will fairly and adequately protect the interests of the class." *Keller,* 2011 WL 1085976, at *2 (citing Fed.R.Civ.P. 23(a)). The plaintiff bears the burden of proof, and failure to prove any Rule 23(a)'s factors precludes class certification. *See Valley Drug,* 350 F.3d at 1188 (citing *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 615–18, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)).

> The "class must also fit within at least one of the types of class actions recognized in Rule 23(b)." *Grimes,* 264 F.R.D. at 664. Under Rule 23(b)(3), a class action may be maintained if Rule 23(a) is satisfied and if "[t]he court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3).

*Bush v. Calloway Consol. Grp. River City, Inc.*, No. 10-841, 2012 WL 1016871, at *3 (M.D. Fla.

Mar. 26, 2012) (Dalton, J.).

### B.    The Class Is Ascertainable

"Class members need not actually be ascertained prior to certification, but each individual's

class membership must be ascertainable at some stage in the proceeding." *Bush*, 2012 WL 1016871,

at *4 (M.D. Fla. Mar. 26, 2012) (quoting *Engel v. Scully & Scully, Inc.*, 279 F.R.D. 117, 127 (S.D.N.Y. 2011)).  A class must be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Id.* (quoting *Engel*, 279 F.R.D. at 127).

Here, the class is defined as all delivery drivers employed by Pizza Hut in Florida during the relevant time period for whom Pizza Hut cannot produce a signed arbitration agreement.  Numerous similar classes of under-reimbursed delivery drivers have been certified without the defendant pizza company even contesting ascertainability.  *See, e.g.*, *Behaien v. Pizza Hut*, No. 541415 (Cal. Sup. Ct. July 15, 2015).  Indeed, at the first status conference, Pizza Hut's counsel represented that it "the list[] of putative class members should be pretty easy to determine.  Pizza Hut has systems that keep track of its personnel records so that should be just a matter of searching for the relevant positions and the relevant stores.  So that [the class list] is something that is ascertainable easily or relatively easily." *Barkley v. Pizza Hut*, No. 14-00376, Transcript of Sep. 22, 2014 Hearing at 15:9-16, Exhibit L to Frei-Pearson Dec.  Accordingly, the ascertainability requirement is easily satisfied.

### C.  The Class Satisfies Rule 23(a)

#### 1.  The Class Is Sufficiently Numerous

A class with more than 40 members satisfies Rule 23(a)'s numerosity requirements. *See Bush*, 2012 WL 1016871, at *6.  Here, Pizza Hut admits that the class has, at minimum, 1,010 members.  *See* PHBarkley00049329, Exhibit M to Frei-Pearson Dec.  The class is therefore sufficiently numerous.

#### 2.  Numerous Common Questions Exist

Rule 23(a)(2)'s commonality requirement is satisfied where a plaintiff shows that "questions of law or fact common to the class exist." *Bush*, 2012 WL 1016871, at *6 (citing Fed. R. Civ. P. 23(a)(2).  "The commonality element is generally satisfied when a plaintiff alleges that 'defendants

have engaged in a standardized course of conduct that affects all class members.'"  *Id.* (citations and quotations omitted).

Here, the common questions of fact and law include whether Pizza Hut paid Class Members less than the Florida minimum wage because the uniform reimbursement rate paid by Pizza Hut did not adequately reimburse drivers for their driving expenses, and whether Pizza Hut's actions were willful  As Judge Hogue recently held in certifying a class of California Pizza Hut delivery drivers, "the question of whether Pizza Hut's [per delivery] payments sufficiently reimbursed putative class members is susceptible to common proof."  *Behaein*, No. BC 541415 at 1; *see id.* at 10 ("the questions of what mileage rate is reasonable are . . . susceptible to common proof"); *see Perrin v. Papa John's Int'l, Inc.*, 2013 WL 6885334, at *5 (certifying Rule 23 classes of Papa John's delivery drivers under Florida law and the laws of other states and holding that "[t]he issues facing the class arise from common questions involving Defendants' policies regarding the calculation and payment of reimbursement for delivery expenses.  This is sufficient to satisfy the commonality requirement."); *Garcia-Celestino v. Ruiz Harvesting, Inc.*, 280 F.R.D. 640, 646 (M.D. Fla. 2012) (certifying a class of workers under Florida law and noting that "whether Defendants did not fully reimburse workers" was a common question).[9]

---

[9] Judge Flessig stayed *Perrin* pending the Supreme Court's decision in *Bouaphakeo v. Tyson Foods, Inc.,* 765 F.3d 791 (8th Cir. 2014), *cert. granted,* No. 1401146, 2015 WL 1278593 (U.S. June 8, 2015).  In *Perrin*, plaintiffs "concede[d] that they relied on [the Eighth Circuit's decision in] *Bouaphakeo* to argue that class-certification is appropriate."  *Perrin v. Papa John's Int'l, Inc.*, No. 09-01335, 2015 WL 3823142, at *3 (E.D. Mo. June 19, 2015).  Moreover, the *Perrin* classes included "some class members who admittedly suffered no damages", and the acceptability of including such members in classes may be clarified by *Bouaphakeo*.  *See id.*  Thus, Judge Flessig determined that the Supreme Court's decision in *Bouaphakeo* could require decertification of some (or, theoretically, all), of the classes certified in *Perrin*.  *See id.*  Here, Plaintiffs do not rely on the Eighth Circuit's decision in *Bouaphakeo* and Plaintiffs assert that every single Class Member suffered damages because Pizza Hut's Florida drivers – unlike the nationwide FLSA class certified in *Perrin* – were all reimbursed identically and all drove relatively homogenous routes.  Accordingly, the grounds for a stay that Judge Flessig applied in *Perrin* simply do not apply here.

### 3.     Plaintiffs' Claims Are Typical

"Typicality measures whether a sufficient nexus exists between the claims of the named representative and those of the class at large.  The typicality requirement may be satisfied despite substantial factual differences . . .  when there is a strong similarity of legal theories." *Bush*, 2012 WL 1016871, at *8 (citations and quotations omitted; alterations accepted).  Here, named plaintiffs Jerry J. Walsh, Justin Barkley and Brian Phillips' claims are identical to other Class Members' claims.  Messrs Walsh, Barkley and Phillips are all Class Members; they were all paid at or near the minimum wage and then paid the same per-delivery reimbursement rate that dramatically under-reimbursed them for their driving expenses.  *See* Walsh Dec. at ¶¶ 3 and 9; Phillips Dec. at ¶¶ 3 and 9; Justin Barkley's Responses to Court Interrogatories, Dkt. No. 61, at ¶¶ 5, 7 and 8(a).  Plaintiffs also drove at least five miles per delivery on average.  *See* Walsh Dec. at ¶ 5; Phillips Dec. at ¶ 5; Justin Barkley's Responses to Court Interrogatories at ¶ 7.  Because Plaintiffs possess the same interest and suffered the same injury as Class Members, they easily satisfy Rule 23(a)(3)'s typicality requirement.  *See*, *e.g.*, *Garcia-Celestino,* 280 F.R.D. at 646.

### 4.     Plaintiffs And Their Counsel Will Fairly
### And Adequately Protect The Class' Interests

Rule 23(a)(4) "requires the party seeking certification to demonstrate that he will fairly and adequately protect the interests of the class." *Bush*, 2012 WL 1016871, at *9 (citations and quotations omitted).  Plaintiffs have produced documents and provided written responses to Defendant's Interrogatories and to the Court's Interrogatories.  *See* Frei-Pearson Dec. at ¶ 24.  Plaintiffs have kept abreast of the litigation and of settlement discussions.  *See id.*  In addition, Mr. Walsh and Phillips sat for a deposition in this case.[10]  *See id.*  Plaintiffs have vigorously represented

---

[10] Mr. Barkley made himself available for a deposition scheduled on January 8 and then again on January 22, 2015 that Pizza Hut took off calendar.  Frei-Pearson Dec. at ¶ 26.  When Pizza Hut again asked to reschedule the deposition, Mr. Barkley agreed to be deposed on July 29.  *See id.* at ¶ 27.

the class and will continue to vigorously prosecute this case on behalf of the class through trial if

necessary.  *See* Declaration of Jerry J. Walsh at ¶¶ 15-18; Declaration of Brian Phillips at 15-18.

Accordingly, Plaintiffs are adequate class representatives.  *See Bush*, 2012 WL 1016871, at *9.

      Plaintiffs' counsel, Jeremiah Frei-Pearson of Finkelstein, Blankinship, Frei-Pearson &

Garber, LLP ("FBFG") and C. Ryan Morgan of Morgan & Morgan, P.A. ("Morgan & Morgan")

have substantial experience representing delivery drivers and are qualified to represent the class.

*See, e.g.*, *Hanna v. CFL Pizza*, No. 2011- 52949 (Fla. Cir. Ct. Brevard Cty), Final Approval Order at

¶ 5 (Sep. 3, 2013) (Exhibit N to Frei-Pearson Dec.) (describing Plaintiffs' counsel as "highly

competent, skilled and experienced" in approving a class action settlement for identical claims

against CFL Pizza Hut, a Pizza Hut franchisee); ██████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

██████████████████; Frei-Pearson Dec., Exhibit O (FBFG Firm Resume); Morgan Dec. at ¶

7.[11]  Accordingly, Plaintiffs' counsel are also adequate to represent the interests of class.

---

Unfortunately, because Mr. Barkley has been experiencing personal issues, Mr. Barkley was not able
to be deposed on July 29.  *See id.*  The parties are trying to schedule Mr. Barkley's deposition prior to
the date when Pizza Hut's opposition to the instant motion is due.  *See id.* at ¶ 28.  In the event Mr.
Barkley remains unable to sit for a deposition prior to that date, Plaintiffs will withdraw Mr. Barkley
as a class representative (though Mr. Barkley's individual case would survive).  *See id.* at ¶ 29.

[11] Plaintiffs' counsel represent Florida delivery drivers who signed arbitration agreements in related
arbitrations against Pizza Hut.  That representation, which counsel has disclosed to Plaintiffs and
which counsel intends to disclose to Class Members in the class notice, does not create any conflict.
To the contrary, the knowledge gained in arbitration has helped Plaintiffs' counsel to more
effectively represent the interests of Plaintiffs and the putative class.  For example, Plaintiffs' counsel
were able to obtain 10 declarations from other Florida delivery drivers due in large measure to
counsel's work in the related arbitrations.

### D.      The Proposed Class Satisfies The Rule 23(b)(3) Factors

As this Court explained, Rule 23(b)(3):

> was "framed for situations where class-action treatment is not as
> clearly called for." *Wal–Mart,* 131 S.Ct. at 2558 (citation omitted). It
> was intended to capture "cases in which a class action would achieve
> economies of time, effort, and expense, and promote . . . uniformity of
> decision as to persons similarly situated, without sacrificing
> procedural fairness or bringing about undesirable results." *Amchem,*
> 531 U.S. at 615. To qualify under this provision, the class must meet
> two requirements: (1) "the questions of law or fact common to the
> class members predominate over any questions affecting only
> individual members and (2) a class action is superior to other
> available methods for fairly and efficiently adjudicating the
> controversy. Fed.R.Civ.P. 23(b)(3); *Wal–Mart,* 131 S.Ct. at 2558;
> *Babineau v. Fed. Exp. Corp.,* 576 F.3d 1183 (11th Cir.2009).

*Bush*, 2012 WL 1016871, at *10. Both Rule 23(b)(3) factors are easily satisfied in the present case.

### 1.      Common Questions Of Law Or Fact Predominate

"Under Rule 23(b)(3), '[i]t is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions.'" *Schojan v. Papa Johns Int'l, Inc.*, 303 F.R.D. 659, 668 (M.D. Fla. 2014) (quoting *Klay v. Humana, Inc.,* 382 F.3d 1241, 1254 (11th Cir. 2004)). In the "preliminary stage [of evaluating predominance], the Court may not pass on the merits of Plaintiffs' claims", *id.* (collecting cases), except that a court "may inquire into the merits to the extent there is 'inescapable . . . overlap between the demands of Rule 23(a) and (b) and whether a plaintiff can succeed on the merits.'" *Bush*, 2012 WL 1016871, at *3 (M.D. Fla. Mar. 26, 2012) (citations omitted).

In determining whether predominance is met, "[e]fficiency is the overriding, textually-mandated concern." *In re Checking Account Overdraft Litig.*, No. 09-02036, 2015 WL 3551527, at *13 (S.D. Fla. June 8, 2015). As Judge Covington held in a case against Papa Johns, "where corporate policies 'constitute the very heart of the plaintiffs' . . . claims,' as they do here, common issues will predominate because those policies 'would necessarily have to be re-proven by every plaintiff.'" *Schojan*, 303 F.R.D. at 669 (citations omitted) (collecting cases).

The instant case is entirely about Pizza Hut's uniform corporate policies.  Pizza Hut paid every Class Member at or near the minimum wage and reimbursed every Class Member the exact same amount per delivery.  As Judge Baker noted in related litigation against a Florida Pizza Hut franchisee that, for a time, engaged in the unlawful practices presently at issue, "the under-reimbursement issue in this case is not 'complex' and is, in fact, not much more than a simple mathematical equation . . . ."  *Hanna v. CFL Pizza, LLC*, No. 11-1837, 2012 WL 515875, at *5 (M.D. Fla. Jan. 30, 2012), *report and recommendation adopted*, No. 11-1837, 2012 WL 513017 (M.D. Fla. Feb. 16, 2012).

As set forth above, Pizza Hut's mathematical equation for its reimbursement rate consisted of multiplying two factors together:  A, the Average miles per delivery times R, the Rate an outside consultant determined every driver should be reimbursed per mile.  *See Supra* at 9.  Pizza Hut determined that both factors were identical for all Class Members.  *See id.* Whether the reimbursement rate – or either of its components – adequately reimbursed Class Members for their driving expenses is susceptible to common proof.

Although determinations on the merits are premature, Plaintiffs will use common proof to prove that both factors Pizza Hut used were too low.  For A, the Average miles per delivery, Plaintiffs will use common evidence to show that Pizza Hut's assumption that Class Members drove 2.5 miles per delivery was far too low for every single delivery driver.  This common evidence will consist of analysis of Pizza Hut's business records, testimony from former Pizza Hut managers, and testimony from numerous Florida Pizza Hut delivery drivers. ███████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████ Because Pizza Hut's equation credited Class Members for less than half of the miles they actually drove, the fact finder will be able to determine every Class

Member was under-reimbursed by a factor of more than two, even if the fact finder were to determine that R, the per mile Rate Pizza Hut attributed to every class member, was accurate (and R was also too low).

For R, the per mile Rate, Plaintiffs will rely on common proof to demonstrate what the proper mileage reimbursement rate should have been.  The IRS has a standard mileage rate which it considers to be a fair average of driving costs, as does the AAA and other authorities.  *See* Regan Expert Report at ¶¶ 45-49.  Plaintiff will argue that, where the employer under-reimburses employees and does not track actual driving expenses, then, as a matter of law the IRS rate applies.  *See Zellagui* 59 F. Supp. 3d at 716.  If the Court does not find that the IRS rate applies as a matter of law, and it should, then the parties will present expert testimony to guide the jury in finding the proper rate that should be applied.

Pizza Hut will likely argue that each driver drove different cars on different routes, therefore requiring an individual inquiry into each Class Members purported individual expenses, which would militate against certification.  This argument is unsupported by any authority.  Indeed, courts have repeatedly held that common issues predominate over individual issues in driver under-reimbursement cases.  *See, e.g.*, *Behaien v. Pizza Hut*, No. 541415 (Cal. Sup. Ct. July 15, 2015); *Zellagui v. MCD Pizza*, No. 14-01475 (E.D. Pa. Aug. 8, 2014) (certifying a class of pizza delivery drivers); *Dalton v. Lee Publications, Inc.*, 270 F.R.D. 555, 564 (S.D. Cal. 2010) (certifying a class of under-reimbursed newspaper drivers and noting that "Defendant argues that reimbursement for vehicle and mileage expenses would require a high degree of individual analysis.  'But the amount of damages is invariably an individual question and does not defeat class treatment.'  Moreover, Defendant's own mileage estimates and the IRS standard mileage allowance (or some other method) provides a reasonable basis to calculate mileage expenses.") (citation omitted) (emphasis added)); *Stuart v. Radioshack Corp.*, No. 07-4499, 2009 WL 281941, at *18 (N.D. Cal. Feb. 5, 2009) (certifying a class of under-reimbursed Radioshack drivers and indicating that damages would be

calculated at the IRS rate or another, higher, number); *supra* at 1-2, 21-22 (collecting pizza delivery driver cases).

Aside from the numerous pizza delivery driver under-reimbursement cases, courts routinely certify under-reimbursement wage cases involving employees who allege they were under-reimbursed pursuant to an employer's standardized policy. *See, e.g.*, *Garcia-Celestino*, 280 F.R.D. at 648 (certifying a class of workers bringing claims under the Florida Constitution and other laws who alleged they were under-reimbursed for their travel expenses); *Hopkins v. Stryker Sales Corp.*, No. 11-02786, 2012 WL 1715091, at *10 (N.D. Cal. May 14, 2012) (holding that the "individualized nature of the necessity of certain business expenses and some individuals' ability to obtain occasional reimbursement do not undermine predominance in this case . . . [because] there is a commonly applicable expense reimbursement policy, common duties among putative class members, and expenses common to the class). Moreover, where, as here, damages and liability can be determined using a defendant's computerized records, courts routinely find that common issues predominate. *See Flores v. Anjost Corp.*, 284 F.R.D. 112, 131 (S.D.N.Y. 2012) (certifying class and holding that "[t]he value of the uniform and the damages owed to Plaintiffs—if Defendants are held liable—can be simply and mechanically calculated by resort to Defendants' pay records."); *Lassen v. Hoyt Livery Inc.*, No. 13-01529, 2014 WL 4638860, at *12 (D. Conn. Sept. 17, 2014) ("Once it is determined which types of activities are compensable and how to calculate the hours for which a driver should have been compensated, damages for each driver will be a mere question of "arithmetical calculations based on . . . records and other documentary evidence.") (citing *Ramirez v. Riverbay Corp.*, No. 13-23672014, WL 3800886, at *10 (S.D.N.Y. 2014)); *Abdullah v. U.S. Security Assocs., Inc.*, 731 F.3d 952, 966-67 (9th Cir. 2013) (rejecting defendant's predominance argument because "[i]n light of [defendant's time records], it would not be difficult to determine [defendant's] liability to individual plaintiffs [for failure to provide meal breaks], nor would it be overly-burdensome to calculate damages."); *Leyva v. Medline Industries Inc.*, 716 F.3d 510, 514 (9th Cir.

2013) (Defendant's "computerized payroll and time-keeping database would enable the court to accurately calculate damages and related penalties for each claim ... [so that] damages could feasibly and efficiently be calculated once the common liability questions are adjudicated.").

Moreover, Pizza Hut's argument is contrary to Pizza Hut's own conduct.  Pizza Hut reimbursed all delivery drivers at exactly the same rate, regardless of the type of car they drove or any other purported individual variations.  As Plaintiffs will demonstrate at summary judgment (or at trial if necessary) through voluminous uniform evidence, the rate Pizza Hut paid was insufficient to compensate Class Members for their driving expenses, thereby pushing all Class Members' wages far below the minimum.[12]



---

[12] Plaintiffs should have been reimbursed at the IRS standard mileage rate.  Judge Slomsky indicated that the failure to reimburse at the IRS standard mileage rate may entitle a class of delivery drivers to summary judgment.  *See Zellagui*, 59 F. Supp. 3d at 716 ("When minimum wage law requires an employer to reimburse an employee for using the employee's vehicle for the employer's benefit, the employer should reimburse the employee at the IRS per mile rate or keep detailed records of the employees' expenses to justify another reimbursement rate.").  Judge Flessig held that the issue of whether the IRS rate applies should be decided by the jury, not by the court at the summary judgment stage.  *See Perrin v. Papa John's Int'l, Inc.*, No. 09--01335, 2015 WL 4131358, at *11 (E.D. Mo. July 8, 2015).  Although the issue is not for this motion, Plaintiffs contend that Judge Slomsky is correct and summary judgment is appropriate.





Plaintiffs, on behalf of the class, intend to

A class action with Court supervision of Pizza Hut's conduct is far superior to individual proceedings.

[14] Pizza Hut may cite to *dicta* in *Garcia v. Koning Restaurants Int'l, L.C.*, No. 12-23629, 2013 WL 8150984, at *7 n.9 (S.D. Fla. May 10, 2013) for the proposition that delivery drivers are required to keep their own gas receipts.  In *Garcia*, the court granted summary judgment in favor of the employer on every claim at issue, including the claim that the company did not fully reimburse the employee for gas expenses (the *Garcia* plaintiff only sought reimbursement for gas expenses, which may be because they used company cars; the record is simply unclear).  "[F]or purposes of summary judgment, the Court accepts as true Plaintiff's claim that he incurred at least $12 per day in gas expenses delivering pizzas for Defendant."  *Id.*  The court then granted summary judgment because the defendant "filed unrefuted evidence showing that its total reimbursements actually exceeded Plaintiff's claimed gas expenses of $60 to $72 a week."  *Id.* at *7.  In *dicta*, the *Garcia* court indicated that Mr. Garcia should have maintained records of gas receipts – but it is important to note that the court accepted as true Mr. Garcia's claimed expenses.  Here, Class Members strongly and specifically allege that their expenses were far greater than the amount that Pizza Hut reimbursed them.  Moreover, the issue of whether Class Members were required to keep their receipts is amenable to class-wide resolution.

submit this common proof at summary judgment or trial.[16]  Thus, as Judge Hogue recently held in a

similar case against Pizza Hut on behalf of a statewide class of California delivery drivers:

"[c]ommon questions . . . predominate."  *Behaein*, No. BC 541415 at 5.[17]

### 2. A Class Action Is Superior To Other Methods Of Adjudication Of This Controversy

Under Rule 23(b)(3), Plaintiffs must show that a class action "is superior to other available

methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3) Rule

23(b)(3) provides a non-exhaustive list of four factors relevant to superiority:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.



[16] Damages amongst class members will differ based on how many deliveries they made. The fact that Pizza Hut's own records can be used to calculate damages further militates in favor of certification. *See Shady Grove Ortho. Assoc., P.A. v. Allstate Ins. Co.*, 293 F.R.D. 287, 305 (E.D.N.Y. 2013) ("Common issues predominate where individual factual determinations can be accomplished using computer records, clerical assistance, and objective criteria") (quoting *Smilow v. Southwestern Bell Mobile Systems, Inc.*, 323 F.3d 32, 40 (1st Cir. 2003)).

[17] Pizza Hut may rely on *Ortiz v. CVS Caremark Corp.*, No. 12-05859, 2013 WL 6236743, at *12 (N.D. Cal. Dec. 2, 2013), a case where Judge LaPorte declined to certify a class of CVS drivers. *Ortiz* is factually inapposite because the putative class in *Ortiz* involved CVS drivers who sometimes used company-provided vehicles and sometimes used their own vehicles. *See id.* at *11.  Moreover, some members of the putative class in *Ortiz* were reimbursed for driving expenses and others were not.  *See id.*  In contrast to the CVS drivers in *Ortiz*, all Class Members used their own vehicles and were reimbursed by Pizza Hut in the same manner.

Fed. R. Civ. P. 23(b)(3).

Here, a class action is easily superior to the alternative.  Indeed, Plaintiffs Walsh and Phillips were class members in *Hanna v. CFL Pizza*, No. 05-2011-CA-52949 (Fla. Cir. Ct. Brevard Cty), a class action against a Pizza Hut franchisee who purchased its stores from Pizza Hut in 2009 and who, for a time, continued with the unlawful practices at issue here.  *Hanna* settled on a class-wide basis after less than two years of hard-fought litigation in state and federal court.  *See Hanna v. CFL Pizza, LLC*, No. 05-2011-CA-52949 (Fla. Cir. Ct. Brevard Cty. Sep. 3, 2013) (approving class-wide settlement).  This efficient class prosecution is in marked contrast to the individual proceedings to which Pizza Hut has subjected many of its Florida delivery drivers.

Curtis Hanna, the lead plaintiff in *Hanna v. CFL Pizza*, also proceeded in individual arbitration against Pizza Hut. ████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████
███████████████████████████████████████████████
██████████████████████████████████████████
█████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████████████████████
███████████████████████████████████████████████
██████████████████████████
███████████████████████████████████████████
██████████████████████████████████████████████████████



Nor is there any reason to conclude that individual court cases brought by members of the proposed class would be any more efficient or timely.

Trial and/or summary judgment on a class basis will be extraordinarily easy to manage. Class Members will present evidence in the form of Pizza Hut's own documents and testimony from Class Members, other Pizza Hut delivery drivers, former Pizza Hut managers, and experts, to establish that every Class Member was reimbursed an effective rate ranging from $0.085 to $0.181 per mile from 2004 to 2012 (or at $0.181 per mile from 2009 to the end of the statutory period). Class Members will present similar documents and testimony to establish that the effective rate Pizza Hut paid Class Members did not come close to reimbursing drivers for the actual expenses Pizza Hut forced them to incur. Finally, Class Members will present testimony from Pizza Hut's own personnel to establish that Pizza Hut's actions were willful, as Pizza Hut intentionally under-reimbursed its delivery drivers so that it could increase its profits ████████████ knowing that it could rely on arbitration

agreements to minimize its liability for systematic wage theft.  Class Members anticipate that they will be able to present their case in chief in one week.

Thus, as courts have uniformly held in other pizza delivery driver under-reimbursement cases where the drivers used company cars, the class action superiority requirement is easily met.  *See, e.g.*, *Behaien v. Pizza Hut*, No. 541415 at 5 (Cal. Sup. Ct. July 15, 2015).

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully moves this Court for an Order certifying the above-identified class, directing Pizza Hut to provide Plaintiffs with a class list (including mailing addresses, phone numbers and email addresses) so they can provide notice, and appointing Plaintiffs (or Mr. Walsh and Mr. Phillips, *see supra* at 20, n. 10) and their counsel as Class Representatives and Class Counsel respectively.

Dated:  September 9, 2015

Respectfully submitted,

*/s/ Jeremiah Frei-Pearson*
JEREMIAH FREI-PEARSON (*Pro Hac Vice*)
FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP
1311 Mamaroneck Avenue
White Plains, New York 10605
Telephone:  (914) 298-3281 ext. 2804
Facsimile:  (914) 824-1561
Jfrei-pearson@fbfglaw.com

C. RYAN MORGAN
Florida Bar No.:  15527
Morgan & Morgan, P.A.
20 North Orange Avenue
Orlando, Florida 32801

*Attorneys for Plaintiffs*
*and the Putative Class*

## LOCAL RULE 3.01(g) CERTIFICATE

I hereby certify that counsel for Plaintiffs have conferred with Defendant's counsel regarding the relief requested in this motion, and that Defendant does not consent to the relief requested.

*/s/ Jeremiah Frei-Pearson*

## CERTIFICATE OF SERVICE

I hereby certify that this document was served on Defendant's counsel via electronic mail (which the parties have agreed to use during this litigation) on September 9, 2015, and that it will be served via the Court's ECF system if permitted after the Court issues a ruling regarding whether this document should be filed under seal.

*/s/ Jeremiah Frei-Pearson*