# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

| | |
|---|---|
| AL FATA, BRIAN PHILLIPS and JERRY WALSH, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PIZZA HUT OF AMERICA, INC.,<br><br>Defendant. | CASE NO: 6:14-CV-00376-RBD-DAB |

## DECLARATION OF JEREMIAH FREI-PEARSON

I, Jeremiah Frei-Pearson, declare pursuant under penalty of perjury to 28 U.S.C. § 1746 that the foregoing is true and correct:

1. I am a founding partner of the law firm of Finkelstein, Blankinship, Frei-Pearson & Garber, LLP ("FBFG"), co-counsel for Plaintiffs in the above-captioned case.

2. I respectfully submit this Declaration in support of Plaintiff's Unopposed Motion for Preliminary Approval of Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiffs' Counsel as Class Counsel, and Approval of the Proposed Notice of Settlement and Class Action Settlement Procedure and Memorandum of Law in Support.

### Background Of The Litigation And Settlement Discussions

3. This is a complaint for violation of the Florida Minimum Wage Act, Fla. Stat. Ann. § 448.110 (FMWA), and the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA"). Plaintiffs allege that Defendant systematically and unlawfully paid its Florida delivery drivers, including Plaintiffs, wages well below the minimum in violation of the FMWA and FLSA by under-reimbursing delivery drivers for vehicular expenses incidental to delivery.

{00275737 }

4.  The original complaint in this case was filed on March 7, 2014.[1]  Dkt. 1.  But, as this Court has noted, "the history between the parties is protracted" and extends to the time prior to the filing of the complaint. *Barkley v. Pizza Hut of Am., Inc.*, No. 14-376, 2014 WL 3908197, at *1 (M.D. Fla. Aug. 11, 2014).

5.  In 2011, a class of delivery drivers brought an FMWA claim against CFL Pizza, a Pizza Hut franchisee.  *See id*.  That case settled in part, but the state court judge indicated that certain claims would have to be pursued against Pizza Hut itself.  *Id.*  Accordingly, in 2012, two members of the CFL settlement class filed an FMWA claim against Pizza Hut in state court (the "*Hanna* Action"), seeking to represent a class that, except for the applicable time period, is largely identical to the instant class.  *Id.*  Pizza Hut removed that action to federal court and then moved to compel individual arbitration.  *Id.*  The drivers submitted the action to arbitration, but argued that the arbitration should proceed on a class-wide basis.  *Id.*  Judge Merryday held that the question of class versus individual arbitration should be decided by the arbitrator.  *Id.*  Arbitrator Sochynsky, the first arbitrator assigned, held that Pizza Hut's arbitration agreement required individual arbitration and forbid class arbitration.  *Id.*  Certain would-be class members then proceeded with individual arbitrations.  *Id.*

6.  The instant complaint alleges the same substantive claims as alleged in the *Hanna* Action on behalf of Florida Pizza Hut delivery drivers who had not signed arbitration agreements.

---

[1] Former Plaintiff Justin Barkley is unable to fulfill his duties as a named plaintiff.  Accordingly, Mr. Barkley has reverted to his status as a class member and his name has been stricken off the Second Amended Complaint (Dkt. 163) filed pursuant to paragraph 39 of the Settlement Agreement.  Plaintiff Alfonso Fata was also added in the Second Amended Complaint.

7. On May 18, 2014, Plaintiff Fata filed a motion asking this Court to compel class arbitration. Dkt. 23. Pizza Hut moved to compel individual arbitration as to all Plaintiffs and dismiss or stay proceedings the next day. Dkt. 27. On August 11, 2014, after the motions were fully briefed, the Court declined to compel Plaintiffs Phillips and Walsh (and former plaintiff Barkley) into arbitration. However, the Court severed Plaintiff Fata's claims from this Action and, in light of Plaintiff Fata's arbitration agreement with Defendant, transferred Plaintiff Fata's claims to Judge Steven D. Merryday for consideration along with the *Hanna* Action. Dkt. 69.

8. On October 16, 2014, Plaintiffs Phillips and Walsh amended the Complaint, removing Al Fata as a named plaintiff and Yum! Brands, Inc. as a defendant and seeking an expanded statutory period. Dkt. 84. On November 3, 2014, Pizza Hut moved to dismiss claims under the expanded statutory period and filed its Answer with Affirmative Defenses. Dkt. 89 and 90. Plaintiffs opposed the motion on November 20, 2014. Dkt. 91.

9. On January 28, 2015, the Parties jointly moved to stay discovery and other case deadlines in light of a scheduled mediation before Hunter R. Hughes. Dkt. 100. The Court granted the motion on January 30, 2015. Dkt. 103. On April 7, 2015, the Parties mediated the case before Hunter R. Hughes for a full day. *See* Dkt. 104. Despite good faith efforts to reach a settlement, the Parties were unable to reach an agreement. *See id.* However, the Parties arranged for a second mediation with Mr. Hughes. *See id.*

10. In the meantime, the Parties continued with discovery, including written and document discovery and depositions. Dkt. 108. The Parties had numerous discovery disputes, but were ultimately able to resolve those disputes without requiring court intervention.

11. Plaintiffs' Counsel also continued to arbitrate on behalf of certain drivers who signed arbitration agreements. ███████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████ Nonetheless, Plaintiffs' Counsel persisted in seeking class relief for drivers who signed arbitration agreements.

12.   █████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████[2]  █████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████

13.   █████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

---

[2] ███████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

■■■

14. ■■■
■■■
■■■
■■■
■■■
■■■
■■■.

15. ■■■
■■■
■■■
■■■
■■■
■■■
■■■
■■■
■■■

16. ■■■
■■■
■■■
■■■
■■■
■■■

▮▮▮

17. On July 21, 2015, the Parties mediated for the second full day with Mr. Hughes, but were again unable to reach an agreement. *See* Dkt. 113.

18. On August 21, 2015, the Court granted Defendant's motion to dismiss to the extent it sought to bar Plaintiffs' FMWA class claims prior to March 7, 2009 and denied it with respect to Plaintiffs' individual FMWA claims. Dkt. 114. Ten days later, Plaintiffs moved to certify that decision for interlocutory review. Dkt. 115. The motion was fully briefed, and the Court denied it on October 15, 2015. Dkt. 126.

19. On September 9, 2015, Plaintiffs moved to certify the instant case into a class action. Dkt. 127. Defendant opposed the motion on October 16, 2015. *See* Dkt. 143. Both parties submitted substantial evidence, as well as competing expert reports. *See* Dkt. 127-143. In addition, on October 16, 2015, Defendant moved to stay this case pending the U.S. Supreme Court's decision in *Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791 (8th Cir. 2014), *cert. granted*, 576 U.S. --- (June 8, 2015) (No. 15-1156). Dkt. 144. Plaintiffs opposed the motion on November 6, 2015. Dkt. 155.

20. While the Parties aggressively litigated, they continued to discuss settlement proposals with Mr. Hughes' assistance. On November 18, 2015, the Parties participated in a full-day mediation for the third time before Mr. Hughes and ultimately reached an agreement to settle the case. *See* Dkt. 154. On November 20, 2015, they informed the Court of the settlement and requested that all case deadlines and rulings on motions be stayed. *See id.* On December 2, 2015, the Court denied as moot all pending motions and stayed all deadlines pending

consideration of the Parties' proposed settlement.  Dkt. 158.

21. The Parties recognize the benefits of settling this case.  Plaintiffs believe that the claims asserted in this case have merit and that the information obtained to date supports their claims.  Despite the strengths of their case, Plaintiffs are mindful that litigating the case could be protracted, extending to trial and appeal.  Plaintiffs' Counsel have also taken into account the uncertain outcome and risks of the litigation, as well as the difficulties and delays inherent in such litigation.  They have, therefore, determined that the Settlement Agreement proposed by the Parties is fair, reasonable and adequate.  The Settlement confers substantial benefits upon, and is in the best interests of, Plaintiffs and the Settlement Class.

22. Defendant maintains that it has a number of meritorious defenses to the claims asserted in this action.  Nevertheless, Defendant recognizes as well the risks and uncertainties inherent in litigation, the significant expense associated with defending class actions, the costs of any appeals, and the disruption to its business operations arising out of class action litigation.  Defendant also recognizes the risk that a trial on class-wide claims might present.  Accordingly, Defendant believes that the Settlement Agreement presented for preliminary approval is likewise in its best interest.

23. Prior to entering into the proposed Settlement, the Parties engaged in extensive discovery, including exchanging multiple productions of documents and data, exchanging written discovery and taking multiple depositions.  Plaintiffs have produced documents and provided written responses to Defendant's Interrogatories and to the Court's Interrogatories.  Plaintiffs kept abreast of the litigation strategy and of settlement discussions.  All three plaintiffs testified via declarations. In addition, Mr. Walsh and Phillips sat for a deposition in this case.  Plaintiffs would have testified at trial and have assisted Plaintiffs' Counsel in identifying other

potential witnesses.  Plaintiffs have vigorously represented the class and, absent settlement, would have continued to vigorously prosecute this case on behalf of the class through trial. Plaintiffs' Counsel also interviewed many of Defendant's delivery drivers and several of Defendant's former managers to learn more about the strengths and weaknesses of the case. Moreover, the settlement was reached only after extensive arm's length negotiations -- including three separate full-day mediations and numerous informal settlement discussions.

## Summary Of The Settlement

24. The Rule 23 class consists of approximately 2,250 Florida delivery drivers Defendant has employed for any length of time since March 7, 2009.  Settlement Agreement, attached hereto as Exhibit A, ¶ 23.  Excluded are (a) those who have initiated arbitration proceedings against Defendant alleging claims under the FMWA and/or (b) those who were opt-in plaintiffs in *Smith v. Pizza Hut, Inc.*, Case No. 1:09-cv-01632-CMA-NYW (D. Colo.), and thus, had settled their FMWA and FLSA claims in that case. *Id.*  Defendant shall identify the Class Members based on its payroll and/or other business records as of February 20, 2012. *Id.*, ¶ 43.  Defendant did not employ any drivers in Florida after February 20, 2012. *Id.*

25. The Class is easily ascertainable from Pizza Hut's records, which identify every class member by name.

26. Defendant has agreed to create a settlement fund of up to $3,100,000.00 ("Maximum Settlement Amount"). *Id.*, ¶¶ 14 and 32.  The fund will cover settlement payments to Authorized Claimants,[3] Court-approved attorneys' fees and costs in an amount not to exceed

---

[3] "Authorized Claimant" means a Participating Class Member who has returned a valid and timely Claim Form.  Exhibit A, ¶ 2.

one-third (1/3) of the Maximum Settlement Amount,[4] Court-approved service payments to the Class Representatives in an amount not to exceed $10,000 each,[5] and the reasonable costs of settlement administration. *Id.*, ¶¶ 15, 32 and 33.[6]

27. Participating Rule 23 class members will be paid pursuant to an allocation formula based on the length of their employment with Defendant. *Id.*, ¶ 38. Class Members for whom Pizza Hut was unable to locate a signed arbitration agreement shall be part of the "Non-Arbitration Subclass." *Id.* Those for whom Pizza Hut was able to find a signed arbitration agreement shall be part of the "Arbitration Subclass." *Id.* The Net Settlement Amount, i.e., the Maximum Settlement Amount minus any Court-approved amounts for Class Counsel's fees and costs, the service payments to the Class Representatives, and the costs of administration (including any Taxes and/or Tax Expenses incurred by the Qualified Settlement Fund), shall be allocated between the subclasses as follows: 69.1% to the Non-Arbitration Subclass and 30.9% to Arbitration Subclass. *Id.* The settlement payment for each class member shall then be calculated using the following formula:

$$\text{Net Settlement Amount for Subclass} \times \frac{\text{Total Weeks Worked by Class Member}}{\text{Total Weeks Worked by All Class Members}}$$

28. One hundred percent (100%) of each settlement payment will be treated as a non-taxable payment in reimbursement for incurred expenses and in settlement of claims for alleged interest and penalties. *Id.*, ¶ 38(f).

---

[4] *Id.*, ¶ 35.

[5] *Id.*, ¶ 36.

[6] To the extent Rule 23 class members elect to opt-out of the settlement or do not to submit a claim, amounts allocated to such class members shall revert back to Defendant. *Id.*, ¶ 38(e).

{00275737 }   9

29. The settlement payments are reasonable and within the range of remedies permitted by law. Defendant denies anything is owed. However, as a compromise and to end the litigation and ensuing expenses, Defendant has agreed to use, for settlement purposes only, the foregoing formula to determine each class member's pro rata share in the settlement fund.

30. Indeed, under the settlement formula, members of the Non-Arbitration Sub-Class shall receive approximately 85.8% of their maximum damages (excluding liquidated damages), which is an extraordinarily high recovery and which Plaintiffs believe is the highest per driver recovery in any under-reimbursement class action.[7] Members of the Arbitration Sub-Class shall

---

[7] Assuming Plaintiffs were able to prove that the average delivery was 5 miles -- which Pizza Hut strongly contested -- and that the drivers should have been reimbursed at the IRS rate for each mile driven – which Pizza Hut also strongly contested -- the drivers should have been reimbursed approximately $2.64 per delivery. Instead, the drivers were reimbursed an average of approximately $0.96 per delivery (the uniform per delivery reimbursement rate ranged from $0.86-$1.06 during the class period). As a result, the drivers were under-reimbursed by approximately $1.68 per delivery. During the class period, members of the Non-Arbitration Sub-Class made approximately 978,484 deliveries. Thus, members of the Non-Arbitration Sub-Class were under-reimbursed by approximately $1,643,853.12 (this math is approximate; if settlement had not occurred, Plaintiffs would have provided more precise damage calculations). As some members of the Non-Arbitration Sub-Class received wages above the minimum, this figure would have been reduced via off-set by the wages paid above the minimum to class members. In any event, under the proposed settlement, members of the Non-Arbitration Sub-Class will recover $1,409,640. Thus, assuming Plaintiffs' completely won on the merits (aside from liquidated damages) and somehow incurred no off-sets, members of the Non-Arbitration Sub-Class would recover 85.8% of their total reimbursement damages.

Members of the Arbitration Sub-Class performed approximately 2,583,196 deliveries. Thus, they were under-reimbursed by approximately $4,339,770.12. Under the proposed settlement, members of the Non-Arbitration Sub-Class would recover approximately $627,270. This amounts to approximately 14.5% of their reimbursement damages. Such a recovery is easily approvable in ordinary cases. *See, e.g.*, *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 543 (S.D. Fla. 1988), *aff'd sub nom. Behrens v. Wometco Enterprises*, 899 F.2d 21 (11th Cir. 1990) (finding settlement recovery of less than 6% of damages that would be sought at trial was reasonable); *City of Detroit v. Grinnell Corp.*, 356 F. Supp. 1380, 1386 (S.D.N.Y.1972) (a recovery of 3.2% to 3.7% of the amount sought is "well within the ball park"), *aff'd in part, rev'd on other grounds*, 495 F.2d 448 (2d Cir.1974). Given the difficulties of certifying a class containing members of the Arbitration Sub-Class, Plaintiffs believe this recovery is more than reasonable.

receive a lower percentage of their maximum damages, but this percentage is still well within the realm that courts approve, and is also a remarkable recovery given that (i) ███████████ ████████████████████████████████████████████ (ii) this Court also denied Plaintiffs' motion to pursue class claims on an arbitration basis; and (iii) assuming, arguendo, that drivers were able to certify a class in arbitration, such a decision would have been subjected to numerous lengthy appeals.

31. The reality is that the majority of Arbitration Sub-Class members would have recovered no monies for their potential claims absent the proposed settlement or the certification of a class arbitration, as the vast majority of drivers who signed arbitration agreements would not have filed individual arbitration claims. As such, without the proposed settlement here, these sub-class members would receive nothing unless Plaintiffs prevailed in obtaining class arbitration -- and Plaintiffs faced numerous significant hurdles in certifying an arbitration class.[8]

32. The settlement payments will be made by check valid for one hundred fifty (150) calendar days from issuance. *Id.*, ¶ 50. The Settlement Agreement has a protocol to remind check recipients of the deadline to cash checks. *See id.* It also has a protocol to ensure returned checks are delivered to the intended recipients. *See id.*, ¶ 49.

33. In exchange of for the settlement fund, Rule 23 class members who do not opt out of the settlement will release all claims under the FMWA, FLSA or similar law that were or could have been brought in the litigation or any arbitration based on the same facts and circumstances as the claims in the litigation. *Id.*, ¶ 52.[9] The release shall benefit Defendant, its

---

[8] This is especially true as the statute of limitations is continuing to run, and Pizza Hut stopped employing delivery drivers in February 2012. Thus, all of the Arbitration Sub-Class members' claims would soon be completely eclipsed by the statute of limitations.

[9] To set the stage for the Release, Plaintiffs have filed a Second Amended Complaint (Dkt. 163)

former and present parent, subsidiaries and affiliates, and their respective current and former officers, directors, employees, partners, shareholders and agents and any other successor or legal representatives ("Released Parties"). The Class Representatives shall release the Released Parties from all claims regardless of nature, known or unknown, whether asserted or not, arising out of any act or omission by the Released Parties prior to the execution of the Settlement Agreement ("General Release"). *Id.*, ¶¶ 52-53.

34. The proposed Settlement also provides for the direct mailing of Class Notices (attached hereto as Exhibit B), Reminder Notices (attached here to as Exhibit C) and Claim Forms (attached hereto as Exhibit D) to Class Members. *Id.*, ¶¶ 43-44.

### FBFG's Experience and Qualifications to Serve as Co-Class Counsel

35. FBFG will fairly and adequately represent the interests of all class members. FBFG has a proven track record of zealously and successfully advancing the interests of class members in consumer class actions.

36. FBFG's attorneys are highly qualified and have extensive experience in complex civil litigation and consumer class actions. Plaintiffs' counsel, Jeremiah Frei-Pearson of Finkelstein, Blankinship, Frei-Pearson & Garber, LLP ("FBFG"), has substantial experience representing delivery drivers and are qualified to represent the class. *See, e.g.*, *Hanna v. CFL Pizza*, No. 2011- 52949 (Fla. Cir. Ct. Brevard Cty.), Final Approval Order at ¶ 5 (Sept. 3, 2013) (attached as Exhibit F) (describing Plaintiffs' counsel as "highly competent, skilled and experienced" in approving a class action settlement for identical claims against CFL Pizza Hut, a Pizza Hut franchisee); █████████████████████████████████

---

to conform with the Court's ruling on the applicable statute of limitations (Dkt. 91), specifically asserting FLSA claims and removing Justin Barkley as a named plaintiff due to his inability to fulfill the duties of a class representative. *See id.*, ¶ 39.

▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄ Numerous courts have found Plaintiffs' counsel adequate in complex class action litigation. *See* FBFG Firm Resume, attached hereto as Exhibit I. Accordingly, Plaintiffs' counsel are also adequate to represent the interests of class. *See Lyons v. Georgia–Pacific Corp. Salaried Employees Ret. Plan,* 221 F.3d 1235, 1253 (11th Cir. 2000).

37. Moreover, in granting final approval to the proposed settlement in *Wise v. Energy Plus Holdings LLC*, No. 11-7345-WHP (S.D.N.Y.), the Court noted as it relates to current FBFG attorneys, then with the law firm of Meiselman, Packman, Nealon, Scialabba & Baker P.C., that they are "highly capable and experienced counsel" and "conducted themselves with skill, perseverance, and diligent advocacy."

38. The Honorable Judge Vincent Briccetti of the U.S. District Court for the Southern District of New York recently commented in relation to final approval of the settlement in *Quinn v. Walgreen*, No. 12-8187 (S.D.N.Y.) that "[T]here's no doubt in my mind that class counsel have invested significant time and resources into this litigation and have superbly advocated on behalf of their clients."

39. FBFG's partners have also been recognized as "Super Lawyers" and have been selected by their peers as amongst the New York area's "Best Lawyers." The Firm's lawyers have been selected for admission to the Top Trial Lawyers in America™ and to the Litigation Counsel of America's Trial Lawyer Honorary Society, as well as inducted as Fellows in the American Bar Foundation.

40.     FBFG has the resources necessary to prosecute this action effectively and efficiently. FBFG attorneys will facilitate the efficient scheduling of hearings, conferences, and other activities with the Court and defense counsel. Further, FBFG will work closely with co-counsel C. Ryan Morgan of Morgan & Morgan, P.A. to avoid duplicative work and to draw on his vast experience and expertise in wage and hour class action litigation.

41.     To help ensure that attorney time and expenses incurred in this case are reasonable, FBFG and Mr. Morgan propose to regularly collect reports of contemporaneously prepared attorney and paralegal time and expense records. Further, FBFG agrees to assign only three attorneys to work on this matter, absent a change in staffing or extraordinary circumstances.

42.     FBFG has demonstrated similar zealous and determined advocacy on behalf of the class members in all of the cases in which it has been appointed lead or served as class counsel. FBFG is ready, willing and able to commit the time and resources necessary to serve as co-class counsel in this case.

### **Exhibits**

43.     True and correct copies of the following are attached:

    a.    Exhibit A – A copy of the proposed Settlement Agreement;

    b.    Exhibit B – A copy of the proposed Class Notice;

    c.    Exhibit C – A copy of the proposed Reminder Notice;

    d.    Exhibit D – A copy of the proposed Claim Form;

    e.    Exhibit E – █████████████████████████████████████

  f. Exhibit F – A copy of the Final Approval Order, dated Sept. 3, 2013, in *Hanna v. CFL Pizza*, No. 2011- 52949 (Fla. Cir. Ct. Brevard Cty.);

  g. Exhibit G – ████████████████████████████████████

████████████████████████████████████

████

  h. Exhibit H – ████████████████████████████████████

████████████

  i. Exhibit I – A copy of the Firm Resume of Finkelstein, Blankinship, Frei-Pearson & Garber, LLP; and

  j. Exhibit J – A copy of the proposed Preliminary Approval Order.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 4, 2016 in White Plains, New York.

        **FINKELSTEIN, BLANKINSHIP, FREI-PEARSON & GARBER, LLP**

        By: */s/ Jeremiah Frei-Pearson*
           Jeremiah Frei-Pearson