# EXHIBIT A

## SETTLEMENT AGREEMENT

Plaintiffs Alfonso Fata, Brian Phillips and Jerry J. Walsh,[1] on behalf of themselves and the Settlement Class defined below, on the one hand, and Defendant Pizza Hut of America, Inc., on the other hand, agree to a settlement, subject to the Court's approval, through this Stipulation of Settlement ("Settlement" or "Stipulation" or "Settlement Agreement"):

### I.
### DEFINITIONS

In addition to other terms defined in this Stipulation, the terms below have the following meaning in this Stipulation:

1.      "Action" means the proceeding entitled *Justin Barkley, et al. v. Pizza Hut of America, Inc.* (Case No. 6:14-cv-00376-RBD-DAB), currently pending in the United States District Court for the Middle District of Florida, Orlando Division.

2.      "Authorized Claimant" means a Participating Class Member who has returned a valid and timely Claim Form.

3.      "Claim Form" means the Court-approved claim form and consent to join, that will be agreed upon by the Parties, that Settlement Class Members must complete, sign and timely return to the Settlement Administrator to receive a Settlement payment.

4.      "Class Counsel" means the law firms of: Finkelstein, Blankenship, Frei-Pearson, Garber, LLP ("FBFG") and Morgan & Morgan, PA ("Morgan").

5.      "Class Representatives" or "Plaintiffs" or "Named Plaintiffs" means Brian Phillips, Jerry J. Walsh and Alfonso Fata. "Barkley Plaintiffs" means Brian Phillips and Jerry J. Walsh.

6.      "Complaint" means the Second Amended Complaint that Plaintiffs will file as set forth in ¶ 39 herein.

7.      "Court" means the United States District Court for the Middle District of Florida, Orlando Division.

---

[1] Plaintiff Justin Barkley is unable to fulfill his duties as a named plaintiff. Accordingly, as stated in Plaintiffs' motion for class certification, Mr. Barkley will revert to his status as a class member.

8.      "Defendant" means Defendant Pizza Hut of America, Inc., which was converted to Pizza Hut of America, LLC effective December 23, 2014.

9.      "Defendant's Counsel" means the law firms of Sidley Austin LLP and Carlton Fields Jorden Burt, LLP.

10.     "Effective Date" means the day the Settlement is Final as defined in ¶ 12 below.

11.     "Exclusion Letter" means a letter that Settlement Class Members must complete, sign and timely return to the Settlement Administrator to exclude themselves from this Settlement, setting forth their name, the last four digits of their Social Security number, and a statement that they request exclusion from the Settlement Class and do not wish to participate in the Settlement.

12.     "Final" means that the Court has granted final approval of the Settlement without material modification and either: (a) the applicable date for seeking appellate review of the Court's final approval of the Settlement has passed without a timely appeal; (b) the United States Court of Appeals for the Eleventh Circuit has rendered a final decision or judgment affirming the Court's final approval of the Settlement without material modification, and the time for any further appeal has expired; or (c) any timely appeal has been dismissed.

13.     "Final Approval Hearing" means the hearing that the Court conducts to determine whether to finally approve and implement the Settlement.

14.     "Maximum Settlement Amount" means $3,100,000.00.  Defendant's gross aggregate payments under this Settlement Agreement shall not under any circumstances exceed the "Maximum Settlement Amount."

15.     "Net Settlement Amount" means the Maximum Settlement Amount *minus* any Court-approved amounts for Class Counsel's fees and costs, the service payments to the Class Representatives, and the costs of administration (including without limitation any Taxes and/or Tax Expenses incurred by the Qualified Settlement Fund).

16.     "Notice" means the Court-approved notice to be mailed to Settlement Class Members, that will be agreed upon by the Parties, which, following the Court's Preliminary Approval of the Settlement, the Settlement Administrator will mail to each Settlement Class Member, explaining the Settlement terms and the claims process, as set forth herein.

2
SETTLEMENT AGREEMENT

17.    "Parties" means Brian Phillips, Jerry J. Walsh and Alfonso Fata together with Defendant Pizza Hut of America, Inc., and "Party" means any of the Parties.

18.    "Participating Class Members" means Settlement Class Members who have not timely submitted a request to be excluded from the Settlement Class.

19.    "Preliminary Approval" means that the Court has preliminarily approved the settlement and authorized the issuance of Notice to Settlement Class Members, as set forth herein.

20.    "Release Period" means the period prior to the date the Court grants Preliminary Approval of this Settlement.

21.    "Qualified Settlement Fund" and "QSF" mean the qualified settlement fund as more fully described below in ¶ 33.

22.    "Settlement Administrator" means the third-party administrator mutually agreed to by the Parties and approved by the Court, which will perform the duties of: (a) using the data provided by Defendant to prepare the Claim Forms for each Settlement Class Member; (b) mailing the Notice Packets (defined below) to the Settlement Class Members; (c) establishing a website with information regarding the Settlement, provided that the website is not searchable or indexed by internet search engines; (d) tracking the submission of Claim Forms and Exclusion Letters; (e) sending cure letters, sending reminder postcards, and making follow-up telephone calls to Settlement Class Members; (f) notifying the Parties of timely, untimely and deficient Claim Forms and Exclusion Letters received; (g) calculating the amounts due to each Authorized Claimant pursuant to the Settlement; (h) notifying the Parties of, and helping to resolve, any disputes regarding claims by the Settlement Class Members and notifying Settlement Class Members of the decision on disputed claims; (i) providing Individual Settlement Payments to the Authorized Claimants (except as otherwise provided in the Settlement); (j) utilizing the National Change of Address Database maintained by the United States Postal Service, mail-forwarding information and/or skip tracing methods, as reasonable, to update the mailing list and taking steps to send Notice Packets and Individual Settlement Payment checks to current mailing addresses; (k) sending

{00275726 }

1    reminder postcards to Settlement Class Members who have not submitted Claim Forms; and

2    (l) performing such other duties as are described herein.

3         23.    "Settlement Class" or "Settlement Class Member(s)" means all individuals who are

4    reflected on the Class Data List, which, for the purposes of this Settlement only and for no other

5    purpose whatsoever, shall consist of all Florida delivery drivers employed by Defendant since March

6    7, 2009, except for (a) those who have initiated arbitration actions against the Defendants alleging

7    claims under the Florida Minimum Wage Act and/or (b) those who were opt-in plaintiffs in the case

8    of *Smith v. Pizza Hut, Inc.*, Case No. 1:09-cv-01632-CMA-NYW, which was pending in the United

9    States District Court for the District of Colorado, and thus settled their claims under the Florida

10   Minimum Wage Act and Fair Labor Standards Act in that case.  Without limiting the generality of

11   the foregoing, for the purposes of this Settlement only and for no other purpose whatsoever, the

12   Settlement Class shall include, but not be limited to, all such Florida delivery drivers who signed

13   arbitration agreements with Defendant but have not filed any individual arbitration action against

14   Defendant as of the date the Parties execute this Stipulation.

15        24.    "Settlement Payment" means the distribution of the Net Settlement Amount to

16   Authorized Claimants pursuant to ¶ 38 below.  "Potential Settlement Payment" means the pro-rata

17   share of the Net Settlement Amount allocable to each Settlement Class Member; however,

18   notwithstanding the foregoing, only Authorized Claimants shall be entitled to receive Settlement

19   Payments, which shall each be referred to herein as an "Individual Settlement Payment."

20
                                    II.
21                                RECITALS

22        25.    Plaintiffs filed a complaint with the Court on March 7, 2014.

23        26.    Thereafter, on August 11, 2014, the Court declined to compel the Barkley Plaintiffs

24   into arbitration, but severed Alfonso Fata's claims from the Action and, in light of Mr. Fata's

25   arbitration agreement with Defendant, transferred such claims to the United States District Court for

26   the Middle District of Florida, Tampa Division, for consideration by Judge Steven D. Merryday

27   along with *Hanna v. Pizza Hut of America, Inc.*, No. 8:12-cv-1863-T-23EAJ.  The Barkley Plaintiffs

28

                                    4
                           SETTLEMENT AGREEMENT

{00275726 }

then amended the Complaint on October 16, 2014, removing Alfonso Fata as a named plaintiff in the Action.

27.     On August 21, 2015, the Court granted Defendant's motion to dismiss all claims in the Amended Complaint relating to time periods prior to March 7, 2009, except for with respect to the Named Plaintiffs.  On October 15, 2015, the Court denied Plaintiffs' motion to certify that decision to the Eleventh Circuit Court of Appeals for interlocutory appeal.

28.     On September 9, 2015, the Barkley Plaintiffs served a motion to certify a class action ("Certification Motion"), thereafter filing the Certification Motion in redacted form pursuant to an order of the Court on October 15, 2015.   Defendant served an opposition to the Certification Motion on October 16, 2015 ("Opposition to Certification").  In addition, on October 16, 2015, Defendant filed a motion to stay this case pending the Supreme Court's decision in *Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791 (8th Cir. 2014), *cert. granted*, 576 U.S. --- (June 8, 2015) (No. 15-1156) ("Motion to Stay"), and Plaintiffs served an opposition thereto on November 6, 2015 ("Opposition to Stay"), thereafter filing the Opposition to Stay in redacted form pursuant to an order of the Court on November 20, 2015.  The Court has denied as moot all pending motions pending consideration of the parties' proposed settlement.

29.     The Parties also have engaged in extensive discovery, including exchanging multiple productions of documents and data, exchanging written discovery and taking multiple depositions.

30.     On November 18, 2015, the Parties mediated this case with the assistance of mediator Hunter Hughes.  This was the third in-person mediation session between the parties and that mediation ultimately led to the agreement reflected in this Stipulation.

{00275726 }

5

### III.
### TERMS OF SETTLEMENT

31. <u>Condition Precedent</u>.  The Settlement and the payments described herein are conditioned upon passage of the Effective Date.

32. <u>Maximum Settlement Amount</u>:  Defendant's total aggregate payments under this Settlement Agreement shall under no circumstances exceed $3,100,000.00.

33. <u>Qualified Settlement Fund</u>.  Within five (5) calendar days after the Effective Date, Defendants shall deposit into the QSF to be administered by the Settlement Administrator a gross aggregate amount equal to:  (a) the Individual Settlement Payments to Authorized Claimants; *plus* (b) the service payments to the Class Representatives in an amount not to exceed $10,000 each; *plus* (c) Class Counsel's reasonable attorneys' fees, costs and expenses; *plus* (d) the reasonable costs of the Settlement Administrator in administering the Settlement (including any Taxes and/or Tax expenses resulting from operation of the QSF).   Under no circumstances shall this amount exceed $3,100,000.00.  In addition, for avoidance of doubt, the Non-Claimant Fund (as defined in ¶ 38(e) below) shall not be deposited into the QSF but shall be retained by Defendant.

34. <u>Taxes</u>

(a)    The Parties agree to treat the Maximum Settlement Amount as being at all times a "Qualified Settlement Fund," also referred to throughout this Stipulation as "QSF," within the meaning of Treas. Reg. §1.468B-1.  In addition, the Settlement Administrator shall timely make such elections as necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treas. Reg. §1.468B-1) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Settlement Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filings to occur.

(b)    For the purpose of §468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Settlement

{00275726 }

1  Administrator. The Settlement Administrator shall timely and properly file all informational and

2  other tax returns necessary or advisable with respect to administering this Settlement. Such returns

3  (as well as the election described in ¶ 34(a) hereof) shall be consistent with this paragraph and in all

4  events shall reflect that all Taxes (including any estimated Taxes, interest, or penalties) on the

5  Maximum Settlement Amount shall be paid out of the Maximum Settlement Amount as provided in

6  ¶ 34(c) hereof. The Settlement Administrator also shall be responsible for complying with any

7  required tax reporting obligations arising from the terms and conditions of this Agreement.

8       (c)     All (a) Taxes (including any estimated Taxes, interest, or penalties) arising

9  from or in connection with the Settlement with respect to the Maximum Settlement Amount,

10  including any Taxes or tax detriments that may be imposed upon the Parties or their counsel with

11  respect to any income earned by the Maximum Settlement Amount for any period during which the

12  Maximum Settlement Amount does not qualify as a "Qualified Settlement Fund" for federal or state

13  income tax purposes ("Taxes"), and (b) expenses and costs incurred in connection with the operation

14  and implementation of this ¶ 34 (including, without limitation, expenses of tax attorneys and/or

15  accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the

16  returns described in this ¶ 34) ("Tax Expenses"), shall be paid out of the Maximum Settlement

17  Amount, provided that nothing herein shall prohibit Class Counsel from contesting the

18  reasonableness of any such Tax or Tax Expenses with the applicable taxing entity or relevant service

19  provider. In all events, except as otherwise provided for in this Stipulation, the Parties and their

20  counsel shall have no liability or responsibility for the Taxes or the Tax Expenses. The Authorized

21  Claimants shall indemnify and hold each of Defendant and its counsel harmless for Taxes and Tax

22  Expenses (including, without limitation, Taxes payable by reason of any such indemnification).

23  Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of

24  the Maximum Settlement Amount and shall be timely paid by the Settlement Administrator out of,

25  not in addition to, the Maximum Settlement Amount without prior order from the Court, and the

26  Settlement Administrator shall be obligated (notwithstanding anything herein to the contrary) to

27  withhold from distribution to Authorized Claimants any funds necessary to pay such amounts,

28

{00275726 }

1   including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any

2   amounts that may be required to be withheld under Treas. Reg. §1.468B-2(l)(2)); neither Defendant

3   nor its counsel are responsible nor shall they have any liability therefor.  The Parties hereto agree to

4   cooperate with the Settlement Administrator, each other, and their tax attorneys and accountants to

5   the extent reasonably necessary to carry out the provisions of this ¶ 34.

6       35.   Class Counsel's Attorneys' Fees, Costs and Expenses:  Plaintiffs and/or Class

7   Counsel will request, and Defendant will not oppose, a payment from the Maximum Settlement

8   Amount for attorneys' fees for all the work already performed and all the work remaining to be

9   performed in this Action, and for costs and expenses incurred by Class Counsel in prosecuting the

10  Action and implementing the terms of the Settlement, in an amount not to exceed one-third (1/3) of

11  the Maximum Settlement Amount.  The Court's award of Class Counsel's attorneys' fees, costs and

12  expenses shall be paid to Class Counsel by the Settlement Administrator within five (5) business

13  days after Defendants deposit the funds in the QSF.  The Parties agree that any reduction by the

14  Court in the amount of attorneys' fees, costs and/or expenses approved for Class Counsel shall not

15  be a basis for rendering the entire Settlement voidable or unenforceable.  Any reduction by the Court

16  of the amount of attorneys' fees, costs and/or expenses which is ordered by the Court and affirmed

17  during any appeal shall be part of the Net Settlement Amount.  Notwithstanding the foregoing,

18  regardless of whether or not and to what extent (if any) the Court approves any amount of attorneys'

19  fees, costs and/or expenses, Class Counsel shall directly pay all fees of the mediator, Hunter Hughes.

20      36.   Service Payments to Class Representatives:  Subject to Court approval, the Class

21  Representatives, Brian Phillips, Jerry J. Walsh and Alfonso Fata shall be paid service payments in an

22  amount not to exceed $10,000 each, to be paid from the Maximum Settlement Amount, for their

23  service as Class Representatives, and in consideration for the General Release of Claims as defined

24  in ¶ 53, in addition to any payments they may otherwise receive as Authorized Claimants.  The

25  Court's award of service payments to the Class Representatives shall be paid by the Settlement

26  Administrator to the Class Representatives concurrent with payments to Authorized Claimants as set

27  forth in ¶ 38, below.  The Parties agree that any reduction by the Court in the amount of the Class

28

{00275726 }

Representatives' requested service payments shall not be a basis for rendering the entire Settlement voidable or unenforceable. If the Court approves service payments of less than the amount sought, the remainder will be retained in the Net Settlement Amount.

37.     Settlement Administration Costs:  The reasonable costs incurred by the Settlement Administrator in administering the Settlement (including without limitation any Taxes and/or Tax Expenses incurred by the QSF) shall be paid from the Maximum Settlement Amount. Such costs of administration shall be deducted from the Maximum Settlement Amount prior to calculating each Settlement Class Member's Potential Settlement Payment (as set forth in ¶ 38 below), provided that, to the extent necessary, such costs of administration may be estimated to facilitate the calculation of Potential Settlement Payments.

38.     Distribution to Settlement Class Members:

(a)     Within five (5) calendar days after receipt of the Class Data List (as set forth in ¶ 43(a) below), the Settlement Administrator shall calculate each Settlement Class Members' potential Settlement Payment (each a "Potential Settlement Payment"), as follows.

(b)     There shall be two settlement subclasses. Each Settlement Class Member for whom Pizza Hut was unable to locate a signed arbitration agreement shall be a member of the "Non-Arbitration Subclass." Each Settlement Class Member for whom Pizza Hut was able to locate a signed arbitration agreement shall be a member of the "Arbitration Subclass." 69.1% of the Net Settlement Amount shall be allocated to members of the Non-Arbitration Subclass (such amount referred to herein as the "Non-Arbitration Subclass Net Settlement Amount"). 30.9% of the Net Settlement Amount shall be allocated to members of the Arbitration Subclass (such amount referred to herein as the "Arbitration Subclass Net Settlement Amount").

(c)     Each Settlement Class Member's Potential Settlement Payment will be calculated in the following manner:

- For each Settlement Class Member, the total number of his or her workweeks working for Defendant between March 7, 2009 and February 20, 2012 shall be

9

{00275726 }

his/her "Individual Workweeks." The aggregate of all Individual Workweeks among all Settlement Class Members shall be the "Class' Workweeks."

- Each Settlement Class Member's Individual Workweeks shall be divided by the Class' Workweeks to obtain his/her "Payment Ratio."

- For each Settlement Class Member who is a member of the Non-Arbitration Subclass, his/her Payment Ratio shall be multiplied by the Non-Arbitration Subclass Net Settlement Amount to arrive at his/her Potential Settlement Payment. For each Settlement Class Member who is a member of the Arbitration Subclass, his/her Payment Ratio shall be multiplied by the Arbitration Subclass Net Settlement Amount to arrive at his/her Potential Settlement Payment.

(d)     Submission of Claim Forms:  Only the Participating Class Members who submit timely and valid Claim Forms (the "Authorized Claimants") shall be paid.  To be timely, the Claim Forms must be submitted by the deadline indicated on the Notice and Claim Form by mail, fax, or email (if mailed, bearing a postmark on or before the deadline).  To be valid, Claim Forms must be signed, dated, and returned to the Settlement Administrator by the deadline as explained below in ¶¶ 43-44.  As the Named Plaintiffs will sign this Settlement Agreement, they do not need to sign, date and return Claim Forms to demonstrate their consent to join the class action.

(e)     Reversionary Common Fund Settlement:  This is a reversionary common fund settlement.  If any Settlement Class Members do not file claims (and thus do not become Authorized Claimants) (hereinafter referred to as "Non-Claimants"), Defendant shall retain the money equal to the amount of Potential Settlement Payments attributable to those Non-Claimants ("Non-Claimant Fund").

(f)     Tax Allocation of Settlement Payments and Service Payments: One-hundred percent (100%) of the Individual Settlement Payments and Class Representatives' Service Payments made will be treated as non-taxable payments in reimbursement for incurred expenses and in settlement of claims for alleged interest and penalties.  No payroll or tax withholdings will be taken

{00275726 }

from these payments.  The Authorized Claimants and the Class Representatives will be responsible for correctly characterizing their respective settlement payments for tax purposes and paying any taxes owing on said amounts (including without limitation, any interest or penalties required by law). Any tax obligation(s) arising from the Individual Settlement Payments and the Class Representatives' Service Payments will be the sole responsibility of each Authorized Claimant. Authorized Claimants must indemnify, defend and hold Defendant harmless for any federal, state and local tax liability, including taxes, interest, penalties or the like, and required withholdings, which may be or is asserted against or imposed upon Defendant by any taxing authority based upon any failure to pay any taxes due on the amounts being paid to the Authorized Claimants pursuant to this Agreement.  None of the Released Parties nor any of their representatives have made any warranty concerning the tax treatment of any sums to be paid under this Agreement, and Settlement Class Members have not relied on any such representation in determining the tax treatment of such sums.

(g)    None of the payments described in this Agreement shall be subject to matching contributions or included as benefits-eligible earnings under any benefit plan or policy of the Defendant or any of its current or former parent companies, subsidiaries or affiliates.

(h)    None of the payments and/or distributions detailed in this Section shall be made by the Settlement Administrator until the dates specifically called for herein.

(i)    Within five (5) calendar days after Defendant funds the QSF in accordance with ¶ 33 above, the Settlement Administrator shall mail the Individual Settlement Payments to the Authorized Claimants and the service payments to the Class Representatives.

39.    Amended Complaint:  Pursuant to the stipulation of the Parties and subject to Court approval, Plaintiffs will, no later than seven (7) calendar days prior to the hearing date set for the Motion for Preliminary Approval, lodge with the Court a Second Amended Complaint, which:  (a) defines the Settlement Class to consist of all Florida delivery drivers employed by Defendant since March 7, 2009, including without limitation all such Florida delivery drivers employed by Defendant since March 7, 2009 who signed arbitration agreements with Defendant but have not filed any individual arbitration against Defendant as of the date the Parties executed this Stipulation; (b)

includes a claim under the Fair Labor Standards Act ("FLSA") on behalf of all members of that class; and (c) withdraws Justin Barkley as a Named Plaintiff.   The parties shall make best efforts to effectuate the settlement.  However, if the Settlement is not fully and finally effectuated for any reason, the case shall return to the status quo *ex ante* prior to the filing of the Second Amended Complaint.  Accordingly, if the Settlement is not effectuated, Plaintiffs must withdraw the Second Amended Complaint and the First Amended Complaint shall again be the operative complaint.  The Parties agree that the Second Amended Complaint's inclusion of (i) FLSA claims and (ii) delivery drivers who signed arbitration agreements both are for settlement purposes only and should not affect this litigation in the event the settlement is not effectuated.

40.   <u>Conflict of Terms</u>: In the event of a conflict between the terms set forth in any communication (including, without limitation, the Notice and Claim Form) and this Stipulation, the terms of this Stipulation shall control.

**IV.**
**SETTLEMENT PROCEDURES**

41.   <u>Motion for Preliminary Approval</u>:  Within five (5) calendar days after the execution of this Agreement by all Parties,  Plaintiffs shall file a motion for preliminary approval of the Settlement, applying to the Court for the entry of an Order that will be agreed upon by the Parties prior to submission:

(a)     Scheduling a fairness hearing on the question of whether the proposed Settlement should be approved as fair, reasonable, and adequate as to the Settlement Class;

(b)     Approving as to form and content the proposed Notice to the Settlement Class;

(c)     Approving as to form and content the proposed Claim Form;

(d)     Approving the proposed method of requesting exclusion from the Settlement;

(e)     Directing the mailing of the Notice and Claim Form by first-class mail to the Settlement Class Members;

(f)     Preliminarily approving the Settlement;

(g)     Approving the filing of the Second Amended Complaint;

(h)   Preliminarily certifying the Settlement Class, including the Non-Arbitration Subclass and the Arbitration Subclass for purposes of calculating Potential Settlement Payments, under both the FMWA and the FLSA for purposes of Settlement only; and

(i)   Approving the Settlement Administrator.

42.   <u>Confidentiality</u>:  Plaintiffs hereby agree to stipulate to permit Defendant to file, and agree not to oppose, a motion requesting that the terms of the Settlement and this Agreement shall remain confidential to the maximum extent permitted by law. *See Smith v. Pizza Hut, Inc.*, No. 1:09-cv-01632-CMA-NYW (D. Colo. March 26, 2015); *Darrow v. WKRP Mgmt., LLC*, No. 1:09-cv0613-CMA-BNB (D. Colo. Sept. 6, 2012) (granting parties' motion to seal FLSA collective action settlement agreement); *Luiken v. Domino's Pizza, LLC*, No. 0:09-cv-00516-DWF-TNL (D. Minn. Oct. 2, 2013) (granting defendant's unopposed motion to seal FLSA collective action settlement agreement).  The Parties agree that any refusal by the Court to treat the Settlement and/or this Agreement as confidential shall not be a basis for rendering the Settlement voidable or unenforceable.  Notwithstanding the foregoing, except as otherwise expressly provided in ¶ 62 below, Class Counsel and Defendant's Counsel agree that they shall not communicate to third parties in any way concerning this Agreement or any of its terms or conditions.

43.   <u>Notice to the Class</u>:

(a)   Within twenty-one (21) calendar days after the Court's entry of its Order Granting Preliminary Approval of the Settlement, Defendant will provide to the Settlement Administrator the names, last known addresses, last known telephone numbers, and social security numbers of the Settlement Class Members, along with data indicating the number of work weeks for each Settlement Class Member between March 7, 2009 and February 20, 2012 ("Class Data List"). Pizza Hut represents that it did not employ any drivers in Florida after February 20, 2012.  This data shall be based on Defendant's payroll and/or other business records.

(b)   Within ten (10) calendar days after receipt of the above Class Data List from Defendant, to the extent practicable, the Settlement Administrator will consider any address updates provided by Class Counsel, perform reasonably diligent skip tracing, consult the National Change of

Address Registry, and mail to all Settlement Class Members, by first-class U.S. mail, the Notice and Claim Form, and a pre-addressed, postage-paid return envelope (collectively, "the Notice Packet").

    44.   Claim Process:

        (a)   Settlement Class Members shall have sixty (60) calendar days after the Settlement Administrator's initial mailing of the Notice Packets to return their Claim Forms to the Settlement Administrator ("Claims Period Deadline"). Claim Forms may be submitted to the Settlement Administrator via U.S. mail postmarked on or before the Claims Period Deadline, sent by fax or by email on or before the Claims Period Deadline, or entered online through the Settlement Administrator's website on or before the Claims Period Deadline. In the case of mailed Claim Forms, the postmark date will be deemed the date of submission. In order for a Settlement Class Member to become an Authorized Claimant, he/she must verify his/her identity by providing accurately on the Claim Form the last four digits or his/her social security number or taxpayer ID number. This entry shall be checked against Pizza Hut's records.

        (b)   By submitting a Claim Form, a Settlement Class Member will be giving his or her consent to "opt in" as a party plaintiff in this Action pursuant to the FLSA. The Claim Form shall contain language specifically so stating.

        (c)   If a Settlement Class Member submits a timely Claim Form that is rejected by the Settlement Administrator as deficient in some material respect (for example, the Settlement Class Member failed to sign the Claim Form), the Settlement Administrator will notify the Settlement Class Member in writing of the basis for the deficiency and give the Settlement Class Member a reasonable opportunity to cure the deficiency, including a follow-up telephone call, if necessary. The Settlement Administrator also will provide the Settlement Class Member with Class Counsel's contact information in case the Settlement Class Member wishes to seek Class Counsel's assistance. Settlement Class Members shall have the greater of fifteen (15) calendar days after notification of the deficiency, or until the Claims Period Deadline, to cure the deficiency.

        (d)   The Settlement Administrator shall provide the Parties' counsel with a weekly report showing the number of claims received (including the numbers of valid and deficient claims),

and any opt-outs and/or objections.   Thirty (30) calendar days prior to the deadline to submit Claim Forms, the Settlement Administrator will send a postcard reminder notice to all Settlement Class Members who have not yet submitted Claim Forms.

   (e)  The text of the postcard reminder notice will state:

   **IMPORTANT LEGAL REMINDER**

   Dear Settlement Class Member:

   On **[insert date]**, we mailed you a Notice regarding a class action settlement in which you may be eligible to participate.  Our records indicate that you have not responded.

   If you do not respond, you will waive all rights to contend you are owed money for unpaid compensation and/or expense reimbursement and you will not receive any settlement payment.

   If you lost your Notice or Claim Form, or have any questions regarding this reminder, please call the Settlement Administrator at ___-___-___.

   Thank you,
   Settlement Administrator

  45.  Records and Disputes: If a Settlement Class Member who receives a Claim Form wishes to dispute the calculation of his or her Individual Settlement Payment, the Settlement Class Member may so notify the Settlement Administrator and should produce any supporting information and/or evidence available to the Settlement Class Member.  The Parties will meet and confer in an attempt to resolve any disputes and will endeavor to resolve the issue informally.  If a person believes that he or she was wrongly excluded from being a member of the Settlement Class, the Parties will endeavor to resolve the issue informally.

  46.  Objections to the Settlement:

   (a)  Settlement Class Members who wish to object to the Settlement must not exclude themselves from the Settlement and must file with the Court and serve on the Parties' counsel, not later than thirty (30) calendar days after the date that the Settlement Administrator first mails the Notice Packets ("Objection Deadline"), a written statement objecting to the Settlement and setting forth the grounds for the objection, as explained further in the Notice.  This statement also must indicate whether the Settlement Class Member intends to appear and object to the Settlement at

the Final Approval Hearing.  The failure to so indicate will constitute a waiver of the right to appear at the hearing.  A Settlement Class Member who does not submit an objection in the manner and by the deadline specified above shall be deemed to have waived all objections and will be foreclosed from making any objection to the Settlement, whether by appeal or otherwise, absent a contrary order of the Court.

(b)     Settlement Class Members who wish to object to Plaintiffs' and/or Class Counsel's request for attorneys' fees and expenses may do so by following the same procedure as described above.

47.     Requests for Exclusion:

(a)     Settlement Class Members who wish to exclude themselves from the Settlement (opt out of the Settlement) must submit to the Settlement Administrator, not later than thirty (30) calendar days after the date that the Settlement Administrator first mails the Notice Packets ("Opt-Out Deadline"), an Exclusion Letter requesting that he or she be excluded from the Settlement Class.  Exclusion Letters may be submitted to the Settlement Administrator via U.S. Mail, fax, and/or email.  A Settlement Class Member who does not submit a valid and timely Exclusion Letter in the manner and by the deadline specified above shall be bound by all terms and conditions of the Settlement, releases and by the Judgment, regardless of whether he or she submits a Claim Form.  A Settlement Class Member who timely submits a valid Exclusion Letter shall not participate in, or be bound by, the Settlement or the Judgment in any respect.  To be valid, Exclusion Letters must be submitted to the Settlement Administrator by the Opt-Out Deadline.  Persons who submit an Exclusion Letter shall not be permitted to file objections to the Settlement or appear at the Final Approval Hearing to voice any objections to the Settlement.

(b)     If a Settlement Class Member completes and submits both a Claim Form and an Exclusion Letter, the Settlement Administrator will contact the Settlement Class Member to obtain clarification of the Settlement Class Member's intent.  In the event that the Settlement Administrator is unable to obtain clarification of the Settlement Class Member's intent by the time of the Final Approval Hearing, it will be presumed that the Claim Form is controlling, and such

1   Settlement Class Member shall be treated as an Authorized Claimant, be paid an Individual

2   Settlement Payment pursuant to the Claim Form, and be bound by the terms of the Settlement. The

3   Settlement Administrator will provide all counsel with the name and contact information of any

4   person who submits both a Claim Form and an Exclusion Letter. As necessary, the Court will be the

5   final arbiter with respect to any disputes as to whether a person has filed a valid Claim Form, a valid

6   Exclusion Letter, a valid objection to the Settlement, and/or a valid dispute as to the person's

7   inclusion or exclusion as a Participating Class Member and/or Authorized Claimant.

8       (c)   Although Settlement Class Members who do not submit either a valid and

9   timely Claim Form or a valid and timely Exclusion Letter will not receive an Individual Settlement

10   Payment, they shall be bound by all of the terms of the Settlement, including without limitation, the

11   release set forth in the Settlement.

12       (d)   If more than ten percent (10%) of the Settlement Class Members timely

13   submit Exclusion Letters, Defendant shall have the exclusive right to void this Settlement in its

14   entirety. Defendant shall make its election within fourteen (14) calendar days after the Settlement

15   Administrator notifies the Parties of the number of Exclusion Letters received, which the Settlement

16   Administrator will do within fourteen (14) calendar days after the deadline for submission of

17   Exclusion Letters.

18       48.   Final Approval:

19       (a)   Within fourteen (14) calendar days prior to the Final Approval Hearing,

20   Plaintiffs will file with the Court a motion for final approval of the Settlement and a memorandum in

21   support of their motion. Class Counsel will prepare the motion for final approval and will provide

22   Defendant's Counsel sufficient opportunity to review and agree on the content of the motion before

23   it is filed.

24       (b)   At the time the motion for final approval of the Settlement is filed, Class

25   Counsel shall provide the Court with a declaration executed by the Settlement Administrator,

26   specifying the due diligence the Settlement Administrator has undertaken with regard to the mailing

27   of the Notice; verifying its settlement administration costs to date and an estimate of future costs to

28

conclude its duties pursuant to the Settlement; and reporting (to date) on the number of claims, objections, disputes (and status), average and highest claim value, and opt-outs submitted.

(c)     Not later than five (5) court days before the Final Approval Hearing, the Parties may file, jointly or separately, a reply in support of their joint motion for final approval of the Settlement, in the event any opposition to the joint motion for final approval has been filed. Likewise, Plaintiffs and/or Class Counsel may file a reply in support of the motion for court approval of Class Counsel's attorney's fees and costs, in the event any opposition to the motion for such attorneys' fees and/or costs has been filed.

(d)     At or before the Final Approval Hearing, the Parties will present a Judgment for the Court's entry. After entry of the Judgment, the Court will have continuing jurisdiction over the Action and the Settlement solely for purposes of enforcing the Settlement, addressing settlement administration matters, and addressing such post-Judgment matters as may be appropriate under court rules or applicable law.

(e)     Upon the filing of the motion for final approval of the Settlement, the Parties will submit a proposed Order in a mutually agreeable form:

(i)     Approving the Settlement, adjudging the terms thereof to be fair, reasonable, and adequate, and directing consummation of its terms and provisions;

(ii)     Approving Class Counsel's motion for attorneys' fees and expenses;

(iii)     Approving the Class Representatives' service payments and the Settlement administration costs;

(iv)     Permanently enjoining all Settlement Class Members (other than those who filed timely and valid Exclusion Letters) from prosecuting against the Released Parties (defined below) any and all of the Settlement Class Members' Released Claims (defined below); and

(v)     Permanently enjoining the Class Representatives from prosecuting against the Released Parties any and all of the Class Representatives' Released Claims (as defined below).

{00275726 }

49.     Returned Checks:  If an Individual Settlement Payment check envelope is returned as undeliverable, the Settlement Administrator will use its discretion to take all steps necessary to locate an updated mailing address for that Settlement Class Member, including without limitation, enhanced skip tracing methods, calling and/or emailing the Authorized Claimant using the telephone number and/or email address provided in his or her returned Claim Form.

50.     Uncashed Checks:  If an Authorized Claimant has not cashed his or her Individual Settlement Payment check within ninety (90) calendar days after issuance, the Settlement Administrator shall mail that Authorized Claimant a letter reminding him or her of the deadline to cash such check and providing information as to how to obtain a reissued check in the event the check was lost, stolen or misplaced.  If an Authorized Claimant has not cashed his or her Individual Settlement Payment check within one hundred twenty (120) calendar days after issuance, the Settlement Administrator shall telephone the Authorized Claimant reminding him or her of the deadline to cash such check and providing information as to how to obtain a reissued check, if necessary.  Any checks issued to Authorized Claimants shall remain valid and negotiable for one hundred fifty (150) calendar days after the date of their issuance and may thereafter automatically be canceled if not cashed by the Authorized Claimants within that time.  Thereafter, monies represented by those uncashed checks in the Qualified Settlement Account will be sent to the applicable state's unclaimed wages fund.

51.     Certification:  Upon completion of administration of the Settlement, the Settlement Administrator shall provide written certification of such completion to Class Counsel and Defendant's Counsel.

V.
RELEASE OF CLAIMS

52.     Settlement Class Members' Released Claims:  Upon the Effective Date of the Settlement, the Class Representatives and the Settlement Class Members (other than those who submit valid and timely Exclusion Letters) will release and forever discharge Defendant, and any of each of their former and present parents, subsidiaries and affiliates, whatever their current or former legal names or legal entity status, any of each of their respective current and former officers,

{00275726 }

1    directors, employees, partners, shareholders and agents, and any other successors, assigns, or legal

2    representatives ("Settlement Class Members' Released Parties" or "Released Parties"), from any and

3    all claims, rights, demands, liabilities and causes of action of every nature and description, whether

4    known or unknown, arising on or before the date of Preliminary Approval ("Release Period"),

5    arising out of, based on, or encompassed by: (a) the claims that were or could have been asserted in

6    any civil complaint filed in this case or in any arbitration filed on behalf of any Settlement Class

7    Member before the American Arbitration Association; (b) relate to or arise out of the reimbursement

8    of expenses, under-reimbursement of expenses, or failure to reimburse expenses of any kind;

9    (c) relate to or arise out of the payment of the applicable minimum wage, under-payment of the

10    applicable minimum wage, or failure to pay the applicable minimum wage; and (d) that arise under

11    the Florida Minimum Wage Act (FMWA) or the Fair Labor Standards Act (FLSA), 29 U.S.C. §§201

12    *et seq.*; and any similar federal, state, municipal or local laws. The claim preclusion effect of this

13    Settlement, and the judgment thereon, for *res judicata* purposes shall be co-extensive with the

14    release.

15      53.    <u>General Release by Class Representatives</u>:

16        (a)    The Class Representatives release the Released Parties from all claims,

17    demands, rights, liabilities and causes of action of every nature and description whatsoever, known

18    or unknown, asserted or that might have been asserted, whether in tort, contract, or for violation of

19    any local, state or federal statute, rule, regulation, ordinance or common law arising out of, relating

20    to, or in connection with any act or omission by or on the part of any of the Released Parties

21    committed or omitted prior to the execution hereof.  (The release set forth in this Paragraph shall be

22    referred to hereinafter as the "General Release").

23        (b)    The General Release includes any unknown claims the Class Representatives

24    do not know or suspect to exist in their favor at the time of the General Release, which, if known by

25    them, might have affected their settlement with, and release of, the Released Parties.

26

27

28

(c)     The Parties agree that any refusal by the Court to approve of the General Release by Class Representatives as set forth in this ¶ 53 shall not be a basis for rendering the entire Settlement voidable or unenforceable.

## VI.
### ADDITIONAL PROVISIONS

54.     <u>Signatories</u>:

(a)     The respective signatories to the Settlement represent that he, she or they are fully authorized to enter into this Settlement and bind to its terms and conditions the respective entities for which the person is signing as shown on the signature line.

(b)     The Parties agree that because the Settlement Class Members are so numerous, it is impossible or impractical to have each Settlement Class Member execute this Settlement.  The Notice will advise all Settlement Class Members of the binding nature of the release.  Excepting only the Settlement Class Members who submit a valid and timely Exclusion Letter, this Stipulation shall have the same force and effect as if it were executed by each Settlement Class Member.

55.     <u>Cooperation to Implement Settlement</u>:  The Parties agree to cooperate fully with each other to accomplish the terms of this Settlement, including but not limited to executing such documents and taking such other actions as may reasonably be necessary to implement the terms of the Settlement.  The Parties shall use their best efforts, including all efforts contemplated by this Settlement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate the terms of the Settlement.

56.     <u>Disputes</u>:  Any dispute between the Parties concerning the interpretation or implementation of this Settlement Agreement will be resolved by the Court.  Prior to any such resort to the Court, counsel for the Parties will confer in good faith to resolve the dispute.  If the Parties are unable to resolve the dispute themselves, the dispute will be submitted to the Court, unless the Parties agree otherwise.

57.     <u>No Prior Assignments</u>: The Parties represent, covenant, and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or

encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or right released and discharged in this Settlement.

58. No Admission of Liability: Defendant denies liability to Plaintiffs and the Settlement Class for any claim or cause of action. Defendant has denied and continues to deny each of the claims and contentions alleged by Plaintiffs in the Action. Defendant has repeatedly asserted and continues to assert defenses thereto, and has expressly denied and continues to deny any wrongdoing or legal liability arising out of any of the facts or conduct alleged in the Action. Defendant also has denied and continues to deny the allegations that the Settlement Class Members have suffered damage or that the Settlement Class Members were harmed by the conduct alleged in the Action.

59. Fair, Adequate, and Reasonable Settlement: The Parties agree that the Settlement is fair, adequate, and reasonable, and will so represent it to the Court. In addition, the Parties may request that Hunter Hughes, the mediator in this Action, execute a declaration supporting the Settlement, and the Court may, in its discretion, contact Hunter Hughes to discuss the Settlement and whether or not the Settlement is fair, adequate, and reasonable.

60. Waiver of Appeals: The Parties agree to waive all appeals from the Court's final approval of this Settlement, unless the Court materially modifies the Settlement; provided, however, that Plaintiffs may appeal any reduction in the amount of Class Counsel's fees and expenses and/or the service payment to the Class Representatives. Any reduction in the amount of Class Counsel's fees, Class Counsel's expenses, and/or the service payment to the Class Representatives will not, however, constitute a material modification of the Settlement and will not be grounds to void the Settlement.

61. No Tax Advice: Neither Class Counsel nor Defendant's Counsel intend anything contained in this Settlement to constitute advice regarding taxes or taxability, nor shall anything in this Settlement be relied upon as such within the meaning of United States Treasury Department Circular 230 (31 CFR Part 10, as amended) or otherwise.

62. Communications: The Parties and their respective counsel agree that they will not issue any press releases, initiate any contact with the press, respond to any press inquiry, post

1   anything about this Action on any internet websites, intranet websites, blogs, social media websites

2   and/or services (including but not limited to Facebook and/or Twitter), and any other mass media, or

3   have any communication with the press about this Action and/or the fact, amount, or terms of the

4   Settlement.  If any Party or counsel for that Party is contacted about this Action by someone who is

5   not a Party or counsel of record in the Action, the Party or their counsel shall state only that the case

6   was settled on mutually satisfactory terms.  Before the date on which the motion for preliminary

7   approval of the Settlement is filed, the Parties and their respective counsel will not initiate any

8   contact with Settlement Class Members or other current or former employees of Defendant about the

9   Settlement, except that Class Counsel and the Class Representatives, if contacted by a Settlement

10   Class Member, may respond only that a Settlement has been reached and that the details will be

11   communicated in a forthcoming Court-approved notice.  Notwithstanding the foregoing, nothing

12   herein prohibits Class Counsel from advising any court or administrative body that they were

13   counsel of record in this Action or from citing to publicly available information relating to this

14   Action, and nothing herein limits or affects Class Counsel's right to communicate telephonically or

15   in writing directly with individual Settlement Class Members.

16       63.   <u>Class Certification and Inadmissibility of Settlement</u>:

17       (a)   In connection with their request for Preliminary Approval of the Settlement,

18   Plaintiffs shall seek an order certifying the Settlement Class for settlement purposes only under the

19   FMWA and FLSA.  Defendant is consenting to the certification of the Settlement Class for

20   settlement purposes only and contends that class or collective certification would not be appropriate

21   if the matter were litigated.

22       (b)   In the event:  (i) the Court does not enter the Order specified herein; (ii) the

23   Court does not finally approve the Settlement as provided herein; (iii) the Court does not enter a

24   Final Judgment as provided herein, which becomes final as a result of the occurrence of the

25   Effective Date; (iv) Defendant elects to terminate the Settlement as set forth herein; or (v) the

26   Settlement does not become Final for any other reason, this Settlement Agreement shall be null and

27   void and any order or judgment entered by the Court in furtherance of this Settlement shall be

28

{00275726 }

treated as void from the beginning.  In such a case, any certified class shall be decertified, the Parties shall be returned to their respective statuses as of the date and time immediately prior to the execution of this Agreement, and the Parties shall proceed in all respects as if this Settlement Agreement had not been executed.  In such case, the Settlement shall not be used or be admissible in any subsequent proceedings, either in this Action, in this Court or in any other Court or forum.  For instance, and without limiting the generality of the foregoing, neither the Settlement nor the fact that Defendant was willing to permit for settlement purposes a class of individuals who signed Defendant's arbitration agreement may not be used by any individual or Plaintiffs' counsel in support of any argument that such individuals should be permitted to proceed on a class wide basis under any other circumstance.  The Second Amended Complaint shall be null and void and the First Amended Complaint shall once again be the operative complaint.  In the event an appeal is filed from the Court's Final Judgment, or any other appellate review is sought prior to the Effective Date, administration of the Settlement shall be stayed pending final resolution of the appeal or other appellate review.

(c)     Whether or not the Settlement becomes Final, neither the Settlement, nor any of its terms, nor any document, statement, proceeding or conduct related to this Settlement Agreement, nor any reports or accounts thereof, shall in any event be:

(i)     Construed as, offered or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to the Released Parties, including, but not limited to, evidence of a presumption, concession, indication or admission by any of the Released Parties of any liability, fault, wrongdoing, omission, concession or damage, or evidence in support of any effort to certify a class or collective action; or

(ii)     Disclosed, referred to or offered or received in evidence against any of the Released Parties, in any further proceeding in the Action, or any other civil, criminal or administrative action or proceeding except for purposes of settling this Action or as a defense to any Released Claims contained herein pursuant to the terms of this Settlement Agreement.

(iii)    This Section notwithstanding, the Settlement, any of its terms, and any document, statement, proceeding or conduct related to this Settlement Agreement, and any reports or accounts thereof may be filed with the Court, referred to, offered or received in evidence, and otherwise used for purposes of enforcing the Settlement.

64.    Use of Confidential Documents and Information: Plaintiffs and Class Counsel agree to keep confidential all documents and information produced in the course of discovery and litigation of this Action. All documents and information produced in discovery in this Action, otherwise obtained in the course of the litigation of this Action, as well as all documents and information (including Settlement Class Member contact information) produced in connection with effectuation of this Settlement, shall only be used for purposes directly related to this case and the effectuation of this Settlement. Specifically, such documents and information shall not be used in furtherance of or related to the investigation or litigation of any other matter.

65.    Cooperation in Drafting: The Parties agree that the terms and conditions of this Settlement are the result of lengthy, intensive, arm's-length negotiations between the Parties, and that this Settlement shall not be construed in favor of or against any Party by reason of the extent to which any Party, his, her, its, or their counsel participated in its drafting.

66.    Applicable Law: All terms and conditions of this Stipulation and its exhibits will be governed by and interpreted according to the laws of the State of Florida, without giving effect to any conflict of law principles or choice of law principles.

67.    Captions and Headings: Captions, headings or paragraph titles in this Settlement are a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement or any provision.

68.    Modification: This Settlement may not be changed, altered, or modified, except in writing and signed by the Parties, and approved by the Court. This Settlement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties.

69.    Integration Clause: This Settlement contains the entire agreement between the Parties relating to the resolution of the Action. All prior or contemporaneous agreements, understandings,

1   representations, and statements, whether oral or written and whether by a Party or such Party's legal

2   counsel, are merged in this Stipulation.  No rights under this Stipulation may be waived except in

3   writing.

4       70.   <u>Binding on Assigns</u>: This Settlement shall be binding upon and inure to the benefit of

5   the Parties and their respective heirs, trustees, executors, administrators, successors, and assigns.

6       71.   <u>Counterparts</u>: This Stipulation may be executed in counterparts, and when each Party

7   has signed and delivered at least one such counterpart, each counterpart shall be deemed an original,

8   and, when taken together with other signed counterparts, shall constitute one Settlement, which shall

9   be binding upon and effective as to all Parties.

10       72.   <u>Interim Stay of Proceedings in Action</u>: The Parties agree to hold in abeyance all

11   proceedings in the Action, except such proceedings necessary or appropriate to implement and

12   complete the Settlement, pending the Final Approval Hearing.

13       73.   <u>Enforceability</u>: When this Stipulation of Settlement is signed by all Parties and their

14   attorneys of record, it shall be fully enforceable by the Court pursuant to any applicable provision of

15   law.

16

17   Date: _____

18                                       Sidley Austin LLP
                                    Counsel for Defendant

19   Date: 1-29-16

20                                       Finkelstein, Blankenship, Frei-Pearson, Garber,
                                    LLP

21                                       Class Counsel

22   Date: 1/30/16

23                                       Morgan & Morgan, P.A.
                                    Class Counsel

24

25

26

27

28

{00275606;}

representations, and statements, whether oral or written and whether by a Party or such Party's legal counsel, are merged in this Stipulation.  No rights under this Stipulation may be waived except in writing.

70.     <u>Binding on Assigns</u>: This Settlement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors, and assigns.

71.     <u>Counterparts</u>: This Stipulation may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Settlement, which shall be binding upon and effective as to all Parties.

72.     <u>Interim Stay of Proceedings in Action</u>: The Parties agree to hold in abeyance all proceedings in the Action, except such proceedings necessary or appropriate to implement and complete the Settlement, pending the Final Approval Hearing.

73.     <u>Enforceability</u>: When this Stipulation of Settlement is signed by all Parties and their attorneys of record, it shall be fully enforceable by the Court pursuant to any applicable provision of law.

Date: _2 / 1 / 16_____          _____
                                    Sidley Austin LLP
                                    Counsel for Defendant

Date: _____       _____
                                    Finkelstein, Blankenship, Frei-Pearson, Garber, LLP
                                    Class Counsel

Date: _____       _____
                                    Morgan & Morgan, PA
                                    Class Counsel

26

{00275726 }

```
1    Date:   1/26/2016                        alfonso Fata
2                                        Alfonso Fata
3    Date: 1-26-2016
4                                        Brian Phillips
5    Date:
6                                        Jerry J. Walsh
7    Date:
8                                        Pizza Hut of America, Inc.
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
```

| | | |
|---|---|---|
| 1 | Date: _____ | _____ |
| 2 | | Alfonso Fata |
| 3 | Date: _1 - 26 - 16_ | _____ |
| 4 | | Brian Phillips |
| 5 | Date: _____ | _____ |
| 6 | | Jerry J. Walsh |
| 7 | Date: _____ | _____ |
| | | Pizza Hut of America, Inc. |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

{00275607 }

Date: _____

Date: _____

Date: __1/26/16__

Date: _____

_____
Alfonso Fata

_____
Brian Phillips

_____
Jerry J. Walsh

_____
Pizza Hut of America, Inc.

1    Date: _____       _____

2                                  Alfonso Fata

3    Date: _____       _____

4                                  Brian Phillips

5    Date: _____       _____

6                                  Jerry J. Walsh

7    Date: _____       _____

                                        Pizza Hut of America, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28