UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

AL FATA, BRIAN PHILLIPS and JERRY J.
WALSH, individually and on behalf of all
others similarly situated,

        Plaintiffs,

        v.

PIZZA HUT OF AMERICA, INC.,

        Defendant.

CASE NO. 6:14-cv-00376-RBD-DCI

**ECF CASE**

**PLAINTIFFS' MOTION TO MODIFY THE
SETTLEMENT AGREEMENT, CLASS NOTICE
AND PRELIMINARY APPROVAL ORDER, AND
EXTEND CLAIMS ADMINISTRATION DEADLINES,
<u>AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT</u>**

Plaintiffs Alfonso Fata, Brian Phillips, and Jerry J. Walsh ("Plaintiffs") file this motion to modify the Settlement Agreement (Dkt. No. 210-1), Class Notice (Dkt. No. 210-2) and the Court's Preliminary Approval Order (Dkt. No. 228), and extend the claim, opt-out and objection submission deadlines. Plaintiffs have conferred with Defendant Pizza Hut of America, Inc. ("Pizza Hut" or "Defendant"); the Parties have reached tentative agreement to modify the settlement allocations and extend the claim, out-out and objection submission deadlines as reflected in this motion; but Pizza Hut has not yet reached a final position on the language of this motion or the language reflecting the modifications to the notice or settlement agreement. In support of the motion, Plaintiffs state as follows:

        1.        On October 31, 2016, the Court preliminarily approved the Settlement Agreement, conditionally certifying a "[c]lass of approximately 2,250 Florida delivery drivers

employed by Defendant for any length of time since March 7, 2009."[1] Dkt. No 228.  The Settlement Class is divided into the Non-Arbitration Subclass, consisting of delivery drivers who did not sign arbitration agreements with Defendant, and the Arbitration Subclass, consisting of delivery drivers who did.  Dkt. No. 210-1 at 10.  As the Court noted, "[b]ased on a formula, the Non-Arbitration Subclass is allocated 69.1% of the Net Settlement Amount[2] (or roughly $1,352 per person) and the Arbitration Subclass is allocated 30.9% of the Net Settlement Amount (or roughly $492 per person)."  Dkt. No. 228 at 3.  These percentage allocations to the subclasses are disclosed in the Settlement Agreement (*see* Dkt. No. 210-1 at 10) and the approved Class Notice disseminated to class members (*see* Dkt. No. 210-2 at 2).  The amount of settlement payments are not.

       2.      The disparate allocations for the subclasses reflect the Parties' appreciation of history of this dispute, the neutral mediator's evaluation of the dispute, and case law recognizing arbitration as a legitimate defense warranting lower recoveries for the members of the Arbitration Subclass.  *See* Dkt. No. 209 at 35-36, 42-45 (explaining the basis for the differing allocations).  The allocations, including the individual payments to members of the subclasses, were based mainly on preliminary data from Defendant indicating that there were 1,010 drivers in the Non-Arbitration Subclass (*see* Dkt. No. 127 at 16 *citing* PHBarkley00049329) and 1,240 drivers in the Arbitration Subclass, and to a lesser extent, on the costs of administration, then

---

[1] "Excluded from the Class are:  (1) those who have initiated arbitration proceedings against Defendant Pizza Hut of America, Inc., alleging claims under the Florida Minimum Wage Act and (2) those who were opt-in plaintiffs in Smith v. Pizza Hut, Inc., Case No. 1:09-cv-01632-CMA-NYW (D. Colo. 2009) and thus had settled their Florida Minimum Wage Act claims in that case."  Dkt. No. 228 at 6-7.

[2] The "'Net Settlement Amount' means the Maximum Settlement Amount [$3,100,000] *minus* any Court-approved amounts for Class Counsel's fees and costs, the service payments to the Class Representatives, and the costs of administration."  Dkt. No. 210-1 at 2-3.

estimated at $60,000.00. Under the Settlement Agreement, 69.1% of the Net Settlement Amount is allocated to the Non-Arbitration Subclass, and 30.9% to the Arbitration Subclass. At the time the allocation was negotiated, the allocation to the Non-Arbitration Subclass represented roughly 85% of the actual damages to that subclass, and the allocation to the Arbitration Subclass represented approximately 14% of the actual damages to that subclass. Dkt. No. 209 at 15-16. Dividing the allocation to the Non-Arbitration Subclass by 1,010 would yield payments of $1,352 per person. *See id.* Similarly, dividing the allocation to the Arbitration Subclass by 1,240 would yield payments of $492 per person. *See id.*

  3. But the preliminary data was inaccurate.[3] Following preliminary approval of the Settlement Agreement, the Settlement Administrator has confirmed that there are only 2,119 class members, 599 with the Non-Arbitration Subclass and 1,520 with the Arbitration Subclass. Declaration of Kevin S. Dageforde ("Dageforde Decl.") ¶ 6. Moreover, the Settlement Administrator has confirmed that the settlement administration costs presently amount to only $27,000 and has agreed to cap those costs for a third notice at $35,000, which is substantially less than the amount Plaintiffs originally anticipated. *Id.* ¶ 21; Frei-Pearson Decl. ¶ 9.

  4. Allocating 69.1% of the Net Settlement Amount to the Non-Arbitration Subclass would yield payments of $2,309 per person, considerably more than the $1,352 originally estimated and more than what the Parties negotiated. Similarly, allocating 30.9% to the Arbitration Subclass would yield payments of $406.91 per person, which is less than the $492 originally estimated and less than what the Parties negotiated. This widens the gap in payments

---

[3] The primary cause for the inaccuracy appears to be that Pizza Hut improperly failed to exclude drivers who opted in to the *Smith v. Pizza Hut, Inc.*, Case No. 1:09-cv-01632-CMA-NYW (D. Colo. 2009) FLSA litigation when originally calculating the number of members of the Non-Arbitration Class, but properly excluded such drivers when calculating the total number of class members. Declaration of Jeremiah Frei-Pearson ("Frei-Pearson Decl.") ¶ 6.

to the subclasses to an extent the Parties had never contemplated or intended before agreeing to settle.  Moreover, unless the settlement payments are revised, the members of the Non-Arbitration Subclass would be unjustly enriched, receiving well over 100% of their actual damages, while members of the Arbitration Subclass would receive less than agreed (although they would still receive more than in many similar court-approved settlement where arbitration was not a defense).

5. In light of the foregoing, the Parties have tentatively agreed to modify the allocation in Settlement Agreement to best protect the interests of all class members, narrow down the payment disparity between the subclasses, and cover as much of the Class Member's actual damages as possible.  Specifically, they have agreed to revise the settlement payments so that 43% of the Net Settlement Amount would be allocated to the Non-Arbitration Subclass and 57% of the Net Settlement Amount would be allocated to the Arbitration Subclass.  Members of both subclasses will receive more under this revised allocation.  Plaintiffs calculate that members of the Non-Arbitration Subclass would recover approximately $1,438.50 per person or about 88% of their actual damages, and members of the Arbitration Subclass will recover approximately $725 per person, which is nearly 1.5 times the $492 originally estimated based on preliminary data.

6. In determining this allocation, Plaintiffs' counsel relied on their own judgment and also consulted with Plaintiffs, with class counsel in similar wage and hour cases (including class counsel from *Smith v. Pizza Hut*, No. 09-1632 (D. Colo.)) and with Hunter R. Hughes, the mediator who assisted the Parties in reaching the original settlement.  Frei-Pearson Decl. ¶ 7.  Importantly, the Non-Arbitration Subclass now recovers approximately 88% of their damages, which is an outstanding result that far exceeds the highest amount paid to delivery drivers in any

under-reimbursement class action.  Members of the Arbitration Subclass are now recovering more than half as much as members of the Non-Arbitration Subclass, whereas, as preliminarily approved, they would recover only about one third of payments made to members of the Non-Arbitration Subclass.

7.	This is a truly outstanding result and reflects a lower or comparable arbitration discount than in similar settlements containing arbitration and non-arbitration subclasses.  *See Yim v. Carey Limousine NY, Inc.*, No. 14-5883, Dkt. No. 42 (Aug. 24, 2015) at 7-8, 13-14, and 2016 WL 1389598, at 5* (E.D.N.Y. Apr. 7, 2016) (preliminarily approving settlement payments of $2,000 to drivers with arbitration agreements, $4,500 to drivers whose contracts may contain arbitration agreements, and $19,972 to drivers with no arbitration agreements, holding that "the proposed settlement takes into account the impact of the length of the contract and the presence of an arbitration clause in the contracts of certain class members in its adjustment of the amount of recovery for different subclasses – factors that would reasonably affect the recovery of class members."); *O'Connor v. Uber Techs., Inc.*, No. 13-03826, Dkt. No. 518 (Apr. 21, 2016) at 6-7, and 2016 WL 4398271, at 9, 16* (N.D. Cal. Aug. 18, 2016) (recognizing that allocating twice as much to drivers who opted out of the arbitration agreements as to drivers who had not was reasonable, but denying preliminary approval for unrelated reasons).

8.	Indeed, members of the Arbitration Subclass now stand to recover substantially more than delivery drivers in the vast majority of under-reimbursement class actions.  *See, e.g.*, *Behaein v. Pizza Hut, Inc.*, No. 541415, (Cal. Sup. Ct. Oct. 18, 2016) (Exhibit 1 to the Frei-Pearson Decl.) (finally approving a settlement where participating Pizza Hut delivery drivers recovered an average of approximately $303 per driver); *Bellaspica v. PJPA, LLC*, No. 13-03014, Dkt. No. 147 (E.D. Pa. June 22, 2016) (finally approving a settlement and noting that

"the recovery of $329 per driver is in line with recoveries in other pizza delivery driver under-reimbursement class and collective actions").

9. Accordingly, Plaintiffs respectfully request that the Court approve the newly calculated settlement payments as reflected in Exhibit 2 to the Frei-Pearson Decl.

10. Plaintiffs' request follows precedent. In *Encarnacion v. J.W. Lee, Inc.*, No. 14-61927, Dkt. No. 75 (S.D. Fla. Aug. 13, 2015), the parties requested that the Court approve a revised class definition and deem the same so modified in the preliminarily approved settlement agreement and preliminary approval order. Because the revised class definition would affect the settlement payments reflected in the settlement agreement and class notice, the parties requested the Court to approve the revised payment schedule and deem the settlement agreement and class notice so modified. The parties also requested the Court to approve a revision to settlement agreement that would exclude from release class members for whom the claims administrator had no mailing addresses. In light of the requested modifications, they requested an extension for the claims administrator to mail class notices until seven days after the Court's order granting the motion. The Court granted the motion. *Id.*, Dkt. No. 76 (S.D. Fla. Aug. 14, 2015).

11. Here, Plaintiffs seek substantially the same relief. Plaintiffs seek to modify the settlement payments to class members, although, unlike in *Encarnacion*, to increase benefits to all class members and prevent an unjust outcome that would result from a strict application of percentage allocations based on erroneous class data. That notice has been disseminated to class members in this case, unlike in *Encarnacion* where notice had yet to be disseminated does not make *Encarnacion* less instructive because neither the Settlement Agreement nor Class Notice here disclose the settlement payments to class members. Still, the settlement payments were disclosed in publicly filed documents in support of preliminary settlement approval and cited in

this Court's Preliminary Approval Order posted on the Settlement Administrator's website.[4]  As such, acting in good faith and with only the best interest of all class members in mind, Plaintiffs deem it necessary and proper to modify the Settlement Agreement to maximize settlement benefits to class members.  Indeed, all class members in this case will benefit from the proposed modification, unlike in *Encarnacion* where the modification approved by the Court affected class members in disparate ways, with class members receiving more or less than they would have received under the original payment schedule.  *Compare id.*, Dkt. Nos. 75-1 and 64-1 at 28-31.

12.     Plaintiffs further respectfully request that the Class Notice be modified to reflect the revised settlement payments to members of the subclasses, instead of percentage allocations to the subclasses.  *See* Proposed Amended Class Notice, Exhibit 3 to Frei-Pearson Decl.  Notice of amendment to a settlement is required only where the amendment "would have a material *adverse* effect on the rights of class members."  *Keepseagle v. Vilsack*, 102 F. Supp. 3d 306, 313 (D.D.C. 2015) (emphasis added) (quoting *In re Diet Drugs Prods. Liability Litig.*, No. 99-20593, 2010 WL 2735414, at *6 (E.D. Pa. July 2, 2015)); *see also Harris v. Graddick*, 615 F. Supp. 239, 244 (M.D. Ala. 1985) ("Under these limited circumstances where the amendment is narrow and it is clearly apparent that the interests of the classes are not substantially impaired, the court is of the opinion that the notice already given is adequate and that additional notice is not required pursuant to Rule 23(e)."); Manual for Complex Litigation § 21.61 (4th ed.) ("if the fairness hearing leads to substantial changes adversely affecting some members of the class, additional notice, followed by an opportunity to be heard, might be necessary.").  As all Class Members will benefit from the proposed modification, a revised notice may not be necessary.  Nonetheless, as discussed, in the interest of transparency and in light of the additional time

---

[4] *See* www.fatasettlement.com (last visited February 3, 2017).

required due to the delay in providing CAFA notice, the Parties request that the Amended Class Notice, attached as Exhibit 3 to the Frei-Pearson Decl., be approved for mailing to all class members within five (5) business days from an order granting this motion.

13. Given the modifications to the Settlement Agreement and the Class Notice, Plaintiffs respectfully request that the claims, opt-out and objection submission deadlines[5] be extended by twenty (20) calendar days from the mailing date for the Amended Class Notice to give all class members enough opportunity to respond to the Settlement.[6] As all class members will receive bigger settlement payments under the proposed modification, the Parties are confident that class member response to the Revised Settlement Agreement will continue to be positive. Indeed, no class member has objected to or opted out of the preliminarily approved Settlement Agreement and all class members who have communicated with Class Counsel have expressed approval of the settlement. Dageforde Decl. ¶¶ 15, 17; Frei-Pearson Decl. at ¶ 7. Providing class members with a third chance to object, opt-out or participate in the settlement is very much in the class members' best interests.

14. Finally, Plaintiffs respectfully request that the Court set the date for the final approval hearing on April 13, 2017 or a date thereafter that is convenient to the Court. Pizza Hut inadvertently failed to timely provide the notice required under 28 U.S.C. § 1715(d) to the appropriate state and federal officials. *See* Dkt. No. 232 at ¶ 3. Notice has now been provided and the Parties have communicated with the relevant officials about this issue. Frei-Pearson Decl. ¶ 8. However, due to the late issue of notice to the relevant officials, 28 U.S.C. § 1715(d)

---

[5] The claims submission deadline expired on January 30, 2017. Requests for exclusions and objections were due on January 3, 2017.

[6] In the meantime, Defendant has agreed to deposit in an interest-bearing account, to be set up by the Settlement Administrator, the settlement funds within thirty (30) days from the adjusted claims deadline.

requires that the Final Approval Hearing cannot be held until on or after April 13, 2017. *See* Dkt. No. 232 at ¶ 3.

WHEREFORE, Plaintiffs respectfully request that the Court approve the revised settlement payments, deem the preliminarily approved Settlement Agreement and approved Class Notice modified to reflect the revised settlement payments, order the dissemination of the Amended Class Notice within five (5) business days from the grant of this motion, grant all class members an extension of twenty (20) calendar days from the mailing of the Amended Class Notice to submit claims, opt out of or object to the Revised Settlement Agreement, and schedule the final approval hearing for April 13, 2017 or a later date convenient to the Court.

Dated:   February 3, 2017                           Respectfully submitted,

**FINKELSTEIN, BLANKINSHIP,**
**FREI-PEARSON & GARBER, LLP**

By: */s/ Jeremiah Frei-Pearson*
Jeremiah Frei-Pearson *(Pro Hac Vice)*
445 Hamilton Avenue, Suite 605
White Plains, NY 10601
Tel: (914) 298-3281
jfrei-pearson@fbfglaw.com

C. Ryan Morgan
**MORGAN & MORGAN, P.A.**
20 North Orange Avenue, Suite 1600
P.O. Box 4979
Orlando, FL 32801
Tel:  (407) 420-1414
rmorgan@forthepeople.com

*Attorneys for Plaintiff and the Putative Class*

## LOCAL RULE 3.01(g) CERTIFICATE

I hereby certify that counsel for Plaintiffs have conferred with Defendant's counsel regarding the relief requested in this motion. Defendant consents to the substance of the modifications described above. However, Defendant has not been able to reach a final position regarding the language in this motion or the language in the proposed revised settlement agreement or proposed revised notice. The Parties will continue to confer. If Defendant suggests modifications to the relevant documents, Plaintiffs are hopeful that the Parties can reach agreement and are confident that any such modifications will be expeditiously shared with the Court.

*/s/ Jeremiah Frei-Pearson*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on February 3, 2017.

*/s/ Jeremiah Frei-Pearson*