**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

AL FATA, BRIAN PHILLIPS and
JERRY WALSH, individually and on
behalf of all others similarly situated,

                    CASE NO:  6:14-CV-00376-RBD-DCI

              Plaintiffs,

      v.

PIZZA HUT OF AMERICA, INC.,

                Defendant.
_____

**PLAINTIFFS' UNOPPOSED MOTION FOR**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT,**
**ATTORNEYS' FEES AND EXPENSES, AND SERVICE AWARD**
**PAYMENTS, AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………..…………………....iii

INTRODUCTION……………………………………………………………………….....1

I.      Factual And Procedural Background …………………………………………....…..3

    A.      Factual Allegations………………………………………………………………3

    B.      Procedural History……………………………………………………….…..…..4

II.     Summary Of The Settlement………………………………………………….…..….7

    A.      The Settlement Fund…………………………………………………………..….7

    B.      Release…………………………………………………………………………....7

    C.      Class Members……………………………………………………………..…....8

    D.      Allocation Formula………………………...…....……………………………….8

    E.      Attorneys' Fees And Litigation Costs……………….……………………..…..10

    F.      Service Payments To Class Representatives……………….……………….…..11

III.    Standard For Approving A Class Action Settlement…………………......…..….…11

IV.     The Settlement Class Satisfies Rule 23 Requirements………………………….….12

V.      The Settlement Should Be Finally Approved …………………………………….…13

    A.      The Settlement Is Fair, Reasonable And Adequate…………..…………….…..13

        1.      The Likelihood Of Success At Trial……………………………………..13

        2.      The Relief Sought Is Fair And Reasonable, And
             Within The Range Of Recovery Permitted By Law…………………..…..14

        3.      Litigation Through Class Trial And Class
             Arbitration Would Be Complex, Costly, And Long………..……….…..17

        4.      The Reaction To The Settlement Has Been Positive…………..……...18

        5.      Discovery Has Advanced Far Enough To
             Allow The Parties To Resolve The Case Responsibly…………………..20

VI.     Notice Was Provided In The Best Practicable Manner……………………………………21

VII.    Class Counsel Are Entitled To A
        Reasonable Fees And Expenses Of $1,026,333.33……………………...……………..……23

        A.      Class Counsel Fees Should Be Awarded From The
                Common Fund Created Through Class Counsel's Efforts………………………23

        B.      The *Camden I* Factors Support An Award
                Higher Than That Sought By Class Counsel……...……………………………24

                1.      Time And Labor Involved………………………………………….....25

                2.      The Novelty And Difficulty Of The
                        Questions Involved Required The Skill
                        Of A Highly Talented Team of Attorneys……………...……..……….26

                3.      The Claims Against Defendant Entailed Considerable Risk…………..27

                4.      Class Counsel Assumed Substantial
                        Risk In Pursuing This Action On A Pure Contingency
                        Basis, And Were Precluded From Other Employment As a Result…......28

                5.      The Fee Requested Comports With
                        Customary Fees Awarded In Similar Cases……………………………..29

                6.      The Remaining *Camden I* And Other
                        Factors Favor Approval Of The Fee Requested…………...…………….31

        C.      A Lodestar Analysis Confirms The
                Reasonableness Of The Fee Requested…………………………………………32

        D.      Class Counsel's Expenses Are Reasonable……………………………………...34

VIII.   Plaintiffs Are Entitled To Reasonable Service Awards…………………………………35

CONCLUSION……………………………………………………………………………………36

## **TABLE OF AUTHORITIES**

### **Cases**

*Allapattah Services, Inc. v. Exxon Corp.,*
454 F. Supp. 2d 1185 (S.D. Fla. 2006).................................................. 31

*Atkinson v. Wal–Mart Stores, Inc.,*
No. 08-691, 2011 WL 6846747 (M.D. Fla. Dec. 29, 201 l)...................... 30

*Barkley v. Pizza Hut of Am., Inc.,*
No. 14-376, 2014 WL 3908197 (M.D. Fla. Aug. 11, 2014) ................... 1, 4

*Behrens v. Wometco Enterprises, Inc.,*
118 F.R.D. 534 (S.D. Fla. 1988) ............................................... 15, 29, 34

*Bennett v. Behring Corp.,*
737 F.2d 982 (11th Cir. 1984)................................................... 12, 13

*Bert v. AK Steel Corp.,*
No. 02-467, 2008 WL 4693747 (S.D. Ohio Oct. 23, 2008)...................... 15

*Blum v. Stenson,*
465 U.S. 886 (1984) ......................................................................... 33

*Boeing v. Van Gemert,*
444 U.S. 472 (1980) ......................................................................... 23

*Bouaphakeo v. Tyson Foods, Inc.,*
765 F.3d 791 (8th Cir. 2014)................................................... 4, 17

*Braynen v. Nationstar Mortg., LLC,*
No. 14-20726, 2015 WL 6872519 (S.D. Fla. Nov. 9, 2015)............... 19, 22

*Camden I Condo. Ass'n v. Dunkle,*
946 F.2d 768 (11th Cir. 1991)......................................... 24, 25, 27

*Canupp v. Liberty Behavioral Healthcare, Corp.,*
447 Fed. Appx. 976 (11th Cir. 2011) ................................................. 12

*Chatman v. Pizza Hut, Inc.,*
No. 12-10209, 2013 WL 2285804 (N.D. Ill. May 23, 2013)...................... 28

*Columbus Drywall & Insulation, Inc. v. Masco Corp.,*
No. 04-3066, 2012 WL 12540344 (N.D. Ga. Oct. 26, 2012)...................... 33

*Cotton v. Hinton,*
  559 F.2d 1326 (5th Cir. 1977)...........................................................................12

*David v. Am. Suzuki Motor Corp.,*
  No. 08–22278, 2010 WL 1628362 (S.D. Fla. Apr. 15, 2010)...........................24, 35

*Duckworth v. Whisenant,*
  97 F.3d 1393 (11th Cir. 1996).........................................................................32

*Francisco v. Numismatic Guar. Corp. of Am.,*
  No. 06-61677, 2008 WL 649124 (S.D. Fla. Jan. 31, 2008) ...........................21, 26

*Gevaerts v. TD Bank,*
  No. 14-20744, 2015 WL 6751061 (S.D. Fla. Nov. 5, 2015).................................31

*Hall v. Bank of Am., N.A.,*
  No. 12- 22700, 2014 WL 7184039 (S.D. Fla. Dec. 17, 2014).............................21

*In re Checking Account Overdraft Litig.*, No.,
  No. 09-02036, 2012 WL 4174502 (S.D. Fla. Sept. 19, 2012) ...........................12

*In re Checking Account Overdraft Litigation,*
  830 F. Supp. 2d 1330 (S.D. Fla. 2011).....................................27, 28, 31, 32

*In re Continental Ill. Sec. Litig.,*
  962 F.2d 566 (7th Cir. 1992).........................................................................29

*In re Domestic Air Transp. Antitrust Litig.,*
  148 F.R.D. 297 (N.D. Ga. 1993) ...................................................................34

*In re Linerboard Antitrust Litig.,*
  MDL No. 1261, 2004 WL 1221350 (E.D. Pa. June 2, 2004)..............................34

*In re Nissan Motor Corp. Antitrust Litig.,*
  552 F.2d 1088 (5th Cir.l977).........................................................................11

*In re Online DVD-Rental Antitrust Litig.,*
  779 F.3d 934 (9th Cir. 2015).........................................................................19

*In re Remeron End–Payor Antitrust Litig.,*
  No. 02-2007, 2005 WL 2230314 (D.N.J. Sept. 13, 2005).................................20

*In re RJR Nabisco Sec. Litig.,*
  MDL No. 818, 1992 WL 210138 (S.D.N.Y. Aug. 24, 1992) ...............................34

*In re Sunbeam Sec. Litig.,*
  176 F. Supp. 2d 1323 (S.D. Fla. 2001)...........................................................Passim

*In re TracFone Unlimited Serv. Plan Litig.,*
  112 F. Supp. 3d 993 (N.D. Cal. 2015) ...................................................... 15

*In re U.S. Oil & Gas Litig.,*
  967 F.2d 489 (11th Cir. 1992)............................................................... 11, 17

*In re: Managed Care Litig. v. Aetna,*
  MDL No. 1334, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003)............................ 30

*Ingram v. The Coca–Cola Co.,*
  200 F.R.D. 685 (N.D. Ga. 2001) ............................................................ 35

*Johnson v. Georgia Highway Express, Inc.,*
  488 F.2d 714 (5th Cir. 1974)............................................................... 25

*Juris v. Inamed Corp.,*
  685 F. 3d 1294 (11th Cir. 2012)............................................................ 22

*Lapan v. Dick's Sporting Goods, Inc.,*
  No. 13-11390, 2015 WL 8664204 (D. Mass. Dec. 11, 2015)............................... 15

*Lee v. Ocwen Loan Servicing, LLC,*
  No. 14-60649, 2015 WL 5449813 (S.D. Fla. Sept. 14, 2015).............................. 21

*Lipuma v. Am. Express Co.,*
  406 F. Supp. 2d 1298 (S.D. Fla. 2005).................................................... 20

*Marty v. Anheuser-Busch Companies, LLC,*
  No. 13-23656, 2015 WL 6391185 (S.D. Fla. Oct. 22, 2015)............................... 18

*Morefield v. Noteworld, LLC,*
  No. 10-117, 2012 WL 1355573 (S.D. Ga. April 18, 2012)............................. 11, 30

*Morris v. Affinity Health Plan, Inc.,*
  859 F. Supp. 2d 611 (S.D.N.Y. 2012)...................................................... 31

*Mullane v. Cent. Hanover Bank & Trust Co.,*
  339 U.S. 306 (1950) ........................................................................ 22

*N. Star Capital Acquisitions, LLC v. Krig,*
  No. 07-264, 2011 WL 65662 (M.D. Fla. Jan. 10, 2011)..................................... 22

*Norman v. Hous. Auth. of City of Montgomery,*
   836 F.2d 1292 (11th Cir. 1988)................................................................... 32

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,*
   478 U.S. 546 (1986) .................................................................................... 32

*Perez v. Asurion Corp.,*
   501 F. Supp. 2d 1360 (S.D. Fla. 2007)................................................. 18, 19

*Pierre-Val v. Buccaneers Ltd. P'ship,*
   No. 14-01182, 2015 WL 3776918 (M.D. Fla. June 17, 2015)................... 11

*Pinto v. Princess Cruise Lines, Ltd.,*
   513 F. Supp. 2d 1334 (S.D. Fla. 2007)....................................................... 32

*Poertner v. Gillete Co.,*
   No. 14-13882, 2015 WL 4310896 (11th Cir. July 16, 2015)............... 19, 23

*Puglisi v. TD Bank, N.A.,*
   No. 13-637, 2015 WL 574280 (E.D.N.Y. Feb. 9, 2015)............................ 15

*Pyczynski v. Kirkland's Stores, Inc.,*
   No. 07-802, 2008 WL 544864 (M.D. Fla. Feb. 26, 2008) ......................... 31

*Rabin v. Concord Assets Group, Inc.,*
   No. 89-6130, 1991 WL 275757 (S.D.N.Y. Dec. 19, 1991) ....................... 34

*Ressler v. Jacobson,*
   149 F.R.D. 651 (M.D. Fla. 1992)......................................................... 27, 29

*Ressler v. Jacobson,*
   822 F. Supp. 1551 (M.D. Fla. 1992) .......................................................... 20

*Roberts v. Texaco, Inc.,*
   979 F. Supp. 185 (S.D.N.Y.1997)............................................................... 34

*Rowe v. E.I. DuPont de Nemours & Co.,*
   No. 06-1810, 2011 WL 3837106 (D.N.J. Aug. 26, 2011)......................... 15

*Saccoccio v. JP Morgan Chase Bank, N.A.,*
   297 F.R.D. 683 (S.D. Fla. 2014) .......................................................... 19, 20

*Seghroughni v. Advantus Rest., Inc.,*
   No. 12-2000, 2015 WL 2255278 (M.D. Fla. May 13, 2015)..................... 30

*Spicer v. Chi. Bd. Options Exchange, Inc.,*
844 F. Supp. 1226 (N.D. Ill. 1993) ............................................................. 35, 36

*Sullivan v. DB Invs., Inc.,*
667 F.3d 273 (3d Cir. 2011) ....................................................................... 19

*Tyo v. Lakeshore Hockey Arena, Inc.,*
No. 11-6239, 2014 WL 2532447 (W.D.N.Y. June 5, 2014) ......................... 31

*Tyson Foods, Inc. v. Bouaphakeo,*
136 S. Ct. 1036, 194 L. Ed. 2d 124 (2016) ................................................. 17

*Walco Inv., Inc. v. Thenen,*
975 F. Supp. 1468 (S.D. Fla. 1997) ........................................................ 25, 27

*Walters v. Atlanta,*
652 F. Supp. 755 (N.D. Ga.1985) ............................................................... 29

*Waters v. Cook's Pest Control, Inc.,*
No. 07-394, 2012 WL 2923542 (N.D. Ala. July 17, 2012) ........................... 15

*Waters v. Int'l Precious Metals Corp.,*
190 F.3d 1291 (11th Cir. 1999) ........................................... 23, 24, 29, 32

*Weiss v. Mercedes–Benz of N. Am.,*
899 F. Supp. 1297 (D.N.J. 1995) ............................................................... 34

*Wilson v. EverBank,*
No. 14-22264, 2016 WL 457011 (S.D. Fla. Feb. 3, 2016) ....................... 13, 15

*Wolff v. Cash 4 Titles*, No.,
No. 03-22778, 2012 WL 5290155 (S.D. Fla. Sept. 26, 2012) ..................... 30

*York v. Alabama State Bd. of Education,*
631 F. Supp. 78 (M.D. Ala. 1986) .............................................................. 29

## **Statutes**

28 U.S.C. § 1715(b) ........................................................................................ 6

**<u>Rules</u>**

Fed. R. Civ. P. 23 ..................................................................................................Passim

**<u>Other Authorities</u>**

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (4th ed. 2002).............. 11

## INTRODUCTION

Plaintiffs Alfonso Fata, Brian Phillips, and Jerry J. Walsh ("Plaintiffs" or "Class Representatives"), on behalf of a settlement class, respectfully submit this memorandum of law in support of their unopposed motion for final approval of the Settlement Agreement (Dkt. No. 210-1 as modified by Order, dated February 7, 2017, Dkt. No. 241) pursuant to Federal Rule of Civil Procedure 23(a), b(3) and (e), for attorneys' fees and expenses, and service award payments to the named Plaintiffs.

As this Court noted in 2014, "the history between the parties is protracted." *Barkley v. Pizza Hut of Am., Inc.*, No. 14-376, 2014 WL 3908197, at *1 (M.D. Fla. Aug. 11, 2014). "[T]he parties have arbitrated, mediated, and litigated this dispute, in multiple forums, finally reaching a settlement in 2015." Dkt. No. 228 at 2.

The Settlement is fair and reasonable and reflects the best possible result for the Class at this stage of litigation. First, the Settlement, which creates a maximum settlement fund of $3,100,000.00 for the Class, offers substantial benefits to class members, and avoids the delay, expense and risks inherent in litigating class claims through trial and appeal. Members of the Non-Arbitration Subclass, who did not sign arbitration agreements with Defendant, stand to recover an average of $1,438 per person, easily the highest per driver recovery in any reported pizza delivery driver under-reimbursement case. Members of the Arbitration Subclass, who signed arbitration agreements and were repeatedly denied class relief, stand to recover an average of approximately $750 per person,[1] an amount easily exceeding amounts paid in most other pizza delivery driver under-reimbursement class settlements.

---

[1] In their motion to modify the settlement, Plaintiffs estimated that, as modified, the average individual benefit to the Arbitration Subclass was approximately $725. Dkt. No. 236 at 4.

1

Second, the Settlement was the product of arm's length negotiations aided by an independent mediator and conducted by experienced counsel who obtained extensive formal and informal discovery and, as such, were well-positioned to evaluate the strengths and weaknesses of the claims and defenses asserted, the potential damages incurred by the Class, and the fairness of the Settlement.

Third, the positive response of the Class weighs strongly in favor of the Settlement. The deadline to opt out and object has passed, and no class member has opted out of the Class or objected to the Settlement. Over 29% of the Class have submitted valid claims, which reflects a strong class participation rate for an employment class action settlement, especially here where these claims ended more than five years ago, in February 2012, when Defendant sold its Florida stores. Thus, Plaintiffs respectfully request that the Court finally approve the Settlement and certify the settlement class.

Class Counsel also move for an unopposed award of attorneys' fees and expenses in the combined amount of $1,026,333.33, which is one-third of the total value of the Settlement minus $7,000.00, the cost of re-noticing the Class, which Class Counsel have agreed to pay from their fees. If approved in full, the attorneys' fees would represent a negative multiplier of 0.43 on Class Counsel's lodestar, which confirms that the fee request is fair and reasonable, especially in light of the significant resources Class Counsel have expended to prosecute this matter and the related arbitrations over more than six years on a purely contingent basis and in light of the fact that Class Counsel persevered after receiving adverse decisions compelling individual arbitration.

---

However further data revealed that, based on the "Revised Payment Allocation" approved by the Court, the average individual benefit to the Arbitration Subclass was, in fact, closer to approximately $750. McDermott Decl. ¶ 4.

As the amount requested (i) has been agreed upon by the Parties through arm's length negotiations, (ii) falls well within the range of attorneys' fees and expenses awarded by courts within this Circuit using either the percentage of the fund or lodestar methodology, and (iii) was adequately disclosed in advance to the Class through various notices and not objected to, Plaintiffs respectfully request that this Court approve the requested attorneys' fees and expenses.

Finally, Plaintiffs request that the Court approve the payment of service awards of $10,000 each to the named plaintiffs to compensate them for the significant time and effort spent in assisting in the prosecution of the actions on behalf of the Class.

## I.     Factual And Procedural Background

### A.     Factual Allegations

Plaintiffs are members of a Rule 23 class of all Florida delivery drivers Defendant employed for any length of time since March 7, 2009 ("Class" or "Settlement Class").[2]  There are 2,119 individuals in the Class.  Declaration of Jeremiah Frei-Pearson ("Frei-Pearson Decl.") ¶¶ 3, 20.

Plaintiffs allege that Defendant systematically and unlawfully paid its Florida delivery drivers, including Plaintiffs, wages well below the minimum in violation of the Florida Minimum Wage Act ("FMWA").  Plaintiffs allege that Defendant paid its delivery drivers an initial wage equal to the minimum and was, therefore, required by law to fully reimburse its delivery drivers for all vehicular expenses incidental to delivery so as to keep their real wages at or above the minimum.  They allege that Defendant violated the FMWA by causing Plaintiffs to incur

---

[2] The Class excludes (a) those who have initiated arbitration proceedings against Defendant alleging claims under the Florida Minimum Wage Act ("FMWA") and/or (b) those who were opt-in plaintiffs in *Smith v. Pizza Hut, Inc.*, Case No. 1:09-cv-01632 (D. Colo.), and settled their claims alleging under-reimbursement in that case.  *See* Settlement Agreement ¶ 23.

significant vehicular expenses during the course of their work for Defendant, and under-reimbursing them for those expenses, thereby reducing their wages well below the minimum.  As such, Plaintiffs allege that, under the FMWA, Defendant is liable for the difference between the driver's true expenses and the reimbursement rate Defendant actually paid, plus liquidated damages.  Defendant denies these allegations, and further denies that class certification is appropriate.  Nonetheless, Defendant consents to class certification for settlement purposes only.

### B.   Procedural History

As noted at the outset, "the history between the parties is protracted."  *Barkley v. Pizza Hut of Am., Inc.*, No. 14-376, 2014 WL 3908197, at *1 (M.D. Fla. Aug. 11, 2014); *see* Dkt. No. 187 at 5-11 (summarizing litigation and arbitration history).  "[T]he parties have arbitrated, mediated, and litigated this dispute, in multiple forums" -- for more than four years.  Dkt. No. 228 at 2.  During this time, this Court denied without prejudice Plaintiff Fata's motion for class arbitration, and multiple arbitrators held that Pizza Hut's arbitration agreement prevented class proceedings.  However, Plaintiffs' counsel defeated Pizza Hut's motion to compel arbitration of the Non-Arbitration Subclass (*see* Dkt. No. 69), developed what Plaintiffs believe was an extraordinarily strong record against Pizza Hut, and ████████████████████████████

████████.  *See* Dkt, No. 209 at 5-6 (providing further factual background).

At the time of settlement, the Non-Arbitration Subclass had a fully briefed motion for class certification pending before this Court, *see* Dkt. Nos. 127-141, and Pizza Hut's motion to stay the case pending *Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791 (8th Cir. 2014), *cert. granted*, 576 U.S. --- (June 8, 2015) (No. 15-1156) was also fully briefed.  Dkt. Nos. 144, 155-156.  The Arbitration Subclass was again briefing the issue of whether Pizza Hut's arbitration

agreement allowed class proceedings, despite the fact that Pizza Hut had repeatedly prevailed on that issue.

On or about February 1, 2016, Plaintiffs moved for preliminary approval of the settlement and filed several accompanying motions.  Dkt. Nos. 159-170.

After a hearing before Judge Baker, the Parties modified the settlement agreement and gathered additional record evidence to address.  On July 5, 2016, Plaintiffs again moved for preliminary approval of the revised Settlement after filing related motions.  Dkt. Nos. 182-184, 187-191, 193-195, and 197.

On August 5, 2016, Judge Baker issued a Report and Recommendations ("R&R"), denying preliminary approval of the Settlement.  Dkt. No. 198.

The Parties respectfully objected to the R&R (*see* Dkt. Nos. 201, 203, 204, 206, 209-213, and 215-219) and on October 31, 2016, the Court preliminarily approved the Settlement.  Dkt. No. 228.   The Claims Administrator mailed notice to the class.  No class member objected or opted out, and 481 class members or about 23% of the Class participated.  *See* Declaration of Matthew J. McDermott Regarding Amended Notice and Claims Period ("McDermott Decl.") ¶ 5.

Plaintiffs were in the process of preparing final approval papers when two issues arose that necessitated the Court's approval on a modification to the final approval briefing schedule as well as re-issuance of class notices.  The first concerned timely dissemination of CAFA notices to the United States and states attorney generals, and the second concerned updated and more refined data that differed somewhat than what Class Counsel had relied upon at the time of

mediation to determine settlement payout allocations between the two sub-classes.[3]  The Parties

agreed that they would inform the Court of these issues and that, subject to court approval,

Defendant would send CAFA Notice and the Parties would re-notice the class to apprise it of the

new allocation formula.  Frei-Pearson Decl. ¶ 11.  After negotiations, the Parties agreed that the

claims period and the time to object or opt-out would be extended by 20 days.  *Id.*  Moreover,

Defendant agreed to deposit in an interest bearing account within 30 days the Qualified

Settlement Fund, consisting of the individual settlement payments to claimants, the service

payments to the class representatives and Class Counsel's reasonable attorneys' fees, costs and

expenses.  *Id.*

The Parties presented their plan to the Court on February 3, 2016.  Dkt. No. 236.  On

February 7, 2017 the Court revised the payment allocation as requested, ordered the

dissemination of the amended notice presented at the February 6, 2017 status conference, which

reflected the "Revised Payment Allocation" ("Amended Notice"), and extended the claims, opt-

out and objections period.  Dkt. No. 241.  A copy of the Amended Notice is attached as Exhibit 1

to the Frei-Pearson Decl.

The Claims Administrator then sent a third round of notice.  *See* McDermott Decl. ¶ 5.

Once again, no class member objected or opted out.  *See* McDermott Decl. ¶¶ 10, 12.  As a result

of the third round of notice and the extended claims period, an additional 136 class members

submitted valid claims form, bringing the participation rate to over 29%.  *See* McDermott Decl.

---

[3] Defendant initially did not serve notice of the proposed settlement on the U.S. Attorney
General and appropriate state attorneys general more than 90 days prior to the final approval
hearing.  *See* 28 U.S.C. § 1715(b); Frei-Pearson Decl. ¶ 10.  After the Court's order modifying
settlement, Defendant sent amended CAFA notices to the U.S. Attorney General and all
appropriate state attorneys general on or around February 10, 2017.

¶¶ 5, 14-15.[4]

## II.    Summary Of The Settlement

### A.    The Settlement Fund

Defendant created a settlement fund of up to $3,100,000.00 (prior to the interest that has recently accrued) ("Maximum Settlement Amount").  Settlement Agreement ¶¶ 14 and 32 (Dkt. No. 210-1).  The fund will cover settlement payments to Authorized Claimants,[5] Court-approved attorneys' fees and costs in an amount to be determined when Class Counsel applies for attorneys' fees and not to exceed one-third of the Maximum Settlement Amount,[6] Court-approved service payments to the Class Representatives in an amount not to exceed $10,000 each,[7] and the reasonable costs of settlement administration. *Id.* ¶¶ 15, 32, and 33.

### B.    Release

Settlement class members who do not opt out of the settlement will be deemed to have agreed to, and will release their FMWA claims relating to minimum wage violations caused by under-reimbursement that could have been brought to this case.[8]

By signing the Settlement Agreement, Plaintiffs release Pizza Hut from all claims regardless of nature, known or unknown, whether asserted or not, arising out of any act or

---

[4] Eleven claims forms were submitted after the end of the claims period.  At Class Counsel's request, Pizza Hut has agreed to pay those claims.  McDermott Decl. ¶ 14.

[5] "Authorized Claimant" means a Participating Class Member who has returned a valid and timely Claim Form.  Settlement Agreement ¶ 2.

[6] *Id.* ¶ 35.

[7] *Id.* ¶ 36.

[8] The release encompasses FLSA claims for under-reimbursement, but this is of no moment as all class members' FLSA claims are time-barred.

omission prior to the execution of the Settlement Agreement ("General Release").  Settlement Agreement ¶¶ 52-53.

### C.    Class Members

The Class consists of 2,119 Florida delivery drivers Defendant has employed for any length of time since March 7, 2009.  *Id.* ¶ 23.   Excluded are (a) those who have initiated arbitration proceedings against Defendant alleging claims under the FMWA and/or (b) those who participated in the settlement of *Smith v. Pizza Hut, Inc.*, Case No. 1:09-cv-01632-CMA-NYW (D. Colo.), and thus, had settled their FMWA claims in that case.  *Id.*  Defendant identified the Class Members based on its payroll and/or other business records as of February 20, 2012.  *Id.* ¶ 43.  Defendant did not employ any drivers in Florida after February 20, 2012.  *Id.*

### D.    Allocation Formula

Participating class members will be paid pursuant to the most detailed allocation formula possible based on the length of their employment with Defendant.  *Id.* ¶ 38.  Class Members for whom Pizza Hut was unable to locate a signed arbitration agreement shall be part of the "Non-Arbitration Subclass."  *Id.*  Those for whom Pizza Hut was able to find a signed arbitration agreement shall be part of the "Arbitration Subclass."  *Id.*  The Net Settlement Amount, *i.e.*, the Maximum Settlement Amount minus any Court-approved amounts for Class Counsel's fees and costs, the service payments to the Class Representatives, and the costs of administration, shall be allocated between the subclasses as follows:  43% to the Non-Arbitration Subclass and 57% to Arbitration Subclass.  *Id.* (as modified by Order dated February 7, 2017, Dkt. No. 241).  The settlement payment for each class member shall then be

calculated using the following formula:[9]

Net Settlement Amount for Subclass x $\frac{\text{Total Days Worked by Class Member}}{\text{Total Days Worked by All Class Members}}$

100% of each settlement payment will be treated as a non-taxable payment in reimbursement for incurred expenses and in settlement of claims for alleged interest and penalties.   Settlement Agreement ¶ 38(f).

The settlement payments are reasonable and within the range of remedies permitted by law.  Defendant denies anything is owed.  However, as a compromise and to end the litigation and ensuing expenses, Defendant has agreed to use, for settlement purposes only, the foregoing formula to determine each class member's pro rata share in the settlement fund.

Indeed, under the settlement formula, members of the Non-Arbitration Subclass shall receive an average of approximately $1,438 or about 88% of their maximum actual damages. *See* Dkt. No. 236 at 4.  At the time of settlement, this was easily the highest per driver recovery in any under-reimbursement class action and it remains easily the highest of such settlements as a percentage of maximum damages.

Members of the Arbitration Subclass shall receive an average of approximately $750 per driver, an amount easily exceeding typical recoveries in other delivery driver under-reimbursement cases.  *See id.*  This is a very good result, especially here given that (i)

█████████████████████████████████████████████████████████████████

██████████ (ii) this Court also denied Plaintiffs' motion to pursue class claims on an arbitration basis; and (iii) assuming, *arguendo*, that drivers were able to certify a class in

---

[9] Settlement Agreement ¶ 38(c).

arbitration, such a decision would have been subjected to numerous lengthy appeals.

Plaintiffs believe that the overwhelming majority of Arbitration Subclass members would have recovered nothing for their potential claims absent this settlement or the certification of a class arbitration, as the vast majority of drivers who signed arbitration agreements would not have filed individual arbitration claims, and because of the length of time that has passed, could not even do so now as such claims would be time-barred under the maximum statute of limitations.  As such, without the proposed settlement here, these subclass members would receive nothing unless Plaintiffs prevailed in obtaining class arbitration (and then prevailed on the merits) -- and Plaintiffs faced numerous significant hurdles in certifying an arbitration class.

The settlement payments will be made by check valid for 150 days.  Settlement Agreement ¶ 50.  The Settlement Agreement has a protocol to remind check recipients of the deadline to cash checks and to ensure returned checks are delivered to the intended recipients.  *See id.* ¶¶ 49-50.

### E. Attorneys' Fees And Litigation Costs

The Settlement Agreement is not conditioned on the award of attorneys' fees and costs in any amount, Settlement Agreement ¶ 35, and ███████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████ Plaintiffs' counsel may apply for up to one-third of the Maximum Settlement Amount for attorneys' fees for work already performed and remaining to be performed in the Action and costs and expenses incurred in prosecuting the Action and implementing the terms of the Settlement Agreement.

### F.   Service Payments To Class Representatives

In addition to their individual awards under the allocation formula, Plaintiffs, who actively participated in the litigation, apply for unopposed Service Payments in an amount not to exceed $10,000.00 for each named plaintiff, to be deducted from the Maximum Settlement Amount, in recognition of services rendered on behalf of the class.  Settlement Agreement ¶ 36.  The service awards were negotiated only *after* the Parties agreed to the substantive terms of the settlement. Frei-Pearson Decl. ¶ 22.

As with the award of attorneys' fees and costs, any reduction in or elimination of the Service Payments to the Class Representatives shall not be a basis for rendering the Settlement Agreement voidable or unenforceable.  Settlement Agreement ¶ 36.

### III.   Standard For Approving A Class Action Settlement

Class action "[s]ettlement agreements are highly favored in the law and will be upheld whenever possible."  *Pierre-Val v. Buccaneers Ltd. P'ship*, No. 14-01182, 2015 WL 3776918, at *1 (M.D. Fla. June 17, 2015) (quoting *In re Nissan Motor Corp. Antitrust Litig.,* 552 F.2d 1088, 1105 (5th Cir.l977)); *see, e.g.*, *In re U.S. Oil & Gas Litig.,* 967 F.2d 489, 493 (11th Cir. 1992) (noting that "public policy strongly favors the pretrial settlement of class action lawsuits."); Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

Before a settlement may be approved, a number of prerequisites must be established. First, the Court must certify the settlement class.  Fed. R. Civ. P. 23(c).  To certify a class for settlement purposes the Court must determine whether the prescriptions of Federal Rule of Civil Procedure 23 are satisfied.  *See, e.g., Morefield v. Noteworld, LLC*, No. 10-117, 2012 WL 1355573, at *2 (S.D. Ga. April 18, 2012).  Specifically, certification requires that all of the four

(4) factors set out in Rule 23(a) are satisfied, along with at least one of the conditions under Rule 23(b). *See id.*    Second, the Court must determine whether the settlement is "fair, adequate and reasonable and is not the product of collusion between the parties." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)) (internal quotations omitted).

"A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *In re Checking Account Overdraft Litig.*, No. 09-02036, 2012 WL 4174502, at *5 (S.D. Fla. Sept. 19, 2012) (quoting Manual for Complex Lit., Third § 30.42)). As the Eleventh Circuit has held, "[i]n considering a [class action] settlement, the court is entitled to rely upon the judgment of experienced counsel for the parties. 'Indeed, a court, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'" *Canupp v. Liberty Behavioral Healthcare, Corp.,* 447 Fed. Appx. 976, 977-78 (11th Cir. 2011) (quoting *Cotton,* 559 F.2d at 1331).

## IV.    <u>The Settlement Class Satisfies Rule 23 Requirements</u>

The Court previously preliminarily certified the class for settlement purposes.  Dkt. No. 228.  Plaintiffs respectfully submit that certification remains appropriate as no class member has expressed any concerns about the class or settlement and for all of the reasons stated in the Court's Order (Dkt. No. 228 at 5-6) and in prior submissions.  *See* Dkt. No. 187 at 20-28, Dkt. No. 209 at 20-34.

V.     **The Settlement Should Be Finally Approved**

     A.     **The Settlement Is Fair, Reasonable And Adequate**

In evaluating a class action settlement, courts in the Eleventh Circuit consider the six factors set forth in *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984).  The *Bennett* factors are: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) Class Members' reaction to the settlement; and (6) the stage of proceedings at which the settlement was achieved.  *See id.*

Here, all of the *Bennett* factors weigh in favor of the Settlement, and therefore, the Court should grant final approval.

     1.     **The Likelihood Of Success At Trial**

Although Plaintiffs believe their case is strong, it is not without risk.  Defendant likewise believes its defenses are equally strong.  In this case, as in any class settlement, Plaintiffs risked "recover[ing] nothing for themselves or the class had they proceeded with litigation." *Wilson v. EverBank*, No. 14-22264, 2016 WL 457011, at *8 (S.D. Fla. Feb. 3, 2016).

Here, Plaintiffs allege that Defendant had a policy and practice of under-reimbursing its delivery drivers for vehicular expenses and thereby paying them below the hourly minimum wage required by law.  While Plaintiffs believe they can prove this policy was unlawful and was applied to all Class Members, Defendant has not only alleged compliance with federal and state minimum wage laws, but also raised numerous other issues and defenses, including arbitration and its defenses to class certification.  These issues, if resolved in Defendant's favor, would potentially preclude a finding of liability.  Establishing liability would require substantial litigation, including favorable outcomes at trial and on appeal.  The

process is inherently lengthy and fraught with uncertainty.  Moreover, even if Plaintiffs

prevailed on the merits, a finding that the IRS rate did not apply would reduce their maximum

recovery by approximately 53% (significantly below the amount recovered under the settlement

by members of the Non-Arbitration Subclass).  Moreover, members of the Arbitration Subclass

faced substantial hurdles in obtaining class certification or in accessing the court system, and

thus, substantially greater risks than members of the Non-Arbitration Subclass.  *See* Dkt. No.

209 at 35-37.  The proposed settlement alleviates all these uncertainties as well as the risk that

Defendant would prevail entirely.  This factor weighs in favor of the Settlement.

### 2. The Relief Sought Is Fair And Reasonable, And Within The Range Of Recovery Permitted By Law

The relief sought in the Settlement is reasonable and within the range of recovery

permitted by law.  Defendant denies anything is owed.  However, even if Plaintiffs prevailed on

every issue, the reimbursement damages would be no more than the amount of any minimum

wage violation – that is, the amount of under-reimbursement offset by the extent to which

Defendant paid Plaintiffs above minimum wage.  As a compromise and to end the litigation and

ensuing expenses, Defendant has agreed to pay up to $3,100,000.00 to be distributed on a *pro*

*rata* basis to Class Members after attorneys' fees and costs, service payments and costs of

settlement administration are deducted.

Plaintiffs respectfully submit that the amount negotiated is the best result in any

delivery driver class action and exceeds the results negotiated in many similar court-approved

settlements.  *See* Dkt. No. 165 at 25-26 (cataloguing delivery driver under-reimbursement

settlements).  This strongly militates in favor of approving the Settlement.

In class settlements, it is typically true that "[w]hile Class Members' damages could

exceed the amount provided in the settlement, the Plaintiffs have no guarantee they will prevail."

*Waters v. Cook's Pest Control, Inc.*, No. 07-394, 2012 WL 2923542, at \*13 (N.D. Ala. July 17, 2012). Therefore, "it is not [the] Court's role in reviewing a settlement to ensure the settlement is perfect, extracting every cent possible from the defendant under the circumstances." *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 1004 (N.D. Cal. 2015), *recon. denied*, No. 13-3440, 2015 WL 4735521 (N.D. Cal. Aug. 10, 2015); *see, e.g.*, *Rowe v. E.I. DuPont de Nemours & Co.*, No. 06-1810, 2011 WL 3837106, at \*12 (D.N.J. Aug. 26, 2011) (approving a class settlement for far less than the maximum amount available, rejecting an objection arguing the class should have recovered more, and noting that "[i]f the perfect settlement were the test for court approval, rarely would a class action settlement be approved because inherent in each settlement is some relinquishment of a party's firmly held position or positions."). Rather, "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd sub nom.*, 899 F.2d 21 (11th Cir. 1990). Thus, as numerous courts within the Eleventh Circuit have held, "a court, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Wilson*, 2016 WL 457011, at \*6 (citations omitted).

There is no evidence of fraud or collusion here. To the contrary, the Settlement was reached after protracted negotiations and multiple in-person negotiating sessions with the assistance of Hunter Hughes, an experienced mediator.[10] ███████████████████

---

[10] Notably, courts have cited Mr. Hughes' involvement as a factor militating in favor of approving wage and hour settlements. *See Lapan v. Dick's Sporting Goods, Inc.*, No. 13-11390, 2015 WL 8664204, at \*1 (D. Mass. Dec. 11, 2015) (approving a class action settlement and noting that "[t]he assistance of an experienced mediator, Hunter Hughes" militates in favor of approval); *Puglisi v. TD Bank, N.A.*, No. 13-637, 2015 WL 574280, at \*2 (E.D.N.Y. Feb. 9, 2015) (same); *Bert v. AK Steel Corp.*, No. 02-467, 2008 WL 4693747, at \*2 (S.D. Ohio Oct. 23,

███████████████████████████████████████████████████████████████

████████████████████████

To address any concerns regarding the adequacy of amounts recovered per driver (*see*
Transcript, Dkt. No. 178, at 10:4-20), Plaintiffs' counsel surveyed every publicly available
delivery driver under-reimbursement settlement and have confirmed amounts made available
in confidential settlements.  *See* Dkt. No. 175 at 8-9.  The survey substantiates the assertion that
settlement payments averaging approximately $1,438 per person paid to members of the Non-
Arbitration Subclass is easily the highest average per person payout obtained in any such
delivery driver under-reimbursement class action; and the average of approximately $750 per
person for members of the Arbitration Subclass easily exceeds payments obtained in other
delivery driver under-reimbursement class actions.[11]  The fact that many courts have approved

---

2008) (approving a settlement and noting that "the settlement is the product of arm's-length,
good-faith settlement negotiations. The parties engaged in two days of mediation, led by an
experienced, neutral, third-party mediator, Hunter Hughes.  Mr. Hughes has mediated FLSA
collective actions and litigated FLSA collective actions for both plaintiffs and defendants, and
was able to point out to both parties potential weaknesses in their cases.").

[11] *See, e.g.,* Dkt. No. 237-1, *Behaein v. Pizza Hut, Inc.*, No. 541415 (Cal. Sup. Ct. Oct. 18, 2016)
(finally approving a class settlement with subclasses and with the highest paid subclass
recovering an average of $303 per driver); *Bellaspica v. PJPA*, No. 13-03014, Dkt. 147 at 4
(E.D. Pa. June 22, 2016) (holding that "the recovery of $329 per driver is in line with recoveries
in other pizza delivery driver under-reimbursement class and collective actions"); *Zellagui v.
MCD Pizza*, No. 14-1475, Dkt. No. 62 (E.D. Pa. May 18, 2016) (approving a reversionary
settlement awarding $162 per class member in pizza delivery driver reimbursement class
settlement); *Perrin v. Papa John's Int'l, Inc.*, No. 09-1335, Dkt. Nos. 449, 454 (E.D. Mo. Jan.
12, 2016) (finally approving a settlement where participating delivery drivers recovered an
average of approximately $399; the settlement included a reversionary common fund for delivery
drivers under Florida minimum wage law); *Bodon v. Domino's Pizza, LLC*, No. 09-2941, Dkt.
Nos. 207, 223-225 (E.D.N.Y. Feb. 11, 2015) (finally approving class settlement in case alleging,
*inter alia*, failure to reimburse delivery drivers for work-related expenses, where each class
member stood to recover an average of approximately $357); *Scott v. Bimbo Bakeries, USA, Inc.*,
No. 10-3154, Dkt. No. 174 (E.D. Pa. Mar. 5, 2014) (finally approving a reversionary common
fund settlement where participating current drivers recovered an average of $450 each); *Volney*

as reasonable delivery driver under-reimbursement settlements with significantly lower recoveries than that attained by both subclasses here strongly indicates that the Settlement should be approved.

### 3. Litigation Through Class Trial And Class Arbitration Would Be Complex, Costly, And Long

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay and ensure a speedy, risk-free recovery for the class. "Complex litigation – like the instant case – can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive." *In re U.S. Oil & Gas Litig.,* 967 F.2d 489, 493 (11th Cir. 1992). This case is no exception, with 2,119 Rule 23 class members and numerous hotly contested legal and factual issues.

If this case were to move forward, significant further discovery would be required to establish damages for members of the Non-Arbitration Subclass. Further, the Court would then have to rule on Plaintiffs' fully briefed motion to certify a class action.[12] A ruling, either granting or denying the motion, would likely prompt the losing party to seek interlocutory appeal of the adverse ruling. In addition, at the conclusion of discovery, the Parties would likely file cross-motions for summary judgment on multiple factual and legal issues, and Defendant would likely move to decertify any class previously certified by the Court. If the

---

*v. PJCOMN Acquisition Corp.*, No. 10-4119, Dkt. Nos. 26, 57, 58 (D. Minn. June 21, 2012) (dismissing case based on finally approved settlement where participating delivery drivers recovered an average of approximately $166); *Bass v. PJCOMN Acquisition Corp.*, No. 09-1614, Dkt. Nos. 266, 267, 268 (D. Colo. June 21, 2012) (dismissing case based on finally approved settlement where participating delivery drivers recovered an average of approximately $139); Dkt. No. 187 at 4-39 (collecting and discussing numerous pizza delivery driver settlements).
[12] This motion is now moot, as the Supreme Court decided *Bouaphakeo* on March 22, 2016. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 194 L. Ed. 2d 124 (2016).

Court denied the motions, a fact-intensive trial to determine whether Defendant was in compliance with the FMWA would ensue.  Preparing for and presenting evidence at trial would consume tremendous amounts of time and resources and demand substantial judicial resources.  Any judgment following trial would likely be appealed as well, extending the duration of the litigation.

Members of the Arbitration Subclass faced years of procedural hurdles and appeals regarding the propriety of class arbitration (were any arbitrator to hold that Pizza Hut's arbitration agreement allowed for class arbitration, the arbitration would immediately be stayed while Pizza Hut sought to vacate that order in court; and the district court's order would almost certainly be appealed).  Assuming the Arbitration Subclass were allowed to proceed on a class-wide basis, it would likely be years before they could move for class arbitration – and even more time would elapse before any class arbitration would be set for hearing.

The Settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner.  Therefore, the third *Bennett* factor weighs strongly in favor of the Settlement.

### 4.    The Reaction To The Settlement Has Been Positive

The response of the Class to the proposed Settlement has been positive and indicates that the proposed Settlement is fair and reasonable.  First, the deadline to opt out and object has expired, and no class member has opted out of the Class or objected to the Settlement.  *See Perez v. Asurion Corp.,* 501 F. Supp. 2d 1360, 1381 (S.D. Fla. 2007) ("A low percentage of objections demonstrates the reasonableness of a settlement."); *Marty v. Anheuser-Busch Companies, LLC,* No. 13-23656, 2015 WL 6391185, at *1 (S.D. Fla. Oct. 22, 2015) (holding that only 5 opt outs

and 2 objections shows "overwhelming support for the settlement and clear evidence of its reasonableness and fairness.").

   Second, over 29% of the Class have submitted valid claims, which is a healthy claim rate for a wage and hour class action settlement administered by the Settlement Administrator. *See* McDermott Decl. ¶ 15 (617/2119). In that regard, "[c]ourts in this Circuit have approved claims-made class settlements where the claims rate was low, including approving single-digit claims rates." *Braynen v. Nationstar Mortg., LLC*, No. 14- 20726, 2015 WL 6872519, at \*15 (S.D. Fla. Nov. 9, 2015); *see Poertner v. Gillete Co.*, No. 14-13882, 2015 WL 4310896, at \*1-2 (11th Cir. July 16, 2015) (approving 7.26 million-member settlement class when just 55,346 — less than 1% — filed claims); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 696 (S.D. Fla. 2014); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1377 (S.D. Fla. 2007) (approving 10.3 million-member settlement class when less than 119,000 — approximately 1.1% — filed claims); *see also* Andrew Brundsen, *Hybrid Class Actions, Dual Certification, and Wage Law Enforcement in the Federal Courts*, Berkeley J. Emp. & Lab. L., 269, Volume 29 (2008) (giving empirical data for 21 wage and hour cases and finding that the average participation rate was 15.71%.).[13]

   Third, the Settlement Administrator has tracked about 4,547 page and document views on the settlement website, and received 152 calls from class members and other individuals, none of whom had any concerns about the Settlement, including Class Counsel's anticipated fee request.

---

[13] Settlements with single-digit claims rate are routinely approved across the country. *See, e.g., In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944-45 (9th Cir. 2015) (approving 35 million-member settlement class when only 1.183 million — less than 4% — filed claims; "settlements have been approved where less than five percent of class members file claims"); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 n. 60 (3d Cir. 2011) (en banc) (noting evidence that claims rates in many class settlements "rarely" exceed 7%, "even with the most extensive notice campaigns").

McDermott Decl. ¶¶ 7, 8.  Class Counsel have also spoken to many class members, all of whom have expressed approval of the settlement.  *See* Frei-Pearson Decl. ¶ 30; Morgan Decl. ¶ 13.

### 5.    Discovery Has Advanced Far Enough To Allow The Parties To Resolve The Case Responsibly

The stage of proceedings at which settlement is achieved is "evaluated to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation."  *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005) (citation omitted).  At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler v. Jacobson,* 822 F. Supp. 1551, 1555 (M.D. Fla. 1992); *see, e.g., In re Remeron End–Payor Antitrust Litig.,* No. 02-2007, 2005 WL 2230314, at *21 (D.N.J. Sept. 13, 2005) ("Early settlements benefit everyone involved in the process and everything that can be done to encourage such settlements, especially in complex class action cases, should be done.") (citation omitted); *Lipuma,* 406 F. Supp. 2d at 1324 ("courts favor early settlement").  "Indeed, vast formal discovery need not be taken." *Saccoccio,* 297 F.R.D. at 694 (citation omitted).

The discovery the Parties pursued and obtained easily meets this standard.  As discussed above, the Parties have engaged in extensive discovery, including exchanging multiple productions of documents and data, exchanging written discovery and taking multiple depositions.  *See* Frei-Pearson Decl. ¶ 16.  Plaintiffs' counsel also interviewed many of Defendant's delivery drivers and several of Defendant's former managers to learn more about the strengths and weaknesses of the case.  *Id.* █████████████████████████████

████████████████████████     *Id.*  Moreover, the settlement was reached only after extensive arm's length negotiations -- including three separate full-day mediations and

numerous informal settlement discussions.  *Id.*

Based on these circumstances, the Parties are well equipped to evaluate the strengths and weaknesses of the case.  *See Francisco v. Numismatic Guar. Corp. of Am.*, No. 06-61677, 2008 WL 649124, at *11 (S.D. Fla. Jan. 31, 2008) (collecting cases for the proposition that settlement can be appropriate even with "very little discovery" occurring).  The settlement was achieved with the assistance of an experienced mediator, which is additional reason to approve the proposed Settlement.  *See Lee v. Ocwen Loan Servicing, LLC*, No. 14-60649, 2015 WL 5449813, at *11 (S.D. Fla. Sept. 14, 2015) (finally approving settlement and noting that the use of a neutral mediator weighed in favor of settlement); *Hall v. Bank of Am., N.A.*, No. 12-22700, 2014 WL 7184039, at *5 (S.D. Fla. Dec. 17, 2014) (holding that "the testimony of a respected and experienced mediator as to the fairness of the settlement and the mediation process is entitled to substantial weight").  Accordingly, final approval of the proposed Settlement is appropriate.

## VI.   <u>Notice Was Provided In The Best Practicable Manner</u>

Rule 23(c)(2)(B) requires that class members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  The Rule also requires that any such notice clearly and concisely state in plain, easily understood language:  the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through an attorney if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members under Rule 23(c)(3).  Fed. R. Civ. P. 23(c)(2)(B).

However, "due process does not require that class members actually receive notice." *Juris v. Inamed Corp.*, 685 F. 3d 1294, 1321 (11th Cir. 2012). "Instead, notice need only be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Braynen v. Nationstar Mortgage, LLC*, No. 14- 20726, 2015 WL 6872519, at *5 (S.D. Fla. Nov. 9, 2015) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Here, the Court approved "the proposed Notice of Class Settlement, Reminder Notice, and Claim Form." Dkt. No. 228 at 7 (referring to Dkt. Nos. 210-2, 210-3 and 210-4). Pursuant to the schedule approved by the Court, on December 1, 2016, the Settlement Administrator mailed the class notices and claim forms to all identified class members. Dkt. No. 239, Declaration of Kevin S. Dageforde Regarding Notice and Claims Period ("Dageforde Decl.") ¶ 8. Prior to mailing notices, the Settlement Administrator confirmed the addresses on the mailing list using the National Change of Address (NCOA) and skip-trace databases. *Id.* ¶ 7. Also on December 1, 2016, the Settlement Administrator established a dedicated toll-free number for any inquiries from class members, and a dedicated website posting copies of key case documents and the contact information for the Settlement Administrator. *Id.* ¶¶ 12-13. On January 3, 2017, the Settlement Administrator mailed the Reminder Notice to all class members who had yet to return claim forms. *Id.* ¶ 10. The Settlement Administrator also re-mailed undeliverable notices to forwarding and updated addresses. *Id.* ¶¶ 9, 11; *see N. Star Capital Acquisitions, LLC v. Krig*, No. 07-264, 2011 WL 65662, at *4 (M.D. Fla. Jan. 10, 2011) (holding that dissemination of class notice comported with due process and Rule 23 where notice was mailed to class members "whose names and last known addresses were reasonably available" and "re-mailed to updated addresses").

Moreover, the Settlement Administrator mailed the Amended Notices on February 13, 2017, and re-mailed undeliverable notices to forwarding and updated addresses. McDermott Decl. ¶¶ 5-6.[14] Thus, class members received individual notice on three occasions (the Original Notice, the Reminder Notice and the Amended Notice). The Court has previously found dissemination of the first two notices sufficient for due process purposes; dissemination of the third only proves that the Class was provided the best notice practicable under the circumstances.

As notice to Class members was conducted in the best practicable manner, this Court should grant final approval of the Settlement.

**VII.**  **Class Counsel Are Entitled To A Reasonable Fees And Expenses Of $1,026,333.33**

Plaintiffs seek an award of $1,026,333.33 in fees and expenses. As Class Counsel have incurred $94,835.94 in expenses, Class Counsel seek a fee award of $931,497.39. This fee award amounts to approximately 30% of the common fund of $3,100,000.00.

**A.**  **Class Counsel Fees Should Be Awarded From The Common Fund Created Through Class Counsel's Efforts**

In large class actions, attorneys' fees are typically calculated by awarding a percentage of the total value of the settlement to class counsel. *See Boeing v. Van Gemert,* 444 U.S. 472, 478 (1980) ("[A] litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."); *Waters v. Int'l Precious Metals Corp.,* 190 F.3d 1291, 1295–96 (11th Cir. 1999) (affirming fee award of 33–1/3% of total amount made available to class, and determining that attorney's fees may be determined based on total fund, not just actual payout to class); *see also Poertner,* 2015 WL

---

[14] At the Court's suggestion, Class Counsel have agreed to pay the cost of disseminating the Amended Notice, although they are not responsible for the delay in the settlement approval process that provided the opportunity to re-notice the class. The cost to re-notice the Class was approximately $7,000.00. McDermott Decl. ¶ 16.

4310896, at *4  (quoting *Camden I Condo. Ass'n v. Dunkle,* 946 F.2d 768, 774 (11th Cir. 1991)

("attorney's fees awarded from a common fund shall be based on a reasonable percentage of the

fund established for the benefit of the class")); *David v. Am. Suzuki Motor Corp.,* No. 08–22278,

2010 WL 1628362 (S.D. Fla. Apr. 15, 2010) (settlement with ascertainable benefits may be

treated as a common fund to which a percentage fee may be awarded, even if the fee is

separately paid by the defendant).  Fees are awarded based on a percentage of the total benefits

made available, regardless of the actual payout to the class following a claims process. *See*

*Waters,* 190 F.3d at 1295–96.

### B.   The *Camden I* Factors Support An Award Higher Than That Sought By Class Counsel

This Court has substantial discretion in determining the appropriate fee percentage

awarded to counsel.  "There is no hard and fast rule mandating a certain percentage of a common

fund which may be awarded as a fee because the amount of any fee must be determined upon the

facts of each case." *In re Sunbeam Sec. Litig.,* 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001)

(quoting *Camden I,* 946 F.2d at 774).

Here, pursuant to the terms of the Parties' Settlement Agreement, Plaintiffs' counsel may

receive up to one-third of the common fund created by their efforts.  Respectfully, the fee

requested is appropriate, given the factual circumstances of this case, and well within the range

of typical fee awards for common fund cases as well.

The Eleventh Circuit's factors for evaluating the reasonable percentage to award class-

action counsel are:  (1) the time and labor required; (2) the novelty and difficulty of the questions

involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other

employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the

fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the

amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; (12) awards in similar cases. *Camden I,* 946 F.2d at 772 n. 3 (citing factors originally set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir. 1974)).

These twelve factors are not exclusive. "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *In re Sunbeam,* 176 F. Supp. 2d at 1333 (quoting *Camden I,* 946 F.2d at 775). These factors are merely guidelines, and the Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular case." *Id.* (quoting *Walco Inv., Inc. v. Thenen,* 975 F. Supp. 1468, 1472 (S.D. Fla. 1997)). The *Camden I* factors are discussed below.

## 1.  <u>Time And Labor Involved</u>

Class Counsel expended significant effort to achieve the $3,100,000.00 settlement for the Class. Class Counsel have arbitrated, mediated and litigated this case in multiple forums for more than six years (counting predecessor related litigation). They exhaustively investigated the claims of Plaintiffs and the Class, interviewing many of Defendant's delivery drivers and several of Defendant's former managers. Frei-Pearson Decl. ¶ 16. They have engaged in extensive motion practice and discovery, including exchanging multiple productions of documents and data, and exchanging written discovery and participating in multiple depositions. *Id.* ▮

▮ *Id.* Class Counsel reached a hard-fought settlement only after three separate full-day mediations and

numerous informal settlement discussions.  *Id.*  Due to the complicated structure of the settlement, obtaining preliminary approval required more effort than is typical.  *See* Dkt. Nos. 165-167, 175, 187-191, 203, 209-213.  They also successfully moved to modify the settlement to enhance the average individual benefits to the subclasses after discovering that inaccurate data from Defendant had understated the estimated benefits.  *See* Dkt. Nos. 236 and 241.

In performing the aforementioned work on behalf of the Class, Class Counsel spent over 3,600 hours of attorney and paralegal time without any assurance that the extraordinary commitment of time and effort to this case would result in payment of any fee.  Class Counsel should be amply compensated for the substantial time and labor invested to obtain this outstanding settlement on behalf of the Class and should not be punished for its persistence and efficiency in achieving a positive result.

**2.  The Novelty And Difficulty Of The Questions Involved<br>Required The Skill Of A Highly Talented Team Of Attorneys**

This factor strongly favors an award of the fees requested.  "Class actions are inherently complex to prosecute because the legal and factual issues are complicated and uncertain in outcome."  *Francisco v. Numismatic Guar. Corp. of Am.*, No. 06-61677, 2008 WL 649124, at *15 (S.D. Fla. Jan. 31, 2008).  This class action is no exception, as it presents complex evidentiary and legal issues, such as but not limited to whether Defendant has a policy and practice of under-reimbursing its delivery drivers for vehicle expenses incurred during deliveries, whether the IRS reimbursement rate applies, whether Defendant complies with federal and state minimum wage laws, whether members of the Arbitration Subclass are precluded from seeking class certification,  whether previous attempts to seek class relief on behalf of members of the Arbitration Subclass tolled the applicable statute of limitations for their claims, whether delivery drivers had waived their right to bring claims by knowingly

receiving insufficient reimbursements for their vehicle expense, and whether Defendant has viable defenses to class certification.

That this dispute presents complex issues as outlined above is evidenced not only by its "protracted" history, but also by the caliber of lawyers representing the Parties. *See Walco*, 975 F. Supp. at 1472 (explaining that "[g]iven the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results"); *see also Camden I*, 946 F.2d at 772 n. 3 (in assessing the quality of representation by Class Counsel, Court also should consider the quality of their opposing counsel.); *Johnson*, 488 F.2d at 718; *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992). "The fact that this level of legal talent was available to the Settlement Class is another compelling reason in support of the fee requested… In the private marketplace, as pointed out by several of Plaintiffs' experts, counsel of exceptional skill commands a significant premium." *In re Checking Account Overdraft Litigation*, 830 F. Supp. 2d 1330, 1363 (S.D. Fla. 2011). Here, Class Counsel enjoy a strong reputation in the area of complex and class action litigation. Frei-Pearson Decl. ¶ 32; *see also* Declaration of C. Ryan Morgan ("Morgan Decl.") ¶ 7. They have successfully arbitrated and settled delivery driver under-reimbursement cases across the country, and, in this case, have been challenged by highly experienced and skilled counsel who deployed very substantial resources on Defendant's behalf. Frei-Pearson Decl. ¶ 32; *see also* Morgan Decl. ¶¶ 7-9.

### 3.    The Claims Against Defendant Entailed Considerable Risk

Prosecuting these claims was a significant undertaking. The risks incurred in pursuing the case have been discussed at length above and elsewhere. "The simple fact is that there were a larger than usual number of ways that Plaintiffs could have lost this case, and they still

managed to achieve a successful settlement.  A significant amount of the credit for this must be given to Class Counsel's strategy choices, effort and legal acumen." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1364. "A court's consideration of this factor recognizes that counsel should be rewarded for taking on a case from which other law firms shrunk." *In re Sunbeam,* 176 F. Supp. 2d at 1336.  Here, other counsel explicitly shrunk from taking on a similar case. *See Chatman v. Pizza Hut, Inc.*, No. 12-10209, 2013 WL 2285804 (N.D. Ill. May 23, 2013) (where plaintiffs' counsel for class of Illinois Pizza Hut delivery drivers abandoned case after Pizza Hut successfully compelled arbitration).

Here and in other forums, Defendant maintains that it complied with all minimum wage requirements and that the Plaintiffs would not be able to maintain a class due to differences in the work conditions of its delivery drivers.  Defendant also vigorously contested liability and Plaintiffs thus faced a substantial risk that the litigation would be unsuccessful.  Accordingly, this factor also militates in favor of awarding Class Counsel the requested fee amount.

### 4. Class Counsel Assumed Substantial Risk In Pursuing This Action On A Pure Contingency Basis, And Were Precluded From Other Employment As A Result

Class Counsel prosecuted the Action entirely on a contingent fee basis.  Frei-Pearson Decl. ¶ 42; Morgan Decl. ¶ 15.  As such, they assumed a significant risk of nonpayment or underpayment.  For example, in the similar case of *Bellaspica v. PJPA*, FBFG (class counsel) took a substantial discount in attorneys' fees due to the defendants' insolvency, which developed after FLSA conditional certification. *See Bellaspica v. PJPA,* No. 13-3014, Transcript of the June 22, 2016 Final Settlement Approval Hearing Before Honorable Judge Timothy A. Rice at 13, 14 and 16 (approving fee request after noting that FBFG lowered request in light of defendants' financial predicament, that "there was a significant risk . . . that the best possible

recovery could have been zero given the financial predicament of Defendants" and that FBFG was "a great example to the bar of what zealous advocacy really means"), attached as Exhibit 3 to the Frei-Pearson Decl.

Numerous cases recognize the importance of this factor in determining the fee award. "A contingency fee arrangement often justifies an increase in the award of attorney's fees." *In re Sunbeam,* 176 F. Supp. 2d at 1335 (quoting *Behrens,* 118 F.R.D. at 548); *see also In re Continental Ill. Sec. Litig.,* 962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent basis, plaintiffs' counsel must be compensated adequately for the risk of non-payment); *Ressler,* 149 F.R.D. at 656 ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award."); *Walters v. Atlanta,* 652 F. Supp. 755, 759 (N.D. Ga. 1985), *modified,* 803 F.2d 1135 (11th Cir. 1986); *York v. Alabama State Bd. of Education,* 631 F. Supp. 78, 86 (M.D. Ala. 1986).

As Judge King has observed:

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer . . . A contingency fee arrangement often justifies an increase in the award of attorney's fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Behrens,* 118 F.R.D. at 548. Class Counsel spent very substantial time litigating this case that they could not spend on other matters. *See* Frei-Pearson Dec. ¶¶ 36, 41. Thus, consideration of this factor also justifies the requested fee.

### 5.   The Fee Requested Comports With Customary Fees Awarded In Similar Cases

An award of one-third of the settlement fund is consistent with the trend in this Circuit. *See Waters v. Int'l Precious Metals Corp.,* 190 F.3d 1291 (11th Cir. 1999)

(affirming fee award of 33 1/3 % of settlement of $40 million); *Seghroughni v. Advantus Rest., Inc.*, No. 12-2000, 2015 WL 2255278, at *1 (M.D. Fla. May 13, 2015) ("An attorney's fee ... which is one-third of the settlement fund ... is fair and reasonable in light of the results obtained by the Lead Counsel, the risks associated with this action, the Lead Counsel's ability and experience in class action litigation, and fee awards in comparable cases."); *Wolff v. Cash 4 Titles*, No. 03-22778, 2012 WL 5290155, at *4 (S.D. Fla. Sept. 26, 2012) ("One-third of the recovery is considered standard in a contingency fee agreement."); *Morefield v. NoteWorld, LLC*, No. 10-117, 2012 WL 1355573 (S.D. Ga. April 18, 2012) (awarding fees of 33 1/3% of the $1,040,000 settlement fund in addition to expenses); *Atkinson v. Wal–Mart Stores, Inc.*, No. 08-691, 2011 WL 6846747, at *6 (M.D. Fla. Dec. 29, 201 l) (approving class settlement with one-third of the maximum $2,020,000 common fund);  *In re Terazosin Hydrochloride Antitrust Litig.*, No. 99- 1317, Dkt. No. 1557 at 8-10 (S.D. Fla. Apr. 19, 2005) (awarding class counsel 33.3% of settlement fund in part because they prosecuted the action on a wholly contingent basis); *In re: Managed Care Litig. v. Aetna*, MDL No. 1334, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (awarding fees and costs of 35.5% of settlement of $100 million); *Gutter v. E.I. DuPont De Nemours & Co.,* No. 95-2152, Dkt. No. 626 at 7 (S.D. Fla. May 30, 2003) (awarding class counsel 33.3% of the Settlement Fund as attorneys' fees ($1,201,728.42) because they expended significant time and resources on a purely contingent basis under the common fund theory).  It is also consistent with fee awards in other delivery driver under-reimbursement class actions.  *See, e.g.*, *Perrin v. Papa John's International, Inc.*, No. 09-01335, Dkt. No. 454 at ¶ 5 (E.D. Mo. Jan. 12, 2016) (awarding class counsel 35% of the common fund). Accordingly, Class Counsel's requested fee award of $931,497.39, or about 30% of the common fund, is appropriate.

6.      **The Remaining *Camden I* And Other**
        **Factors Favor Approval Of The Fee Requested**

The remaining *Camden I* factors also support Class Counsels' fee request.  The burdens of this litigation and the results obtained on behalf of Plaintiffs and the Class weigh in favor of the fee requested.  The fee request is firmly rooted in "the economics involved in prosecuting a class action." *See In re Sunbeam,* 176 F. Supp. 2d at 1333.  "[P]roper incentives must be maintained to insure that attorneys of this caliber are available to take on cases of significant public importance like this one."  *In re Checking Account Overdraft Litigation,* 830 F. Supp. 2d at 1368.  This is especially so in wage and hour litigation like the instant case, which seeks to enforce an important remedial right.  *See Pyczynski v. Kirkland's Stores, Inc.*, No. 07-802, 2008 WL 544864, at \*5 (M.D. Fla. Feb. 26, 2008) ("Given the nature of claims under the FLSA and the remedial purpose of the Act, it is not uncommon that the attorneys' fees will exceed the amount recovered by the plaintiff"); *Tyo v. Lakeshore Hockey Arena, Inc.*, No. 11-6239, 2014 WL 2532447, at \*7 (W.D.N.Y. June 5, 2014) ("Fee awards in wage and hour cases are meant to 'encourage members of the bar to provide legal services to [employees with wage claims]'") (quoting *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 622-23 (S.D.N.Y. 2012)).

In addition, the fact that the Parties negotiated for 11 months to reach a settlement and that no class member has objected to the Settlement or its provision on attorneys' fees, weighs in favor of the fee requested.  *See, e.g.*, *Allapattah Services, Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1204 (S.D. Fla. 2006) ("The lack of significant objection from the Class supports the reasonableness of the fee request") (collecting cases); *Gevaerts v. TD Bank*, No. 14-20744, 2015 WL 6751061, at \*10 (S.D. Fla. Nov. 5, 2015).

### C.    A Lodestar Analysis Confirms The
####        Reasonableness Of The Fee Requested

Under *Camden I*, use of the lodestar analysis is improper in common fund cases. *See*
*In re Checking Account Overdraft Litig.,* 830 F. Supp. 2d at 1362-63 (declining to perform
lodestar cross-check because *Camden I* "mandated the exclusive use of the percentage
approach in common fund cases" and noting that "courts in this Circuit regularly award fees
. . . without discussing lodestar at all") (internal quotations marks, brackets and emphasis
omitted). Still, it has been used as a "cross-check" to the percentage-of-the-fund analysis.
*Waters*, 190 F.3d at 1298 ("[W]hile we have decided in this circuit that a lodestar calculation is
not proper in common fund cases, we may refer to that figure for comparison."); *Pinto v.*
*Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1343 (S.D. Fla. 2007) (noting that "[s]ome
courts use the lodestar method as a cross-check of the percentage of the fund approach") (citing
*In re Sunbeam,* 176 F. Supp. 2d at 1336).

To determine the lodestar amount, the "court must multiply the number of hours
reasonably expended by a reasonable hourly rate." *Duckworth v. Whisenant*, 97 F.3d 1393, 1396
(11th Cir. 1996). "A reasonable hourly rate is the prevailing market rate in the relevant legal
community for similar services by lawyers of reasonably comparable skills, experience, and
reputation." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir.
1988). "After the lodestar is determined . . ., the court must next consider the necessity of an
adjustment for results obtained." *Id.* at 1302. "If the results obtained were exceptional, then
some enhancement of the lodestar might be called for." *Id.* (citing *Pennsylvania v. Delaware*
*Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986), *supplemented*, 483 U.S. 711
(1987)). "Even if the results obtained are exceptional, no enhancement is permissible unless
there is specific evidence in the record to show that the quality of representation was superior to

that which one would reasonably expect in light of the rates claimed." *Id.* (citing *Blum v. Stenson*, 465 U.S. 886, 899 (1984)). "This is because the reasonable hourly rate already should reflect the skill demonstrated by the advocate." *Id.* "[E]nhancement may be appropriate if there is a risk of non-recovery of a fee in the case," such as in a contingent fee arrangement. *Id.*

Here, over the more than six years that Plaintiffs' counsel have been prosecuting their claims against Defendant in various forums, they have expended over 3,600 hours and advanced expenses in the amount of $94,835.94. Frei-Pearson Decl. ¶¶ 35, 40; Morgan Decl. ¶ 14. At their current hourly rates,[15] the lodestar is $2,160,873.50. Frei-Pearson Decl. ¶ 39; Morgan Decl. ¶ 14. Even assuming the Court cuts Plaintiffs' counsel's hourly rates in half, the lodestar would still exceed the fee requested, which represents a negative multiplier of 0.43 on their lodestar.

Moreover, had there been no common fund in the proposed Settlement and attorneys' fees were determined based solely on the lodestar method, Plaintiffs' counsel would have sought a "substantial multiplier" to apply to their lodestar for reasons earlier discussed, in particular, the result achieved for the Class, the complexity of the dispute and issues Plaintiffs' counsel had to skillfully address, and the contingent nature of Plaintiffs' counsel's fee arrangement. *See Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 04-3066, 2012 WL 12540344, at *5

---

[15] FBFG's hourly rates have been approved by courts across the country and have not been reduced by any court. *See, e.g., Yoeckel v. Marriott International, Inc.*, No. 703387 (N.Y. Sup. Ct. May 3, 2017) (Exhibit 4 to Frei-Pearson Decl.); *Reed v. Friendly's Ice Cream, LLC*, No. 15-298, Dkt. No. 105 (M.D. Pa. Jan. 31, 2017); *St. Joseph Health System Medical Information Cases*, JCCP No. 4716 (Cal. Sup. Ct. Feb. 3, 2016), *available at* http://www.sjhsdatabreachclassaction.com/Documents/SJK0001/Signed%20Order%20Granting %20Motion%20for%20Attorneys'%20Fees.pdf (last visited May 1, 2017). FBFG's rates are also lower than average in the New York market where they practice. *See* CEB, *2016 Real Rate Report in Brief – A Summary of Law Rate Trends*, *available at* http://amlawdaily.typepad.com/files/2016-real-rate-report-summary-of-rate-trends.pdf (last visited May 11, 2017). Nonetheless, FBFG recognizes that its hourly rates are higher than customary in the Middle District of Florida.

(N.D. Ga. Oct. 26, 2012) (applying a multiplier of four times lodestar to "reflect such considerations as (1) the contingent nature of the fee; (2) the risk of the case (*i.e.,* the likelihood of success viewed at the time of the filing); (3) the quality of representation; and (4) the result achieved," and surveying cases applying multipliers of approximately 4 to 9 times lodestar).[16] This would further dwarf the fees requested under the percentage-of-the-fund approach and the proposed Settlement.

### D.   Class Counsel's Expenses Are Reasonable

In addition to attorneys' fees, Class Counsel seek reimbursement of the expenses incurred in prosecuting the case against Defendant. Since the filing of the case, and as of May 11, 2017, they have incurred expenses in the amount of $94,835.94. Frei-Pearson Decl. ¶ 40; Morgan Decl. at ¶ 16.

In a similar case delivery driver under-reimbursement case against Papa John's, class counsel incurred and were reimbursed for "expenses totaling $550,249." *Perrin v. Papa John's International, Inc.*, No. 09-01335, Dkt. No. 454 at ¶ 5 (E.D. Mo. Jan. 12, 2016). Although this case was not as large *Perrin,* it was hotly contested over many years and Class Counsel incurred substantial expenses. These expenses include filing and PACER fees, process service, expert

---

[16] *See In re Linerboard Antitrust Litig.*, MDL No. 1261, 2004 WL 1221350, at *16 (E.D. Pa. June 2, 2004) (recognizing that from 2001 to 2003, the average multiplier approved in common fund cases was 4.35); *Weiss v. Mercedes–Benz of N. Am.*, 899 F. Supp. 1297, 1304 (D.N.J. 1995) (awarding $11,250,000 fee, a multiple of 9.3 times lodestar), *aff'd*, 66 F.3d 314 (3d Cir. 1995); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 348 (N.D. Ga. 1993) (5.25 multiplier); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 197–99 (S.D.N.Y. 1997) (5.5 multiplier); *In re RJR Nabisco, Inc. Securities Litig.*, MDL No. 818, 1992 WL 210138, at *5–8 (S.D.N.Y. Aug. 24, 1992) (approving multiplier of 6 over objection); *Rabin v. Concord Assets Group, Inc.*, No. 89-6130, 1991 WL 275757, at *1–2 (S.D.N.Y. Dec. 19, 1991) (approving a multiplier of 4.4 and noting that "'multipliers of between 3 and 4.5 have been common' "). *See also Behrens*, 118 F.R.D. at 548 ("the range of lodestar multipliers in large and complicated class actions runs from a *low* of 2.26 ... to a *high* of 4.5") (citations omitted, emphasis added).

expenses, *pro hac vice* fees, research/Westlaw charges, copying and mailing expenses, court reporting expenses for hearing transcripts and deposition coverage, and travel expenses in connection with court appearances, mediations (which, at Defendant's request, took place in three different states) and depositions (in Texas and Florida).  Frei-Pearson Decl. ¶ 40; Morgan Decl. ¶ 16.  Class Counsel respectfully submit that they are entitled to recover these expenses.

## VIII.   Plaintiffs Are Entitled To Reasonable Service Awards

The Settlement proposes that the named Plaintiffs each receive a Service Award of $10,000.00 for their participation in this action and service to the settlement class.

"[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action." *David v. American Suzuki Motor Corp.,* No. 08-22278, 2010 WL 1628362, at *6 (S.D. Fla. Apr. 15, 2010).  Courts have consistently found service awards to be an efficient and productive way to encourage members of a class to become class representatives. *See, e.g., Cooper v. Nelnet, Inc.*, No. 14-314, Dkt. No. 81 (M.D. Fla. Aug. 4, 2014) (Dalton, J.) (approving a service award of $25,000); *Ingram v. The Coca–Cola Co.,* 200 F.R.D. 685, 694 (N.D. Ga. 2001) (awarding class representatives $300,000 each, explaining that "the magnitude of the relief the Class Representatives obtained on behalf of the class warrants a substantial incentive award."); *Spicer v. Chi. Bd. Options Exchange, Inc.,* 844 F. Supp. 1226, 1267–68 (N.D. Ill. 1993) (collecting cases approving service awards ranging from $5,000 to $100,000, and awarding $10,000 to each named plaintiff).

Plaintiffs have worked diligently in service of the class.  Plaintiffs have produced documents and provided written responses to Defendant's Interrogatories and to the Court's Interrogatories.  *See* Frei-Pearson Decl. ¶ 17.  Plaintiffs kept abreast of the litigation strategy and of settlement discussions.  *See id.*  All three plaintiffs testified via declarations.  *See id.*  In

addition, Mr. Walsh and Phillips sat for a deposition in this case and Mr. Fata was prepared to be deposed. *See id.* Plaintiffs would have testified at trial and have assisted Plaintiffs' counsel in identifying other potential witnesses. *See id.* Plaintiffs have vigorously represented the class and, absent settlement, would have continued to vigorously prosecute this case on behalf of the class through trial. Moreover, the service payments were negotiated only after the Parties agreed on the substantive terms of the Settlement, and no class member objected to service payments being made in the amount requested.

Plaintiffs respectfully submit that service payments of $10,000 each are reasonable, particularly given the amount of time and effort put forth by Plaintiffs, and the lack of any objections.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court finally approve the Settlement Agreement, certify the Class, and grant the request for attorney's fees and costs and service awards in the amounts requested.

Dated:  May 11, 2017                                   Respectfully submitted,

                                   **FINKELSTEIN, BLANKINSHIP,**
                                   **FREI-PEARSON & GARBER, LLP**

                                   Jeremiah Frei-Pearson

                                   Jeremiah Frei-Pearson (*Pro Hac Vice*)
                                   445 Hamilton Avenue, Suite 605
                                   White Plains, New York 10601
                                   Telephone: (914) 298-3281
                                   jfrei-pearson@fbfglaw.com

**Morgan & Morgan, P.A.**
C. Ryan Morgan
Fla Bar. No. 0015527
20 North Orange Avenue, Suite 1400
Orlando, Florida 32801
Telephone: (407) 418-2069
rmorgan@forthepeople.com

*Attorneys for Plaintiffs and Class*