UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| AL FATA, BRIAN PHILLIPS and JERRY WALSH, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>PIZZA HUT OF AMERICA, INC.,<br><br>        Defendant. | CASE NO: 6:14-CV-00376-RBD-DCI |

### DECLARATION OF JEREMIAH FREI-PEARSON

I, Jeremiah Frei-Pearson, declare pursuant under penalty of perjury to 28 U.S.C. § 1746 that the foregoing is true and correct:

1. I am a founding partner of the law firm of Finkelstein, Blankinship, Frei-Pearson & Garber, LLP ("FBFG"), co-counsel for Plaintiffs in the above-captioned case.

2. I respectfully submit this Declaration in support of Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement, Attorney's Fees and Expenses, and Service Award Payments.

### Background of Litigation and Settlement Negotiations

3. This is a complaint for violation of the Florida Minimum Wage Act, Fla. Stat. Ann. § 448.110 (FMWA) filed on behalf of all Florida delivery drivers Defendant employed for any length of time since March 9, 2009 ("Class" or "Settlement Class"). The Class excludes (a) those who have initiated arbitration proceedings against Defendant alleging claims under the Florida Minimum Wage Act ("FMWA") and/or (b) those who were opt-in plaintiffs in *Smith v. Pizza Hut, Inc.*, Case No. 1:09-cv-01632 (D. Colo.), and settled their claims alleging under-

reimbursement in that case. Plaintiffs allege that Defendant systematically and unlawfully paid its Florida delivery drivers, including Plaintiffs, wages well below the minimum in violation of the FMWA by under-reimbursing delivery drivers for vehicular expenses incidental to delivery. Including Plaintiffs, there are 2,119 individuals in the Class.

4. The original complaint in this case was filed on March 7, 2014. Dkt. No. 1. But, as this Court has noted, "the history between the parties is protracted." *Barkley v. Pizza Hut of Am., Inc.*, No. 14-376, 2014 WL 3908197, at *1 (M.D. Fla. Aug. 11, 2014). "[T]he parties have arbitrated, mediated, and litigated this dispute, in multiple forums" – for more than four years. Dkt. No. 228 at 2. During this time, this Court denied without prejudice Plaintiff Fata's motion for class arbitration, and multiple arbitrators held that Pizza Hut's arbitration agreement prevented class proceedings. However, Plaintiffs' counsel defeated Pizza Hut's motion to compel arbitration of the Non-Arbitration Subclass (*see* Dkt. No. 69) developed an extraordinarily strong record against Pizza Hut, and ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅. *See* Dkt. No. 209 at 5-6 (providing further factual background).

5. At the time of settlement, the Non-Arbitration Subclass had a fully briefed motion for class certification pending before this Court, *see* Dkt. Nos. 127-141, and Pizza Hut's motion to stay the case pending *Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791 (8th Cir. 2014), *cert. granted*, 576 U.S. --- (June 8, 2015) (No. 15-1156) was also fully briefed. Dkt. Nos. 144, 155-156. The Arbitration Subclass was again briefing the issue of whether Pizza Hut's arbitration agreement allowed class proceedings, despite the fact that Pizza Hut had repeatedly prevailed on that issue.

6. On or about February 1, 2016, Plaintiffs moved for preliminary approval of the settlement and filed several accompanying motions. Dkt. Nos. 159-170.

7. After a hearing before Judge Baker, the Parties modified the settlement agreement and gathered additional record evidence to address. On July 5, 2016, Plaintiffs again moved for preliminary approval of the revised Settlement after filing related motions. Dkt. Nos. 182-184, 187-191, 193-195, and 197.

8. On August 5, 2016, Judge Baker issued a Report and Recommendations ("R&R"), denying preliminary approval of the Settlement. Dkt. No. 198.

9. The Parties respectfully objected to the R&R (*see* Dkt. Nos. 201, 203, 204, 206, 209-213, and 215-219) and on October 31, 2016, the Court preliminarily approved the Settlement. Dkt. No. 228. The Claims Administrator mailed notice to the class. No class member objected or opted out, and 481 class members or about 23% of the Class participated.

10. Plaintiffs were in the process of preparing final approval papers when two issues arose. First, in late January of 2017, the Parties learned that, due to an associate's departure from a law firm representing Defendant, Defendant served notice of the proposed settlement on the U.S. Attorney General and appropriate State attorney generals as required by the Class Action Fairness Act ("CAFA Notice") nearly six months late, on January 13, 2017. *See* 28 U.S.C. § 1715(b) ("Not later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement . . ."). Late service of the CAFA Notice necessitated an adjournment of the February 6, 2017 final approval hearing because an order granting final approval may not issue earlier than 90 days after service of the CAFA notice. *See* 28 U.S.C. § 1715(d). Second, around that same time, Class Counsel received final class data for the first time. In reviewing that data, Class Counsel realized that the final class data differed from the data the Parties had used in

negotiating the settlement. The final data provided substantially more money for class members, but also required the reformulation of the allocation formula between the two subclasses.

11. The Parties conferred and negotiated regarding these two issues. The Parties agreed fairly quickly that they would inform the Court of these issues and that, subject to court approval, Defendant would send CAFA Notice and also re-notice the class to apprise it of the new allocation formula. The Parties initially disagreed as to whether the claims period should be extended and reopened. However, after several discussions, the Parties agreed that the claims period and the time to object or opt-out would be extended by 20 days. Moreover, Defendant agreed to deposit in an interest bearing account within 30 days the Qualified Settlement Fund, consisting of the individual settlement payments to claimants, the service payments to the class representatives and Class Counsel's reasonable attorneys' fees, costs and expenses.

12. The Parties presented their plan to the Court on February 3, 2016. Dkt. No. 236. On February 7, 2017 the Court revised the payment allocation as requested, ordered the dissemination of the amended notice presented at the February 6, 2017 status conference, which reflected the "Revised Payment Allocation" ("Amended Notice"), and extended the claims, opt-out and objections period. Dkt. No. 241. A copy of the Amended Notice is attached as Exhibit 1.

13. The Settlement Administrator reports that, after dissemination of the Amended Notice, an additional 136 class members submitted valid claims, bringing the overall claim rate to over 29%. This includes the 11 late claim forms which the parties have agreed to treat as timely submitted.

14. The Parties recognize the benefits of settling this case. Plaintiffs believe that the claims asserted in this case have merit and that the information obtained to date supports their claims. Despite the strengths of their case, Plaintiffs are mindful that litigating the case could be

protracted, extending to trial and appeal. Plaintiffs' Counsel have also taken into account the uncertain outcome and risks of the litigation, as well as the difficulties and delays inherent in such litigation. They have, therefore, determined that the Settlement Agreement proposed by the Parties is fair, reasonable and adequate. The Settlement confers substantial benefits upon, and is in the best interests of, Plaintiffs and the Settlement Class.

15. Defendant maintains that it has a number of meritorious defenses to the claims asserted in this action. Nevertheless, Defendant recognizes as well the risks and uncertainties inherent in litigation, the significant expense associated with defending class actions, the costs of any appeals, and the disruption to its business operations arising out of class action litigation. Defendant also recognizes the risk that a trial on class-wide claims might present. Accordingly, Defendant believes that the Settlement Agreement presented for final approval is likewise in its best interest.

16. Prior to entering into the proposed Settlement, I and co-counsel Ryan Morgan exhaustively investigated the claims of Plaintiffs and the Class, interviewing many of Defendant's delivery drivers and several of Defendant's former managers to learn more about the strengths and weaknesses of the case. We also engaged in extensive motion practice and discovery, including exchanging multiple productions of documents and data, exchanging written discovery and participating in multiple depositions. ███████████████ ███████████████ It also took us three separate full-day mediations and numerous informal settlement discussions to reach a settlement with Defendant.

17. Plaintiffs have worked diligently in service of the class. Plaintiffs have produced documents and provided written responses to Defendant's Interrogatories and to the Court's Interrogatories. Plaintiffs kept abreast of the litigation strategy and of settlement discussions.

All three plaintiffs testified via declarations. In addition, Mr. Walsh and Phillips sat for a deposition in this case, and Mr. Fata was prepared to be deposed. Plaintiffs would have testified at trial and have assisted Plaintiffs' Counsel in identifying other potential witnesses. Plaintiffs have vigorously represented the class and, absent settlement, would have continued to vigorously prosecute this case on behalf of the class through trial.

## Summary Of The Settlement

18. Along with Mr. Morgan, I have litigated and arbitrated against Pizza Hut for more than four years on behalf of Florida delivery drivers. In so doing, I have represented drivers who signed arbitration agreements with Pizza Hut ("Arbitration Subclass") and drivers who did not ("Non-Arbitration Subclass").

19. One of Pizza Hut's strongest defenses was its argument that delivery drivers who signed arbitration agreements were not able to participate in class proceedings. Accordingly, it became apparent that those delivery drivers who signed arbitration agreements had a lower chance of prevailing in class proceedings than delivery drivers who had not signed arbitration agreements. Moreover, as a practical matter, only 2-3 members of the Arbitration Subclass are likely to arbitrate their claims if the Arbitration Subclass is not certified.

20. The class consists of 2,119 Florida delivery drivers Defendant has employed for any length of time since March 7, 2009. *See* Settlement Agreement (Dkt. No. 210-1) ¶ 23. Excluded are (a) those who have initiated arbitration proceedings against Defendant alleging claims under the FMWA and/or (b) those who were opt-in plaintiffs in *Smith v. Pizza Hut, Inc.*, Case No. 1:09-cv-01632-CMA-NYW (D. Colo.), and thus, had settled their FMWA and FLSA claims in that case. *Id.*

21.     The Class is easily ascertainable from Pizza Hut's records, which identify every class member by name.

22.     Defendant has agreed to create a settlement fund of up to $3,100,000.00 ("Maximum Settlement Amount"). *Id.* ¶¶ 14 and 32. The fund will cover settlement payments to Authorized Claimants,[1] Court-approved attorneys' fees and costs in an amount not to exceed one-third (1/3) of the Maximum Settlement Amount,[2] Court-approved service payments to the Class Representatives in an amount not to exceed $10,000 each,[3] and the reasonable costs of settlement administration. *Id.* ¶¶ 15, 32 and 33.[4] As Mediator Hunter R. Hughes, III, attested in his Confidential Report, attached hereto as Exhibit 2, the attorneys' fees were not a part of the Parties' substantive negotiations. The service awards were also negotiated only *after* the Parties agreed to the substantive terms of the settlement.

23.     Participating Rule 23 class members will be paid pursuant to an allocation formula based on the length of their employment with Defendant. *Id.* ¶ 38 (as modified by Order, dated February 7, 2017, Dkt. No. 241). Class Members for whom Pizza Hut was unable to locate a signed arbitration agreement shall be part of the "Non-Arbitration Subclass." *Id.* Those for whom Pizza Hut was able to find a signed arbitration agreement shall be part of the "Arbitration Subclass." *Id.* The Net Settlement Amount, *i.e.*, the Maximum Settlement Amount minus any Court-approved amounts for Class Counsel's fees and costs, the service payments to

---

[1] "Authorized Claimant" means a Participating Class Member who has returned a valid and timely Claim Form. Settlement Agreement ¶ 2.

[2] *Id.* ¶ 35.

[3] *Id.* ¶ 36.

[4] To the extent Rule 23 class members elect to opt-out of the settlement or do not to submit a claim, amounts allocated to such class members shall revert back to Defendant. *Id.* ¶ 38(e).

the Class Representatives, and the costs of administration (including any Taxes and/or Tax Expenses incurred by the Qualified Settlement Fund), shall be allocated between the subclasses as follows: 43% to the Non-Arbitration Subclass and 57% to the Arbitration Subclass. *Id.* (as modified by Dkt. No. 241). The settlement payment for each class member shall then be calculated using the following formula:

$$\text{Net Settlement Amount for Subclass} \times \frac{\text{Total Days Employed for Class Member}}{\text{Total Days Employed for All Class Members}}$$

24. One hundred percent (100%) of each settlement payment will be treated as a non-taxable payment in reimbursement for incurred expenses and in settlement of claims for alleged interest and penalties. *Id.* ¶ 38(f). Under no circumstances shall participating Class Members be liable for any potential employer's share of employment taxes owed by Defendant, if any. *Id.*

25. The settlement payments are reasonable and within the range of remedies permitted by law. Defendant denies anything is owed. However, as a compromise and to end the litigation and ensuing expenses, Defendant has agreed to use, for settlement purposes only, the foregoing formula to determine each class member's pro rata share in the settlement fund.

26. Indeed, under the settlement formula, members of the Non-Arbitration Sub-Class shall receive approximately 88% of their maximum damages (excluding liquidated damages), which is an extraordinarily high recovery and which Plaintiffs believe is the highest per driver recovery in any under-reimbursement class action. Members of the Arbitration Sub-Class shall receive a lower percentage of their maximum damages, but this percentage is still well within the realm that courts approve, and is also a remarkable recovery given that (i) two arbitrators held that Florida Pizza Hut delivery drivers cannot participate in class arbitration; (ii) this Court also denied Plaintiffs' motion to pursue class claims on an arbitration basis; and (iii) assuming,

arguendo, that drivers were able to certify a class in arbitration, such a decision would have been subjected to numerous lengthy appeals.

27. The reality is that the majority of Arbitration Sub-Class members would have recovered no monies for their potential claims absent the proposed settlement or the certification of a class arbitration, as the vast majority of drivers who signed arbitration agreements would not have filed individual arbitration claims. As such, without the proposed settlement here, these sub-class members would receive nothing unless Plaintiffs prevailed in obtaining class arbitration -- and Plaintiffs faced numerous significant hurdles in certifying an arbitration class.[5]

28. The settlement payments will be made by check valid for one hundred fifty (150) calendar days from issuance. *Id.* ¶ 50. The Settlement Agreement has a protocol to remind check recipients of the deadline to cash checks. *See id.* It also has a protocol to ensure returned checks are delivered to the intended recipients. *See id.* ¶ 49.

29. In exchange for the settlement fund, Rule 23 class members who do not opt out of the settlement will release all claims under the FMWA or similar law that were or could have been brought in the litigation or any arbitration based on the same facts and circumstances as the claims in the litigation. *Id.* ¶ 52. The release shall benefit Defendant, its former and present parent, subsidiaries and affiliates, and their respective current and former officers, directors, employees, partners, shareholders and agents and any other successor or legal representatives ("Released Parties"). *Id.* The Class Representatives shall release the Released Parties from all claims regardless of nature, known or unknown, whether asserted or not, arising out of any act or

---

[5] This is especially true as the statute of limitations is continuing to run, and Pizza Hut stopped employing delivery drivers in February 2012. Thus, all of the Arbitration Sub-Class members' claims would soon be completely eclipsed by the statute of limitations.

omission by the Released Parties to the execution of the Settlement Agreement ("General Release"). *Id.* ¶¶ 52-53.

30. Class Counsel have spoken to many class members, all of whom have expressed approval of the settlement.

### FBFG's Experience and Qualifications to Serve as Co-Class Counsel

31. FBFG will fairly and adequately represent the interests of all class members. FBFG has a proven track record of zealously and successfully advancing the interests of class members in consumer class actions.

32. FBFG enjoys a strong reputation in the area of complex and class action litigation. It has successfully arbitrated and settled delivery driver under-reimbursement cases, in addition to defeating motions to dismiss filed by highly experienced counsel. It has been appointed class counsel numerous times. In particular, FBFG partner Jeremiah Frei-Pearson has substantial experience representing delivery drivers. *See, e.g.*, *Bellaspica v. PJPA*, No. 13-3014, Transcript of the June 22, 2016 Final Settlement Approval Hearing Before Honorable Judge Timothy A. Rice at 13, 14 and 16 (commending FBFG for being "a great example to the bar of what zealous advocacy really means"), attached hereto Exhibit 3; *Hanna v. CFL Pizza*, No. 2011- 52949 (Fla. Cir. Ct. Brevard Cty.), Final Approval Order, dated September 3, 2013 (Dkt. No. 210-5), attached hereto as Exhibit 5, at ¶ 5 (describing Plaintiffs' counsel as "highly competent, skilled and experienced" in approving a class action settlement for identical claims against CFL Pizza Hut, a Pizza Hut franchisee). Numerous courts have found Plaintiffs' counsel adequate in complex class action litigation. *See* FBFG Firm Resume, attached hereto as Exhibit 6. Accordingly, Plaintiffs' counsel are also adequate to represent the interests of class. *See Lyons v. Georgia–Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000).

33. FBFG's partners have also been recognized as "Super Lawyers" and have been selected by their peers as amongst the New York area's "Best Lawyers." The Firm's lawyers have been selected for admission to the Top Trial Lawyers in America™ and to the Litigation Counsel of America's Trial Lawyer Honorary Society, as well as inducted as Fellows in the American Bar Foundation.

34. FBFG has committed the resources necessary to prosecute this action effectively and efficiently. FBFG attorneys have facilitated the efficient scheduling of hearings, conferences, and other activities with the Court and defense counsel. Further, FBFG has worked closely with co-counsel C. Ryan Morgan of Morgan & Morgan, P.A. to avoid duplicative work and to draw on his vast experience and expertise in wage and hour class action litigation.

### Attorneys' Fees and Expenses

35. As of May 11, 2017, FBFG attorneys and paralegals have expended the following number of hours, at the following hourly rates, litigating against Defendant on behalf the Class:

| Timekeeper | Position | Hours | Rate/Hour | Total |
|---|---|---|---|---|
| Jeremiah Frei-Pearson | Partner | 1,912.72 | 750 | 1,434,540.00 |
| D. Greg Blankinship | Partner | 161.80 | 750 | 121,350.00 |
| Todd S. Garber | Partner | 36.30 | 750 | 27,225.00 |
| Antonino B. Roman | Associate | 406 | 575 | 233,450.00 |
| Nadia Niazi | Associate | 327.70 | 350 | 114,695.00 |
| Khristoph A. Becker | Associate | 295.38 | 325 | 95,998.50 |
| Andrew White | Associate | 52.60 | 250 | 13,150.00 |
| Shin Hahn | Associate | 22.80 | 425 | 9,690.00 |
| Kelley D. Casey | Paralegal | 166.14 | 200 | 33,228.00 |
| Donna Bennezra | Paralegal | 51.30 | 90 | 4,617.00 |
| **TOTAL** | | 3,432.74 | | $2,087,943.50 |

36. The above chart does not include time that FBFG, in its billing judgment, has excluded from the lodestar. This includes all time for 6 time-keepers, including a partner, who

worked on this matter.

37. FBFG's hourly rates have been approved by courts across the country. *See, e.g., Yoeckel v. Marriott International, Inc.*, No. 703387/2015, Order and Judgment (N.Y. Sup. Ct. May 3, 2017), attached hereto as Exhibit 4; *Reed v. Friendly's Ice Cream, LLC*, No. 15-298, Dkt. No. 105 (M.D. Pa. Jan. 31, 2017); *St. Joseph Health System Medical Information Cases*, JCCP No. 4716 (Cal. Sup. Ct. Feb. 3, 2016).[6]

38. In my judgment, and based on my years of experience, the number of hours expended and the services performed by FBFG attorneys and paraprofessionals were reasonable and expended for the benefit of the Class.

39. The total number of hours spent by each of the above attorneys rendering services through the date of this declaration, multiplied by his or her individual rate per hour, equals $2,087,943.50.

40. In addition to attorneys' fees, Class Counsel seek reimbursement of the expenses incurred in prosecuting the case against Defendant. Since the filing of the case, and as of May 11, 2017, they have incurred expenses in the amount of $91,546.46. These expenses consist of filing and PACER fees, process service, expert expenses and *pro hac vice* fees, research/Westlaw charges, copying and mailing expenses, court reporting expenses for hearing transcripts and deposition coverage, and travel expenses in connection with court appearances, mediations (which, at Defendant's request, took place in three different states) and depositions (in Texas and Florida).

---

[6] Order Granting An Award Of Attorneys' Fees And Litigation Expenses, Settlement Administration Costs, And Class Representative Incentive Awards. Document can be viewed at http://www.sjhsdatabreachclassaction.com/Documents/SJK0001/Signed%20Order%20Granting%20Motion%20for%20Attorneys'%20Fees.pdf (last visited May 1, 2017).

41. FBFG is a modestly-sized firm. As a result, the time spent litigating against Defendant in the hope of eventually obtaining a substantial verdict or settlement for the Class, and a fee for Class Counsel, was a significant commitment of the Firm's resources. FBFG spent very substantial time litigating this case that it could not spend on other matters.

42. Moreover, because it is modestly-sized, the Firm carefully screens its class action contingency matters to enhance its likelihood of success. Even then, there was absolutely no assurance that the extraordinary commitment of time and effort devoted to these actions would result in the payment of any fee at all.

43. The Firm litigated as efficiently as possible. The Firm also factored in potential inefficiencies into the lodestar. This involved writing off the time of lawyers, including a partner and an associate, and four paralegals.

## Exhibits

44. True and correct copies of the following are attached:

   a. Exhibit 1 – Amended Notice approved by the Court at the February 6, 2017 status conference;

   b. Exhibit 2 – Confidential Report of Mediator Hunter R. Hughes, III (filed under seal);

   c. Exhibit 3 – *Bellaspica v. PJPA,* No. 13-3014, Transcript of the June 22, 2016 Final Settlement Approval Hearing Before Honorable Judge Timothy A. Rice;

   d. Exhibit 4 -- *Yoeckel v. Marriott International, Inc.*, No. 703387/2015, Order and Judgment (N.Y. Sup. Ct. May 3, 2017);

  e.  Exhibit 5 -- *Hanna v. CFL Pizza*, No. 2011- 52949 (Fla. Cir. Ct. Brevard Cty.), Final Approval Order, dated September 3, 2013;

  f.  Exhibit 6 – Firm Resume of Finkelstein, Blankinship, Frei-Pearson & Garber, LLP; and

  g.  Exhibit 7 – Proposed Final Approval Order.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 11, 2017 in White Plains, New York.

            **FINKELSTEIN, BLANKINSHIP, FREI-PEARSON & GARBER, LLP**

            By: */s/ Jeremiah Frei-Pearson*
                Jeremiah Frei-Pearson